Law office of Dennise Henderson
Dennise Henderson SBN 208640
1903 Twenty First St.
Sacramento, CA. 95811
dshendersonlaw@yahoo.com
(916)456-2027

Law Offices of Richard Antognini
Richard Antognini SBN 75711
819 I Street
Lincoln, CA  95648
rlalawyer@yahoo.com
(916)  645-7278

# UNITED STATES BANKRPTCY COURT
## EASTERN DISTRICT OF CALIFORNIA
### SACRAMENTO DIVIISION

| | |
|---|---|
| ERIK SUNDQUIST, RENEE SUNDQUIST, | Case No.: 10-35624 |
|        Plaintiff, | |
| vs. | Adversarial Case No: 14-02278 |
| BANK OF AMERICA;  RECONTRUST; FEDERAL NATIONAL MORTGAGE ASSOCIATION; RECON TRUST; DOES 1-10 | DC No. DSH-1 |
|     Defendant | |
| | PLAINTIFFS' FIRST AMENDED COMPLAINT FOR DAMAGES BY DEFENDANTS VIOLATION OF THE STAY FOLLOWING THE FILING OF A CHAPTER 13 USC 32 ; Jury Trial Demanded |
| | DATE:   March 18, 2015 TIME:    1:30pm The Honorable Christopher M. Klein |

1

## PRELIMINARY STATEMENT

1. Plaintiffs, ERIK and RENEE SUNDQUIST, filed bankruptcy on June 14, 2010. They had noticed Bank of America and Recon Trust prior to filing because they had been negotiating with them to save the home. Failure of Bank of America to offer a resolution to save their home, the Sundquist's then considered bankruptcy. Despite receiving notice on June 14, 2010, Defendants willfully violated the automatic stay that arises from the filling of bankruptcy, an injunction of the Eastern District Federal Court, by foreclosing on the Sundquist's home. After they foreclosed, again they were advised by the Sundquist's counsel that they had done so in violation of the stay. Bank of America admitted they had done so unlawfully but did not or would not correct it. Defendants continued to violate the stay by pursuing eviction, liable and slander to neighbors and to credit bureaus and the Courts regarding their financial condition. They sought further legal counsel for the defense of an eviction. They were forced to move when the ensuring school year required them to pick a home that they would not require them to move their sons during the school year. Hours were spent on telephone calls and letters to Bank of America by both Renee and Ms. Henderson to correct the errors of Bank of America regarding the modification. The Sundquist's moved from their home. After a year Defendant's realized that they had violated the stay and put the house back in the Sundquist's name without notifying them. The Sundquists found out after hiring an attorney who obtained the keys back

from Bank of America. The Sundquists returned to their home finding it stripped of appliances and the landscaping dead, with a lawsuit against them from their homeowners association and fees in excess of $20,000.

The emotional damages incurred by the Sundquist's were extensive. The letters to Bank of America make that clear. The Sundquissts had to cancel a home lease and move back into their home they were forced to leave. They had to replace all stripped items and still are pending lawsuits from their homeowners association for the time the home was out of their name and then not noticed. Still, they continue to receive demands for payment of figures that are incorrect. They receive demands in writing sent by mail that are knowingly incorrect and have not received an accurate figure as to what is owed on the home. Currently Bank of America is quoting figures when they took the home out of the Sundquists name and had not told them when they returned title to them. The amount being asked of the Sundquists to pay is conflicting and full of inaccuracies as to what has occurred. They have sent many letters, spoken on the phone for hours with representatives and been threatened with foreclosure. Counsel for the Defendants have received the letters that went unanswered by B of A and so far their client, the servicer of the loan still has not made any corrections to the debt owed.

3

The Sundquist's have incurred physical damage associated with the emotional damage. Ms. Sundquist skated for the Olympics for Italy and can no longer skate due to the emotional and physical damage caused by the actions of the Defendants. During the time Bank of America has committed these violations she taught ice skating part time and was offered a full time position with the same company and an increase to $80,000. She was unable to accept the position due to the emotional damages and physical damages associated with her continued exposure to the actions of Bank of America.

Mr. Sundquist developed and worked with homeowners associations. His professional reputation was liabled and slandered. His credit has been damaged, rather than the fresh start that at least could have been done in Bankruptcy. He also has worked as a professional actor for many years and had worked with a very well-known agent. During this time of severe stress and damages, he was released by his agent after he could not be present for a significant audition. His chances were likely to obtain the part, however, he could not leave his wife and children both before they were evicted and after they returned to the home.

Because of the willful violation of the stay and the continued efforts to evict the Sundquist's from their home, and the fraudulent conduct in returning the home

without notice,   Plaintiff's suffered actual damages, emotional damages, severe emotional distress, loss of consortium.  They are being sued by their Home Owner's Association for the lack of actions by Bank of America while the bank held title to the home and the Sundquists were not noticed title was placed back in their name. To date Bank of America the servicer of the loan has failed to give a correct figure owed on the loan and have denied modifications several times in violation of the Homeowners Bill of Rights and the Duty of the servicer to service the loan.

## PARTIES

**Plaintiffs**

1. Plaintiff's ERIK and RENEE SUNDQUIST are, and at all times herein relevant were a married couple residing in Lincoln, California, County of Placer.

2. Plaintiffs bring this action against Defendants for damages resulting from multiple violations of the bankruptcy stay by the Defendant's acts or omissions  as set forth herein concerning and surrounding the residential mortgage loan transaction, Note and Deed of Trust (Subject Loan") for Plaintiff's residence, which is located at Feliz Way, Lincoln, California; 95648 ("Subject Property"}.

3. Defendants wrongful act subject to this complaint began on or about February 2009 with the denial of the modification and no services and lack of good faith efforts to offer services, to the June 25, 2010 violation of the stay by the unlawful foreclosure;

to their delay in correcting the unlawful sale; failure to notice the homeowner when they did rescind the sale. To date Defendants are still sent paperwork stating what they owe which is incorrect the error. These actions are continuing.

4. Defendant, Bank of America, NA., ("BANA") was and is now a New York Corporation and is the purported successor and/or purported present beneficiary.

5. Defendant BAC Home Loans Servicing,, LP ("BAC") s an entity doing business in Placer County, California and is the servicer of the subject loan. On information and belief, BAC is a wholly owned subsidiary of BANA.

6. Defendant's Recontrust and Fannie Mae bought the home although had notice of the unlawful sale and failed to cure the error.

7. Recontrust and Fannie Mae filed documents in State Court alleging the Sundquists were unlawfully possessing the property.

8. Defendant Recontrust Company N.A. ("RECONTRUST"} is doing business in Placer County, California and is the entity that issued the Notice of Default on the Subject loan as "Agent for Beneficiary." Thereafter, RECONTRUST, issued the Notice of Trustee's Sale. On or around June 25, 2010 after taking title to the property unlawfully, violated the stay, by unlawfully attempting to evict the Sundquists through harassment, and failed to cure the error upon notice.

6

9. On information and belief, RECONTRUST is a wholly owned subsidiary of Bank of America, N.A, a national bank with its principal place of business in San Francisco, California.

10. Whenever reference is made in this complaint to an act of any corporate other business Defendant, that reference shall mean that the corporation or other business did the acts alleged in this complain through its officers, directors, employers, agents and/or representatives while acting within he actual and ostensible scope of his/her authority.

11. The true names and capacities whether individual, corporate, or associate or otherwise of Defendant named herein as DOES 1 through 10 are unknown to Plaintiff's who therefore sue said Defendants by such fictitious names, and Plaintiff's will amend this Complaint to show their true names involvement and capacities when the same has been ascertained. Plaintiffs are informed and believe, and on that basis allege that each of the Defendants named herein as doe was in some part responsible for the harm and losses to Plaintiffs.

12. GATEWAY BUSNNESS BANK DBA MISSION HILLS MORTGAGE BANKERS ("MISSION HILLS") was the named original lender and beneficiary of the subject loan under the deed of trust.

13. Plaintiffs are informed and believe and thereon allege, that at all times herein relevant BANA was the purported subsequent successors and assignor of the subject loan and

is liable for all acts of Mission Hills based on successor liability law and particularly because it assumed all liability of the original lender by the terms of which it succeeded to the subject loan.

## JURISDICTION AND VENUE

### Jurisdiction

14. The Federal Bankruptcy Courts have *exclusive* jurisdiction to determine the scope and application of the automatic stay. *In re Gruntz* 202 F3d 1074, 1081-87 (9th Cir 2000). Federal Bankruptcy Courts have final authority over "core bankruptcy proceedings. *In re Dunbar,* 245 F3d 1058, 1063 (9th Cir 2001).

15. Plaintiffs are, and at all times herein relevant were, individuals residing in Lincoln, CA. County of Place.

16. The Subject Property is located at 1321 Feliz Way Lincoln, CA 95648.

17. Defendants, and each of them, at all times herein relevant regularly engaged, and engage, in business in the State of California County of Placer and regularly provided, and provide, mortgage loans and relate services. The majority of the transactions and events that are the subject matter of this Complaint occurred within the County of Placer, State of California.

## GENERAL FACTS

18. Paragraphs 1 through 18 and the paragraphs following this cause of action are incorporated by reference as though fully set forth herein.

8

19. On February 2009 the Sundquist sought modification of their home loan through their servicer, Defendants Bank of America. They were told that the paperwork that they sent to Bank of America was lost several times and a modification was neither denied or accepted.

20. Bank of America claimed they did not receive modification documents several times, and told Ms. Sundquist that Bank of America had no intent to save their home.

21. Plaintiff's hired counsel to assist them to negotiate and communicate with Bank of America and to consider the filing of a Chapter 13 bankruptcy.

22. Due to the pending foreclosure, and no agreement to stay the sale, Plaintiff's filed a Chapter 13 bankruptcy for the sole purpose of saving the home, Plaintiffs made two payments on their plan.

23. Defendants violated the automatic stay of the Federal Bankruptcy Court and foreclosed on Defendants home, and then continued to attempt to evict them thereafter.

24. On or around June 25, 2010, after receiving notice that Defendants violated the automatic stay, RECONTRUST foreclosed on the subject property in willful violation of the automatic stay that arose with Plaintiffs' bankruptcy filing.

## PROCEDURAL HISTORY - TITLE

25. The Sundquists purchased the property in 2008 On September 19, 2008, a Deed of Trust ("DOT") securing the Note was recorded related to the Subject Property. The original lender was MISSION HILLS, the original Beneficiary was Mortgage

9

Electronic Registration Systems, Inc. ("MERS") and the original Trustee was Hartford Escrow, Inc. (**Exhibit A**).

26. On September 19, 2008, a Deed of Trust ("DOT") securing the Note was recorded related to the Subject Property. The original lender was MISSION HILLS, the original Beneficiary was Mortgage Electronic Registration Systems, Inc. ("MERS") and the original Trustee was Hartford Escrow, Inc. (**Exhibit A**).

27. On September 19, 2008, a Deed of Trust ("DOT") securing the Note was recorded related to the Subject Property. The original lender was MISSION HILLS, the original Beneficiary was Mortgage Electronic Registration Systems, Inc. ("MERS") and the original Trustee was Hartford Escrow, Inc. (**Exhibit A**).

28. On July 21, 2009, a Notice of Default ("NOD") was recorded by Betty Jo Livingston of Recon trust Company, N.A., as agent for the Beneficiary by LandSafe Title Corporation, as its Attorney in Fact. (**Exhibit B**).

29. On October 28, 2009, a Substitution of Trustee was recorded by Regina Myles, Assistant Secretary for MERS. It substitute RECONTRUST as the new trustee. (**Exhibit C**).

30. On October 28, 2009, a Notice of Trustee's Sale ("NOTS") was recorded by K Warner Team Member for RECONSTRUST. It set the trustee's sale date as November 12, 2009. (**Exhibit D**).

31. On June 15, 2010, Plaintiffs filed Chapter 13 Bankruptcy in the Federal Bankruptcy Court for the Eastern District of California.

32. When they filed the Chapter 13, they received a full automatic stay according to 11 U.S. 362.

33. Plaintiffs notified all Defendants of the bankruptcy filing and automatic stay by and through their bankruptcy counsel of record, Dennise S. Henderson.

34. Plaintiffs made the Chapter 13 plan payments according to applicable bankruptcy code to the Chapter 13 standing trustee.

35. On June 25, 2010, despite notice of the bankruptcy filing as provided by Plaintiffs' bankruptcy counsel, Plaintiffs, home was sold in violation of the automatic stay.

36. On June 25, 2010, a Corporation Assignment Deed of Trust was recorded by Angelica Del Toro, Assistant Secretary for MERS.  It transferred all beneficial interest to BAC Home Loans Serving, LP FKA Countrywide Home Loans Servicing LP.  (**Exhibit E**).

37. On June 25, 2010, a Corporation a Trustee's Deed upon Sale ("TDUS") was recorded by Angelica Del Toro, Assistant Secretary for RECONTRUST, RECONTRUST granted the real property to BAC Home Loans Servicing, LP FKA Countrywide Home Loans Servicing LP.  (**Exhibit F**).

38. On July 1, 2010, Defendant BAC filed a request for Special Notice (**Exhibit G**) with the Eastern District Bankruptcy Court, indicating that by this date they actually knew of the bankruptcy filing.  No requests for relief from stay were filed by any Defendant.

11

39. On July 8, 2010, Plaintiffs received a 3-day Notice to Quit. (**Exhibit H**).

40. On July 23, 2010, BAC filed a complaint for unlawful detainer against Plaintiffs in Superior Court of the State of California, County of Placer.

41. On August 31, 2010, an Assignment of Deed of Trust was recorded by Nichole Clavadetscher, Certifying Officer for MERS as Nominee for Mission Hills Mortgage. It assigned the DOT to BAC. (**Exhibit I**).

42. Plaintiffs repeatedly called BANA and BAC to ask why their house was sold while the bankruptcy stay was pending

43. Representatives for Defendants verbally admitted to the Plaintiffs that they sold the house in error.

44. Plaintiffs, fearing eviction by the sheriff at any time, subject to continued harassment by strangers due to the unlawful sale of their home, and being concerned with the effect this and a mid-semester school transfer may have on their children, and the stress it was causing Renee, Erik moved his family out of the Subject Property in September 2010. Plaintiffs then moved into a rental home with a 2.5 year lease.

45. Plaintiffs spent a significant amount of money on their new rental home, including moving costs new carpet cleaning/landscaping, painting and hauling.

46. After Plaintiffs moved out, the locks were changed on the Subject Property and no trespassing signs were posted on the windows.

47. The Subject Property was left unattended by the alleged Defendants after eviction and the home was stripped.

48. On December 23, 2010, the Eastern District Bankruptcy Court issued the Order Closing the Chapter 13 Bankruptcy filed by Plaintiffs. *No Defendants filed any motions requesting relief from stay.*

49. On December 30, 2010, a Notice of Rescission of Trustee's Deed upon Sale pursuant to Civil Code 1058.5 was recorded by Flor Valerio, Assistant Secretary for BAC, and by Christina Balandran, Assistant Secretary for RECONTRUST. It rescind the Trustee's Sale and purported TDUS and returned the priority and existence of all title and status-quo-ante as existed prior to the trustee's sale. (**Exhibit J**).

50. Although title was restored in Plaintiffs' names, Plaintiffs were not noticed of this change in title.

51. It was not until they hired counsel in 2011 that they learned the property had been put into their name.

52. Plaintiff's still could not access the Subject Property because the locks had been changed. Furthermore, Plaintiffs children were now attending school in another school district and Plaintiffs were locked into a residential lease at the new rental property. Plaintiffs could not pay for both homes simultaneously and uproot their children mid-semester. Plaintiff was obligated in a valid residential lease with payments at or about $4000.00 per month for a period of twelve months commencing in September 2009.

13

53. Plaintiff RENEE SUNDQUIST has incurred significant life threatening and physical damage due to the stress, harassment, and reckless disregard of the Sundquist's rights by BANA and ReconTrust. These medical issues and expenses are continuing.

54. All of Ms. Sundquist's medical issues are directly related to the wrongful acts of the Defendants. Ms. Sundquist skated for Italy in the Olympics. Ms. Sundquist can no longer skate or teach ice skating due to the physical and emotional damage caused by Defendants wrongful, reckless and intentional acts that are continuing to date.

55. Plaintiff RENEE SUNDQUIST was working part time during 2010 teaching ice skating. The position was offered to her as a full time position at $75,000 a year. Due to the emotional and physical damage caused by the actions of the defendants, she was unable to accept that job and is currently unable to work.

56. Plaintiff RENEE SUNDQUIST suffered loss of consortium with her husband Plaintiff ERIK SUNDQUIST due to her disabilities brought on by the actions of the Defendants. Her ability to function was greatly impaired as a wife and mother. She had debilitating migraines, fibromyalgia; clinical depression, anxiety attacks, not to mention the side effects of the medication.

57. Plaintiff RENEE SUNQUIST suffered depression, anxiety, and debilitating migraines due to the actions of the Defendants which caused a loss of her participation as a parent. The emotional damage associated to that loss is significant.

14

58. Plaintiff ERIK SUNDQUIST had a successful career as an actor. He was offered an audition for a part through his well known agent which he could not attend dut to his wife's condition and inability to care for their children, Erik turned down the audition and was dropped by his very well regarded agent. This loss has been significant to his career that he had been building for many years in the television, film and theater industry. He had to become a full time care taker for his children and his wife.

## FIRST CAUSE OF ACTION

### Willful Violation of the Automatic Stay Imposed by 11 USC 362 by

### Foreclosure on the Subject Property

59. Paragraphs 1 through 58 and the paragraphs following this cause of action are incorporated by reference as though fully set forth herein.

60. Plaintiffs filed for Chapter bankruptcy relief on June 15, 2010 and duly gave notice before and after the bankruptcy filing. Defendant's counsel also gave notice to the Defendants regarding the stay.

61. Defendants show knowledge of the stay by their filing of their claim in the bankruptcy proceeding at issue.

62. On or around June 25, 2010, despite proper notice to Defendants and despite a valid 362 automatic stay, Defendants sold Plaintiffs primary residence and caused to be issued a Trustee's Deed Upon Sale transferring title to Defendant BAC.

63. Plaintiff RENEE SUNDQUIST and ERIK SUNDQUIST have suffered severe emotional distress and have medical expenses related to the false promises, violation of the modification promises, wrongful foreclosure and eviction in violation of the 362 stay.

64. Plaintiffs have actual damages including but not limited to significant Home Owners Association ("HOA") fines and fees and legal expenses, costs of having to move suddenly (with no assistance from Recontrust), damage to the residence while in the possession and ownership of Bank of America; and other related costs. The total of these costs is in excess of $150,000 not including attorney fees. All are due to the admittedly wrongful foreclosure and sale, wrongfully filing an unlawful detainer, and noticing the public that not only was the house foreclosed which was untrue, but that it was for sale. All of this and continued attempts to evict the family after notice to Bank of America caused all of the actual damages.

65. Plaintiff's further demand attorney fees related to the filing of the bankruptcy, defense of the eviction proceedings, violation of the automatic stay; intentional emotional damages, personal injury, damage to credit and intentionally and/or negligently reporting the foreclosure and the eviction in the public record;; false promises; illegally changing the locks; illegal lockout; failure to notice the party of a change of title in their name, damage to property, conversion, interference with contract, fraud and punitive damages

16

66. The Court in *In re Davis,* stated: "We concur with the authorities holding that dismissal of the underlying bankruptcy case does not render moot an action for damages based on willful violation of the automatic stay. Willful violation is an intentional tort for which compensatory and punitive damages may be awarded. 11 U.S.C. 362(h). Imposition of damages for willful violation of the automatic stay serves compensation for and punishment of intentionally wrongful conduct. See *In re Carroll,* 903 F2d 1266 (9th Cir. 1990) action for damages for violation of stay not moot even if action for injunctive relief is moot). Stated differently, intentionally wrongful conduct should not be excused merely because the underlying bankruptcy case has been dismissed. Thus, we conclude that "a legally cognizable interest in the outcome of the (adversary proceeding) survive the bankruptcy." *In re Universal Farming Industries,* 873 F2d 1334, 1336 (9th Cir. 1989). *Davis v. Courtington (In re Davis).* 177 B.R. 907, 911-12 (1995).

67. Accordingly Plaintiff's action for damages survives the dismissal of the Bankruptcy. Plaintiff's incurred direct damages as a proximate cause of BANA and RECONTRUST's actions herein detailed which deprived them of the quiet enjoyment of their home for more than six months, and to date have continued to demand a foreclosure. Moreover, Defendants disregarded all evidence of their wrongful acts and did nothing to mitigate Plaintiff's damages. Plaintiffs are also entitled to punitive

damages as the violation of stay was obvious, intentional, and notorious. More importantly, the damages done to the Sundqists are shocking and outrageous.

## SECOND CAUSE OF ACTION

### Willful Violation of the Automatic Stay Imposed by 11 USC 362 by filing

### Unlawful Detainer Complaint

68. Paragraphs 1 through 68 and the paragraphs following this cause of action are incorporated by reference as though fully set forth herein.

69. Defendants BAC actually knew about the bankruptcy prior to July 1, 2010 because they were noticed by counsel both before and after the filing of the bankruptcy of the entry of the stay and that a sale would be a violation. Bank of America and Recontrust then filed a Request for Special Notice with the Eastern District Bankruptcy Court on July 1, 2010 indicting they knew there was a bankruptcy filing and therefore needed to rescind the sale immediately before the damage to the Sundquists was further exasperated.

70. Thereafter, on or about July 8, 2010, Defendants caused to be served on Plaintiffs a Notice to Quit the Subject Property.

71. On or around July 23, 2010, Defendant BAC caused to be filed a Complaint in Unlawful Detainer against Plaintiffs, further violating the automatic stay.

72. Although Plaintiffs and their Counsel called BANA and BAC multiple times about the bankruptcy filing and the continued actions against them, Defendants continued to pursue eviction of the Plaintiffs from the property in violation of the 362 automatic stay.

73. Defendants acted with notice and actual knowledge of the bankruptcy filing. Defendants acted willfully and in blatant disregard for the Eastern District Federal Court and the impending damages to the Sundquists.

74. Plaintiffs were subject to constant harassment due to the property being wrongfully sold and listed for sale, eviction proceedings, notices on their doors, people looking in their windows, speaking to their neighbors, slandering them to neighbors, to the Court and to the public.

75. Plaintiffs suffered physical damage. Plaintiff Renee Sundquist suffered severe, life threatening and life altering physical symptoms related to the emotional distress from the acts of Defendants. (severe anxiety, clinical depression, fibromyalgia, chronic migraine headaches which render her incapacitated. She is no longer able to work. This consisted of the lies and false promises to the Sundquists during their modification; the wrongful foreclosure, eviction, having to uproot their children by moving rapidly, learning, after hiring counsel that BANA finally admitted the sale was unlawful and rescinded They included hospitalizations for physical reactions to the stress, inability to function and care for her children, be a partner to her husband, and

19

accept a significantly prestigious position which paid over 80k per year. In addition she no longer can skate due to the damages from the stress. Ms. Sundquist skated for Italy in the Olympics and placed fifth. She was teaching part time and was offered a full time position of 80k per year.

76. Plaintiffs further suffered damage to the property while it sat empty. The locks were changed. The lawn died. The home was stripped of all appliances in addition to other damages. HOA fines accrued. The Homeowners Association is prepared to sue the Sundquists for the damage to their property when it was not in their possession.

77. As recently as May of 2012 Bank of America received correspondence from the Sundquists asking for a correct pay off amount (considering the house was not in their name for a significant period of time (September 1, 2010 – January 31, 2012 (received keys April 5, 2011; could not move in until January 31, 2012.) . In addition they have damaged the contractual relationship with their home owners association and since Mr. Sundquist works in this field, damage to his business reputation.

78. Plaintiffs incurred moving expenses, both when they were forced to leave the home unlawfully and then a second time when they finally learned the sale was rescinded and they received the keys back from BANA, only to find their home stripped and virtually uninhabitable.

79. Plaintiffs have incurred significant attorney's fees related to the violation of the 362 stay. The filing of the bankruptcy would not have been necessary if Defendants had not given false promises, inaccurate information and ignored the law.

80. Plaintiffs are entitled to punitive damages related to Defendants' willful and continual violations of the 362 automatic stay. In addition their conduct and the damages related to it are outrageous and shock the conscience of the community.

### THIRD CAUSE OF ACTION

### Negligence

82 Paragraphs 1 through 80 and the paragraphs following this cause of action are incorporated by reference as though fully set forth herein.

83 Defendants had a duty to service the loan and to provide accurate information regarding that loan.

84 Defendants while negotiating a modification, and after being noticed of the filing of the Bankruptcy foreclosed on the home in violation of the stay from the Eastern District Bankruptcy Court.

85 Defendants offered no services to avoid foreclosure, alleged they never received or lost the paperwork until the Sundquists were facing foreclosure. Defendants provided information to the public and private entities and persons that the home was in foreclosure and for sale. This started the myriad of damages that ensured upon the Sundquists family.

21

86  The basic elements of a negligence action are: (1) The defendant had a legal duty to conform to a standard of conduct to protect the plaintiff, (2) the defendant failed to meet this standard of conduct, (3) the defendant's failure was the proximate or legal cause of the resulting injury, and (4) the plaintiff was damaged. (*Ladd v. County of San Mateo* (1996) 12 Cal.4th 913, 917 [50 Cal.Rptr.2d 309, 911 P.2d 496]; *Ann M. v. Pacific Plaza Shopping Center* (1993) 6 Cal.4th 666, 673 [25 Cal.Rptr.2d 137, 863 P.2d 207].)

87  The notice of foreclosure and sale of the property caused the Defendants to issue a 3 day notice and an eviction notice.  This caused them severe emotional distress, more time spent trying to correct the error of the servicer and finally find another home.

88. Defendants were negligent in that they were noticed of the Chapter 13 bankruptcy and ignored the information sent to them and the law that protected the Sundquist's from the loss of their property.

89. Bank of America, servicer of the loan had a duty to provide accurate information to the Sundquist's and all other's requesting information regarding the  loan and failed to Paragraphs 1 through 68 and the paragraphs following this cause of action are incorporated by reference as though fully set forth herein.

90. They failed to stay the sale due to the filing of the Chapter 13.  They failed to petition to lift the stay

22

## FOURTH CAUSE OF ACTION

Intentionally (and maliciously) Use of Process for Wrongful Initiation of Civil Proceedings

91. Defendants initiated a foreclosure proceeding disregarding notices from Plaintiff's counsel, the Court, and the Plaintiff. They then caused to be initiated an eviction proceeding without probable cause and disregarding the notices and information received

92. Defendants initiated an eviction proceeding against the Sundquists with knowledge that the home was protected by a stay in bankruptcy.

93. The underlying concept is that one has a legal duty to use reasonable care to avoid causing emotional distress to another individual. If one fails in this duty and unreasonably causes emotional distress to another person, that actor will be liable for monetary damages to the injured individual. Defendants took no care in avoiding emotional distress to the Sundquists.

## FIFTH CAUSE OF ACTION

Negligent Infliction of Emotional Distress

94. Paragraphs 1 through 92 and the paragraphs following this cause of action are incorporated by reference as though fully set forth herein.

23

95. The Defendants were negligent in servicing the Sundquists home loan. They were not cautious in their receipt of documents to obtain a modification before and after the home was placed back in their name. Regardless of what they were told they did nothing to cure the error.

96. Defendants took no care in addressing the wrongs committed while servicing the loan. Their communication with the client has been incorrect, and dismissive. This attitude and years of problems with this property due to the errors of Defendants caused physical and emotional and monetary damage to the Sundquists.

## SIXTH CAUSE OF ACTION

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

95. Paragraphs 1 through 94 and the paragraphs following this cause of action are incorporated by reference as though fully set forth herein.

96. Defendants knew of the wrongful foreclosure before the eviction proceedings began yet did nothing to end or mitigate the emotional damage to the Sundquists.

97. Defendants followed through and directed the filing of an unlawful detainer claim against the Sundquists.

24

98. Defendants disregarded all notices contrary to lawful, intentional and properly servicing the loan.

99. Defendants reported the home for sale to many agents and caused strangers to come to the Sundquists home at all hours of the day and night, speaking with their neighbors and looking in their windows causing emotional distress. A person's home is their haven and should expect to be safe from intruders.

## SEVENTH CAUSE OF ACTION

### Nuisance

100. Defendants caused a nuisance on the property in that they falsely stated it was for sale, foreclosed on the property, neglected the property and failed to notice the Sundquist's when they put the house back in their name and left it to be stripped.

## EIGHTH CAUSE OF ACTION

### Conversion and Trespass

101. Paragraphs 1 through 100 and the paragraphs following this cause of action are incorporated by reference as though fully set forth herein.

102. Defendants took Plaintiff's property without legal cause.

25

103.     Defendants held the property and illegally estopped Plaintiff's use.

104.     Defendants transferred title to the Plaintiffs name without notice or agreement after holding the property unlawfully.

105.     Defendant's allowed the property to be stripped while in their name and failed to pay or address the Homeowners Association.

106.     Plaintiffs incurred damages in moving from their home, setting up a new home, eventually moving back into a home that was uninhabitable.  Homeowners Association has a lawsuit against the Sundquist's and they have been causing additional stress to the family.

## NINTH CAUSE OF ACTION
### LOSS OF CONSORTIUM

107.     Paragraphs 1 through 68 and the paragraphs following this cause of action are incorporated by reference as though fully set forth herein.

108.     Plaintiffs are a married couple with two sons.

109.     Plaintiffs have enjoyed a happy and long term marriage and family life and have been able to walk through many difficult times in their lives. The years dealing with Defendants have damaged the marriage.

110.     The violations by the Defendants caused extreme reversals of roles in the family due to the stress and fear experienced by first Ms. Sundquist and then Mr. Sundquist in reaction to his wife's loss of ability to deal with the taking of the house.

111.     Mr. Sundquist made Bank of America very aware of the problems Defendants' were causing his home and wife and finally himself, yet they did nothing.

112.     Both Mr. Sundquist and Ms. Sundquist have lost significant time with each other and it has caused a break down in their relationship in that each one is overwhelmed by Defendants actions.

27

# TENTH CAUSE OF ACTION

## Violation of the Homeowners Bill of Rights

113.    Paragraphs 1 through 112 and the paragraphs following this cause of action are incorporated by reference as though fully set forth herein.

114.    Plaintiffs have sought to modify their mortgage in 2009 and again in 2011 forward.

115.    The attempted modification in 2009 the Sundquist's were induced to stop making payments.

116.    Bank of America consistently told the Sundquist's that they had lost their paperwork.

117.    There was originally no denial and no offer of modification Defendants sold their home.

118.    Since moving back into the home the Sundquists have sent documents requested by Bank of America and they have not received a response regarding a modification. However, they have put the house in foreclosure again.

119.    Defendants have a duty to offer services to the Sundquists such as provide information as to what is owed (not including the time the house was out of their name and then also when they were not noticed the house was put back in their name.

28

120.     The Sundquists have written detailed letters to Bank of America and received no information regarding their loan.  Damages continue to accrue.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Defendants and each of them as follows:

1.   That judgment is entered in Plaintiffs' favor and against Defendants, and each of them;

2.   For damages, disgorgement, and injunctive relief;

3.   For compensatory and statutory damages, attorneys' fees, and costs according to proof at trial;

4.   For punitive damages in an amount sufficient to punish Defendants' wrongful conduct and deter future misconduct;

5.   On all causes of action, for cost of suit herein;

6.   On all causes of action, for pre- and post-judgment interest;

7.   On all causes of action, for which attorneys' fees may be awarded pursuant to the governing contract, by statute or otherwise, reasonable attorneys' fees; and costs.

8.   On all causes of action, for such other and further relief as this Court may deem just and proper so that Plaintiffs shall recover restitution or compensatory damages.

Plaintiffs Herein Demand A Jury Trial

29

1

2

3

4     DATED:      March 17, 2015            Respectfully Submitted

5

6                                       Dennise Henderson

7                                       Attorney for Plaintiffs

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

30