Dennise S. Henderson State Bar# 208640
LAW OFFICE OF DENNISE HENDERSON
1903 21st Street
Sacramento, CA 95811
dshendersonlaw@yahoo.com
Ph: (916) 456-2027
Fax: (916) 456-2035

Richard Antognini State Bar# 75711
LAW OFFICE OF RICHARD ANTOGNINI
819 I Street
Lincoln, CA 95648
rialawyer@yahoo.com
Ph: (916) 645-7278

## UNITED STATES BANKRUPTCY COURT

## EASTERN DISTRICT OF CALIFORNIA

## SACRAMENTO DIVISION

| | |
|---|---|
| ERIK SUNDQUIST and RENEE SUNDQUIST | Case No.: 10-35624 |
| Plaintiff, | Adversarial Case No.: 14-02278 |
| v. | DC No. DSH-1 |
| BANK OF AMERICA, N.A.; BAC HOME LOAN SERVICING, LP, FEDERAL NATIONAL MORTGAGE ASSC., RECON TRUST; and DOES 1-10 | PLAINTIFF'S SECOND AMENDED COMPLAINT FOR DAMAGES RELATED TO DEFENDANT'S VIOLATION OF THE AUTOMATIC STAY FOLLOWING FILING OF CHAPTER 13 USC 32 |
| Defendant. | |
| | DATE: August 19, 2015 |
| | TIME: 1:30 pm |
| | The Hon. Christopher M. Klein |

## PRELIMINARY STATEMENT

1. Plaintiffs, ERIK and RENEE SUNDQUIST, filed bankruptcy on June 14, 2010. Prior to filing the bankruptcy, Plaintiff's had been communicating with their loan servicer, Bank of

1

America and Recon trust regarding the modification and foreclosure of their home. A large past due balance resulted from the Sundquists' following the advice of Bank of America, to stop making payments in order to request a loan modification. The Sudquists' hired a company Pro city to assist with a home loan modification process. The Sundquists hired counsel to assist in communicating with B of America regarding foreclosure alternatives. As a last resort, the Sundquists filed a Chapter 13 petition on June 14, 2010. Exhibit K  The Bank was noticed verbally on June 15, 2010; and then on June 16, 2010 in writing from the Court. Bank of America, by and through counsel requested special notice of the Bankruptcy, even though they had sold the home on June 16, 2010. A plan was, prepared a plan and payments on that plan were made.  Bank of America consistently stated during the modification process that they did not receive documents and in this action they stated they did not receive the Sundquists' modification application, nor received notice of the Bankruptcy.  Plaintiff's house was foreclosed in violation of the stay on June 15, 2010.

2. The Sundquists were not noticed that the home had been sold, neither had their counsel.  Bank of America by and through their counsel appeared in the bankruptcy action, yet never asked to lift the stay.   The Sundquists and counsel became aware that the home was sold when they were served with eviction notices.  Ms. Sundquist was subjected to harassment; slander; invasion of privacy; fear and emotional disturbance for the safety of herself and her children. People  were coming to home at all times of the day; looking in windows; talking to neighbors; waiting outside.  They moved out in 48 hours after receiving the notice to leave. This caused physical and mental strain to the family

3. In September of 2010 the Sundquists moved and signed a rental agreement for $4000 per month for 1.5 years.  In September 2010 the home was posted with notices of sale and locks were placed on doors.

4. On June 25, 2010 a Corporation Assignment of Deed of Trust was recorded by Angelica Del Toro, Assistant Secretary for MERS. On this date the sale was recorded taking title out of the Sundquists name.

5.

6. On July 1, 2010 in response to notice from the Bankruptcy court and debtors counsel, Joe M. Lazanio Jr. from Bryce, Vander, Linden, and Wernick, P.C., filed a special request for service of notice from the bankruptcy court.

7. On July 8, 2010, Plaintiff's received a 3 day Notice to Quit.

8. On July 23, 2010, BAC Home Loans Servicing, LP FKA Countrywide Home Loans Servicing, LP filed a complaint for unlawful detainer against Plaintiffs' in Placer County Superior Court.

9. Plaintiffs continued to receive monthly mortgage statements from Bank of America.

10. Plaintiffs called Bank of America to ask why their house was sold while they were in bankruptcy and an agent of Bank of America admitted the house was sold in error, as evidenced by the later rescission of the home, to Plaintiffs on December 30, 2010.

11. Plaintiffs feared being kicked out of their home so they moved out in September 2010. They had endured months of harassment by phone calls, mail, and people showing up at their home. They incurred numerous moving expenses and physical stress.

12. Prior to leaving their home, the Sundquists were forced to seek further legal counsel for defense of an eviction. Hours were spent on telephone calls and letters to Bank of America by the Sundquist family and Ms. Henderson to correct the errors made by Bank of America during the home loan modification process.

13. As previously stated, Defendant's realized they had violated the stay, quietly rescinded the sale on December 30, 2010, and placed the house back in the Sundquists name without notice to the Sundquist family.

14. Around March 2011, the Sundquists' sought legal counsel and they discovered the wrongful foreclosure was rescinded, and the home had been put back in their name. Bank of America had never noticed them of this "rescission."

15. Bank of America told the Sundquists they would send the keys to them, it took over 30 days for Bank of America to return the keys to the Sundquists.

16. The Sundquists' returned to inspect their home and found it stripped of appliances including the refrigerator, dishwasher, oven, stovetop, microwave, window coverings, shutters,

3

bathroom fixtures, and mirrors with no explanation from Bank of America. The exterior landscaping was unkempt and destroyed due to lack of care.

17. The Sundquists' were assessed over $20,000.00 dollars in back fees against them by their homeowner's association during the time their home had been foreclosed and they had been served eviction notices.

18. The emotional damages incurred by the Sundquists' were extensive. The Sundquists' had to negotiate to withdraw from their current lease and incur the expenses of moving back into their home. In addition, they had to replace all of the stripped appliances from their previous home.

19. After moving back into their home, the Sundquists' continued to receive demands for payment that were incorrect. These demands came in the mail and over the phone constantly. The demands for payment included the time period where Bank of America had unlawfully foreclosed on the Sundquists' and the time period when the home had been put back in the Sundquists' but they had not yet been told by Bank of American that the sale had been rescinded.

20. Plaintiffs' have suffered physical damage as a result of the ongoing harassment and reckless disregard, and intentional conduct by Defendants. Ms. Sundquist, a former Olympic skater for Italy, is no longer able to work or skate due to post traumatic stress disorder, migraines, fibromyalgia; anxiety, self-mutilation and debilitating depression. Ms. Sundquist also lost out on a full-time position making approximately $80,000.00 a year (she had been working part time in this position, but due to being s overwrought with stress and anxiety fighting to keep her home, losing the home, of Bank of America wrongfully foreclosing and then rescinding the sale without notice; not caring for the home or property when they held title and now continuing to attempt to foreclose as they attempt to collect for years that the Sundquists were not in title to the property and/or not noticed that they were put back in title by Defendants.

21. Mr. Sundquist suffered emotional, physical, and professional damages as well. Mr. Sundquist recently attempted suicide and his children and wife were greatly affected; he has been clinically depressed; is on medication, takes pain medication due to back injuries suffered during the multiple moves required during foreclosure and return to the home. Despite the

distraction to his business, he is also a well-respected and working actor, director. He was unable to read for a significant part due to his wife's condition and the concern for his family during that time. He was dropped by a very high powered agent and has had to work his way up in the work that is his passion. He was originally frustrated and believed it would be corrected, but many years later Bank of America is still not understanding what they did to this family. First he took over the care of his wife and children. Eventually the stress of this and feeling of failure in not being able to resolve it were overwhelming. He became severely depressed, traumatized, and undergoing constant anxiety due to the ongoing battle to keep his home and the subsequent negligence and harassment by Bank of America. Mostly the trauma has been seeing his wife be destroyed by this daily. He has been in his words vacant as a husband and father; unable to work at the quality he holds himself to; believed he was worth more dead than alive. Many days it is a tremendous struggle for Mr. Sundquist to get out of bed and to work. Not because he does not want to work but because he can't sleep and wakes up in the middle of the night and can't get back to sleep. He then finally wakes up exhausted emotionally and physically. Bank of America and their counsel have been advised of the frailty of this family, yet still serve them with notices of foreclosures as recently as this last weekend.

22. Mr. Sundquist had also previously developed and worked with homeowner's associations. As a result of the assessment of fees by the homeowners association from his home, Mr. Sundquist's professional reputation was damaged.

23. The Sundquists have been receiving therapy for these issues. Ms. Sundquist has shots to her body and head for her migraines that left her unable to lift her head for two months. Mr. Sundquist takes pain medication that is due to the damage to his body caused by the move and the stress. His wife has watched him become spiral downward both mentally and physically Their children have had to watch their parents dissolve before their eyes. This is a couple who were athletes and their sons were also active. They were vegan, healthy and did not use drugs or smoke.

## PARTIES

**Plaintiffs**

24. Plaintiffs' ERIK and RENEE SUNDQUIST are, and at all times herein relevant were a married couple residing in Lincoln, California, County of Placer.

25. Plaintiffs bring this action against Defendants for damages resulting from multiple violations of the bankruptcy stay by the Defendant's acts or omissions as set forth herein concerning and surrounding the residential mortgage loan transaction, Note and Deed of Trust ( Subject Loan) for Plaintiffs' residence, which is located at Feliz Way, Lincoln, California; 95648 (Subject Property).

26. Defendants wrongful act subject to this complaint began on or about February 2009 with the denial of the modification, lack of service, lack of good faith effort to offer services, to the June 25, 2010 violation of the stay by the unlawful foreclosure; to the unlawful eviction of the Sundquist family, to the delay in discovering their error which they knew or should have known, to the failure to notice the Plaintiffs that they rescinded the sale. To date Plaintiffs are still receiving paperwork stating they owe money for the time period where Bank of American had wrongfully foreclosed on them and they were no longer occupying the property and the time period where the sale of the home by Bank of America had been rescinded but the Sundquists had not received notice.

27. Defendants, Bank of America, NA (BANA) was and is now a New York Corporation and is the purported successor and/or purported present beneficiary.

28. Defendant BAC Home Loans Servicing, LP (BAC) is an entity doing business in Placer County, California and is the servicer of the subject loan. On information and belief, BAC is a wholly owned subsidiary of BANA.

29. Defendant's Reconstrust and Fannie Mae bought the home although had notice of the unlawful sale and failed to cure the error.

30. Recontrust and Fannie Mae filed documents in State Court alleging the Sundquists were unlawfully possessing the property.

31. Defendant Recontrust Company N.A. (RECONTRUST) is doing business in Placer County, California and is the entity that issued the Notice of Default on the Subject loan as "Agent for

6

Beneficiary." Thereafter RECONTRUST, issued the Notice of Trustee's Sale. On or around June 25, 2010 after taking title to the property unlawfully, violated the stay, by unlawfully attempting to evict the Sundquists through harassment, and failed to cure the error upon notice.

32. On information and belief, RECONTRUST is a wholly owned subsidiary of Bank of America, N.A., and a national bank with its principal place of business in San Francisco, California.

33. Whenever reference is made in this complaint to an act of any corporate other business Defendant, that reference shall mean that the corporation or other business did the acts alleged in this complaint through its officer, directors, employees, agents, and/or representatives while acting within the scope of his/her authority.

34. The true names an capacities, whether individual, corporate associate or otherwise of Defendants named herein as DOES 1 through 10 are unknown to Plaintiffs, who therefore sue said Defendants by such fictitious names, and Plaintiffs will amend this Complaint to show their true names, involvement and capacities when the same has been ascertained. Plaintiffs are informed and believe, and on that basis allege that each of the Defendants named herein as DOE was in some manner responsible for the harm and losses suffered by Plaintiff and/or will be responsible for future harm and losses to Plaintiffs.

35. GATEWAY BUSINESS BANK DBA MISSION HILLS MORTGAGE BANKERS ("MISSION HILLS") was the named original lender and beneficiary of the Subject Loan under the Deed of Trust.

36. Plaintiffs are informed an believe, and thereon allege, that at all times herein relevant BANA was the purported subsequent successor and assignor of the Subject Loan and is liable for all acts of MISSION HILLS based on successor liability law and particularly because it assumed all liability of the original lender by the terms of which it succeeded to the Subject Loan.

## JURISDICTION AND VENUE

**Jurisdiction**

37. The Federal Bankruptcy Courts have exclusive jurisdiction to determine the scope and application of the automatic stay. *In re Gruntz* 202 F3d 1074, 1081-87 (9th Cir 2000). Federal Bankruptcy Courts have final authority over "core bankruptcy proceedings. *In re Dunbar*, 245 F3d 1058, 1063 (9th Cir 2001).

38. Plaintiffs are, and at all times herein relevant were, individuals residing in Lincoln, CA, County of Placer.

39. The Subject Property is located at 1321 Feliz Way Lincoln, CA 95648.

40. Defendants, and each of them, at all times herein relevant regularly engaged, and engage, in business in the State of California County of Placer and regularly provided, and provide, mortgage loans and relate services. The majority of the transactions and events that are the subject matter of this Complaint occurred within the County of Placer, State of California.

## **GENERAL FACTS**

41. Paragraphs 1 through 37 and the paragraphs following this cause of action are incorporated by reference as fully set forth herein.

42. In February 2009 the Sundquists sought modification of their home loan through their servicer, Defendants Bank of America. They were told that their application had been lost and a modification had neither been denied or accepted.

43. Bank of America claimed they did not receive modification documents several times, and told Ms. Sundquist that Bank of America had no intent to accept their application for modification.

44. Plaintiff hired counsel to assist them in negotiating and communicating with Bank of America and file a Chapter 13 bankruptcy.

45. Due to the pending foreclosure and Bank of America wrongfully denying attempts to modify the Sundquists home loan, Plaintiffs filed a Chapter 13 bankruptcy to save their home. Their counsel advised Bank of America of the Bankruptcy and provided a case number. Plaintiffs made two payments on their plan. The Bank sold the home and did not notice the Sundquists or counsel that it had done so in violation of the say. Counsel for B o A continued to appear in Court representing an interest in the home that they had already foreclosed and sold.

46. On or around June 25, 2010, after receiving notice that Defendant's violated the automatic stay, RECONTRUST foreclosed on the subject property in willful violation of the automatic stay.

## PROCEDURAL HISTORY- TITLE

47. The Sundquists' purchased the property in 2008 on September 19, 2008, a Deed of Trust (DOT) securing the Note was recorded related to the subject property. The original lendor was MISSION HILLS, the original beneficiary was Mortgage Electronic Registration Systems, Inc. (MERS) and the original Trustee was Hartford Escrow, Inc. (EXHIBIT)

48. On September 19, 2008, a Deed of Trust ("DOT") securing the Note was recorded related to the Subject Property. The original lender was MISSION HILLS, the original Beneficiary was Mortgage Electronic Registration Systems, Inc. ("MERS") and the original Trustee was Hartford Escrow, Inc. (Exhibit A).

49. On July 21, 2009, a Notice of Default ("NOD") was recorded by Betty Jo Livingston of Recon trust Company, N.A., as agent for the Beneficiary by LandSafe Title Corporation, as its Attorney in Fact. (Exhibit B).

50. On October 28, 2009, a Substitution of Trustee was recorded by Regina Myles, Assistant Secretary for MERS. It substitute RECONTRUST as the new trustee. (Exhibit C).

51. On October 28, 2009, a Notice of Trustee's Sale ("NOTS") was recorded by K Warner Team Member for RECONSTRUST. It set the trustee's sale date as November 12, 2009. (Exhibit D).

52. On June 15, 2010, Plaintiffs filed Chapter 13 Bankruptcy in the Federal Bankruptcy Court for the Eastern District of California. Plaintiffs had filed and successfully received a discharge under Chapter 7 before filing the Chapter 13 to save their home.

53. When they filed the Chapter 13, they received a full automatic stay according to 11 U.S. 362.

54. Plaintiffs notified all Defendants of the bankruptcy filing and automatic stay by and through their bankruptcy counsel of record, Dennise S. Henderson.

55. Plaintiffs made the Chapter 13 plan payments according to applicable bankruptcy code to the Chapter 13 standing trustee.

56. On June 16, 2010, despite notice of the bankruptcy filing as provided by Plaintiffs' bankruptcy counsel, Plaintiffs, home was sold in violation of the automatic stay.

57. On June 25, 2010, a Corporation Assignment Deed of Trust was recorded by Angelica Del Toro, Assistant Secretary for MERS. It transferred all beneficial interest to BAC Home Loans Serving, LP FKA Countrywide Home Loans Servicing LP. (Exhibit E).

58. On June 25, 2010, a Corporation a Trustee's Deed upon Sale ("TDUS") was recorded by Angelica Del Toro, Assistant Secretary for RECONTRUST, RECONTRUST granted the real property to BAC Home Loans Servicing, LP FKA Countrywide Home Loans Servicing LP. (Exhibit F).

59. On July 1, 2010, Defendant BAC filed a request for Special Notice (Exhibit G) with the Eastern District Bankruptcy Court, indicating that by this date they actually knew of the bankruptcy filing. No requests for relief from stay were filed by any Defendant.

60. On July 8, 2010, Plaintiffs received a 3-day Notice to Quit. (Exhibit H).

61. On July 23, 2010, BAC filed a complaint for unlawful detainer against Plaintiffs in Superior Court of the State of California, County of Placer.

62. On August 31, 2010, an Assignment of Deed of Trust was recorded by Nichole Clavadetscher, Certifying Officer for MERS as Nominee for Mission Hills Mortgage. It assigned the DOT to BAC. (Exhibit I).

63. Plaintiffs repeatedly called BANA and BAC to ask why their house was sold while the bankruptcy stay was pending and representatives for Defendants verbally admitted that they sold the house in error.

64. Plaintiffs, fearing eviction by the sheriff at any time, subject to continued harassment by strangers due to the unlawful sale of their home, and being concerned with the effect this and a mid-semester school transfer may have on their children, and the stress it was causing Renee, Erik moved his family out of the Subject Property in September 2010. Plaintiffs then moved into a rental home.

65. Plaintiffs spent a significant amount of money on their new rental home, including moving costs new carpet cleaning/landscaping, painting and hauling.

66. After Plaintiffs moved out, the locks were changed on the Subject Property and no trespassing signs were posted on the windows.

67. The Subject Property was left unattended by the alleged "owners."

68. On December 23, 2010, the Eastern District Bankruptcy Court issued the Order Closing the Chapter 13 Bankruptcy filed by Plaintiffs. No Defendants filed any motions requesting relief from stay.

69. On December 30, 2010, a Notice of Rescission of Trustee's Deed upon Sale pursuant to Civil Code 1058.5 was recorded by Flor Valerio, Assistant Secretary for BAC, and by Christina Balandran, Assistant Secretary for RECONTRUST. It rescind the Trustee's Sale and purported TDUS and returned the priority and existence of all title and status-quo-ante as existed prior to the trustee's sale. (J). Defendants did not notice the Sundquists.

70. Although title was restored in Plaintiffs' names, Plaintiffs could not access the Subject Property because the locks had been changed. Furthermore, Plaintiffs children were now attending school in another school district and Plaintiffs were locked into a residential lease at the new rental property. Plaintiffs could not pay for both homes simultaneously and uproot their children mid-semester. Plaintiff was obligated in a valid residential lease with payments at or about $4000.00 per month for a period of twelve months commencing in September 2010.

71. Plaintiff RENEE SUNDQUIST has incurred significant life threatening and physical damage due to the stress, harassment, reckless disregard of BANA and ReconTrust. These medical expenses are continuing.

72. All of Ms. Sundquist's medical issues are directly related to the wrongful acts of the Defendants. Ms. Sundquist skated for Italy in the Olympics. Ms. Sundquist can no longer skate or teach ice skating due to the l Defendants wrongful, reckless and intentional acts that are continuing to date. She cannot work has not been able to care for herself or her family and has been disabled by the actions of Defendants.

73. Plaintiff RENEE SUNDQUIST was working part time during 2010 teaching ice skating. The position was offered to her as a full time position at $80,000 a year. Due to the emotional and

physical damage caused by the actions of the defendants, she was unable to accept that job and is currently unable to work.

74. Plaintiff RENEE SUNDQUIST suffered loss of consortium with her husband Plaintiff ERIK SUNDQUIST due to her disabilities brought on by the actions of the Defendants. Her ability to function was greatly impaired as a wife and mother. She had debilitating migraines, clinical depression, anxiety attacks; fibromyalgia, self-mutilating. The medication for these diseases were nearly as deadly and disturbing as the original problem it was meant to treat.

75. Plaintiff RENEE SUNQUIST suffered depression, anxiety, and debilitating migraines due to the actions of the Defendants which caused a loss of her participation as a parent. The emotional damage associated to that loss is significant.

76. Plaintiff ERIK SUNDQUIST had a successful career as an actor and a businessman. He was offered an audition for a significant part however, due to the condition of his wife and children, he did not read for it and then lost his  very well regarded agent. This loss has been significant to his career that he had been building for many years in the television, film and theater industry. He had to become a full time care taker for his children and his wife.

///
///
///
///

# FIRST CAUSE OF ACTION

## Willful Violation of the Automatic Stay Imposed by 11 USC 362 by Foreclosure on the Subject Property

74      Paragraphs 1 through 73 and the paragraphs following this cause of action are incorporated by reference as though fully set forth herein.

75.      Plaintiffs filed for Chapter bankruptcy relief on June 15, 2010 and duly gave notice before and after the bankruptcy filing.  Defendant's counsel also gave notice to the Defendants regarding the stay.

76.      Defendants show knowledge of the stay by their filing of their claim in the bankruptcy proceeding at issue; by rescinding the sale many months later and not telling the Sundquists;

by appearing in Bankruptcy Court and requesting special notice and by the bankruptcy court and counsel in written notice.

77.     On or around June 25, 2010, despite proper notice to Defendants and despite a valid 362 automatic stay, Defendants sold Plaintiffs primary residence and caused to be issued a Trustee's Deed Upon Sale transferring title to Defendant BAC.

78.     Plaintiff RENEE SUNDQUIST and ERIK SUNDQUIST have suffered severe emotional distress and have medical expenses related to the false promises, violation of the modification promises, wrongful foreclosure and eviction in violation of the 362 stay.

79.     Plaintiffs have actual damages including but not limited to significant Home Owners Association ("HOA") fines and fees and legal expenses, costs of having to move suddenly (with no assistance from Recontrust), damage to the residence while in the possession and ownership of Bank of America; and other related costs. The total of these costs is in excess of $50,000. Due to their inaction a lawsuit has been filed by their Homeowners Association against them and they will incur attorney fees and costs to defend this lawsuit which is due to the actions of Bank of America when they were in title or had not noticed the Sundquists. All are due to the admittedly wrongful foreclosure and sale, wrongfully filing an unlawful detainer, and noticing the public that not only was the house foreclosed which was untrue, but that it was for sale. All of this and continued attempts to evict the family after notice to Bank of America caused all of the actual damages.

80.     Plaintiff's further demand attorney fees related to the filing of the bankruptcy, defense of the eviction proceedings, violation of the automatic stay; intentional emotional damages, personal injury, damage to credit and intentionally and/or negligently reporting the foreclosure and the eviction in the public record;; false promises; illegally changing the locks; illegal lockout; failure to notice the party of a change of title in their name, damage to property, conversion and punitive damages

81.     The Court in *In re Davis*, stated: "We concur with the authorities holding that dismissal of the underlying bankruptcy case does not render moot an action for damages based on willful violation of the automatic stay. Willful violation is an intentional tort for which compensatory and punitive damages may be awarded. 11 U.S.C. 362(h). Imposition

of damages for willful violation of the automatic stay serves compensation for and punishment of intentionally wrongful conduct. See In re Carroll, 903 F2d 1266 (9th Cir. 1990) action for damages for violation of stay not moot even if action for injunctive relief is moot). Stated differently, intentionally wrongful conduct should not be excused merely because the underlying bankruptcy case has been dismissed. Thus, we conclude that "a legally cognizable interest in the outcome of the (adversary proceeding) survive the bankruptcy." *In re Universal Farming Industries*, 873 F2d 1334, 1336 (9th Cir. 1989). *Davis v. Courtington (In re Davis).* 177 B.R. 907, 911-12 (1995).

82.     Accordingly Plaintiff's action for damages survives the dismissal of the Bankruptcy. Plaintiff's incurred direct damages as a proximate cause of BANA and RECONTRUST's actions herein detailed which deprived them of the quiet enjoyment of their home for more than six months, and to date have continued to demand a foreclosure. Moreover, Defendants disregarded all evidence of their wrongful acts and did nothing to mitigate Plaintiff's damages. Plaintiffs are also entitled to punitive damages as the violation of stay was obvious, intentional, and notorious. More importantly, the damages done to the Sundqists are shocking and outrageous.

## SECOND CAUSE OF ACTION

### Willful Violation of the Automatic Stay Imposed by 11 USC 362 by filing Unlawful Detainer Complaint

83      Paragraphs 1 through 82 and the paragraphs following this cause of action are incorporated by reference as though fully set forth herein.

84.     Defendants BAC actually knew about the bankruptcy prior to July 1, 2010 because they were noticed by counsel both before and after the filing of the bankruptcy of the entry of the stay and that a sale would be a violation. Bank of America and Recontrust then filed a Request for Special Notice with the Eastern District Bankruptcy Court on July 1, 2010 indicting they knew there was a bankruptcy filing and therefore needed to rescind the sale immediately before the damage to the Sundqists was further exasperated.

85.     Thereafter, on or about July 8, 2010, Defendants caused to be served on Plaintiffs a Notice to Quit the Subject Property.

86.     On or around July 23, 2010, Defendant BAC caused to be filed a Complaint in Unlawful Detainer against Plaintiffs, further violating the automatic stay.

87.     Although Plaintiffs and their Counsel called BANA and BAC multiple times about the bankruptcy filing and the continued actions against them, Defendants continued to pursue eviction of the  Plaintiffs from the property in violation of the 362 automatic stay.

88.     Defendants acted with notice and actual knowledge of the bankruptcy filing. Defendants acted willfully and in blatant disregard for the Eastern District Federal Court and the impending damages to the Sundquists.

89.     Plaintiffs were subject to constant harassment due to the property being wrongfully sold and listed for sale, eviction proceedings, notices on their doors, people looking in their windows, speaking to their neighbors, slandering them to neighbors, to the Court and to the public.

90.     Plaintiffs were actually damaged.  Plaintiff Renee Sundquist suffered severe, life threatening and life altering physical symptoms related to the emotional distress from the acts of Defendants. (severe anxiety, clinical depression, fibromyalgia, chronic migraine headaches which render her incapacitated.  She is no longer able to work.  This consisted of the lies and false promises to the Sundquists during their modification; the wrongful foreclosure, eviction, having to uproot their children by moving rapidly, learning, after hiring counsel that BANA finally admitted the sale was unlawful and rescinded They included hospitalizations for physical reactions to the stress, inability to function and care for her children, be a partner to her husband, and accept a significantly prestigious position which paid over 80k per year. In addition she no longer can skate due to the damages from the stress.  Ms. Sundquist skated for Italy in the Olympics and placed fifth.  She was teaching part time and was offered a full time position of 80k per year.

91.     Plaintiffs further suffered damage to the property while it sat empty.  The locks were changed.  The lawn died.  The home was stripped of all appliances in addition to other damages.  HOA fines accrued.  The Homeowners Association has filed a lawsuit in State

15

Court in Placerville and a lien is currently on their property. The action is based on the the damage to their property when it was not in their possession.

92.     As recently as May of 2012 Bank of America received correspondence from the Sundquists asking for a correct pay off amount (considering the house was not in their name for a significant period of time (September 1, 2010 – January 31, 2012 (received keys April 5, 2011; could not move in until January 31, 2012.) . In addition they have damaged the contractual relationship with their home owners association and since Mr. Sundquist works in this field, damage to his business reputation.

93.     Plaintiffs incurred moving expenses, both when they were forced to leave the home unlawfully and then a second time when they finally learned the sale was rescinded and they received the keys back from BANA, only to find their home stripped and virtually uninhabitable.

94.     Plaintiffs have incurred significant attorney's fees related to the violation of the 362 stay. The filing of the bankruptcy would not have been necessary if Defendants had not given false promises, inaccurate information and ignored the law.

95.     Plaintiffs are entitled to punitive damages related to Defendants' willful and continual violations of the 362 automatic stay. In addition their conduct and the damages related to it are outrageous and shock the conscience of the community.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Defendants and each of them as follows:

1.      That judgment is entered in Plaintiffs' favor and against Defendants, and each of them;

2.      For damages, disgorgement, and injunctive relief;

3.      For compensatory and statutory damages, attorneys' fees, and costs according to proof at trial;

4.      For punitive damages in an amount sufficient to punish Defendants' wrongful conduct and deter future misconduct;

5.      On all causes of action, for cost of suit herein;

6.      On all causes of action, for pre- and post-judgment interest;

16

7.    On all causes of action, for which attorneys' fees may be awarded pursuant to the governing contract, by statute or otherwise, reasonable attorneys' fees; and costs.

8.    On all causes of action, for such other and further relief as this Court may deem just and proper so that Plaintiffs shall recover restitution or compensatory damages.

DATED:                                    Respectfully Submitted:

_____

DENNISE S. HENDERSON

Attorney for Plaintiffs, Erik Sundquist
& Renee Sundquist

Plaintiff Sundquists' Second Amended Complaint for Damages