**FILED**

NOV 15 2017

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

FOR PUBLICATION

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

In re: ERIK SUNDQUIST and RENÉE )
SUNDQUIST, )
                Debtors. )    Case No. 10-35624
                     )
_____ )
ERIK SUNDQUIST and RENÉE )
SUNDQUIST, )    Adv. Pro. No. 14-02278
              Plaintiffs, )
v. )
                     )
BANK OF AMERICA, N.A.; )    Docket Control No. ELG-1
RECONTRUST COMPANY, N.A.; BAC )
HOME LOANS SERVICING, LP, )
              Defendants. )
_____ )

**OPINION ON MOTION TO EXPUNGE ATTORNEYS' FEE LIEN**

**Before: Christopher M. Klein, Bankruptcy Judge**

---

Mark E. Ellis, Ellis Law Group, LLP, Sacramento, California, for Plaintiffs.

Orly Degani, Degani Law Offices, Los Angeles, California; Sandor T. "Ted" Boxer, Law Offices of Sandor T. Boxer, Los Angeles, California, for Dennise Henderson, Attorneys' Lien Claimant.

---

CHRISTOPHER M. KLEIN, Bankruptcy Judge:

This Motion to Expunge an attorneys' fee lien asserted by the debtors' former attorney involves an important tool in the judicial toolbox for addressing the dilemma of counsel who incompetently represent debtors who have a meritorious case.

Former counsel asserts an attorneys' fee lien as a challenge to the bankruptcy court's power to cancel an attorneys' contract under Bankruptcy Code § 329(b), 11 U.S.C. § 329(b), and to limit fees for debtors' counsel to "reasonable" compensation.

The lien is being used as a device to create "hold-up" value by impeding settlement efforts by plaintiffs and defendant in order to extract a fee "far higher" than what this court authorized as "reasonable" compensation under § 329(b).

The Motion to Expunge is GRANTED; the § 329(b) order requiring that the plaintiffs pay the former attorney $70,000.00 as § 329(b) "reasonable" compensation remains in effect.

<u>Facts</u>

The underlying facts are set forth in this court's reported decision, <u>Sundquist v. Bank of America, N.A.</u>, 566 B.R. 563, 571-85 (Bankr. E.D. Cal. 2017), and will be merely summarized here.

Attorney Dennise Henderson represented Erik and Renée Sundquist in their chapter 13 case filed June 14, 2010. A series of automatic stay violations by Bank of America, including foreclosure, prosecution of an unlawful detainer action, and other uncivilized conduct ensued that prompted the Sundquists to give up their effort to use a chapter 13 plan to cure a bank-induced default while they attempted to negotiate a mortgage modification. They voluntarily dismissed the chapter 13 case on September 20, 2010, and Ms. Henderson ceased to represent them.

Presaging what was to come when she re-emerged in 2014 for the eventual stay violation litigation, during the period between filing the case on June 14 and dismissing on September 20, 2010, Ms. Henderson made no complaint to the court and did not figure out an effective strategy to bring Bank of America to book for its stay violations.

After the chapter 13 case was dismissed, Bank of America

2

1   kept exacerbating the consequences of its prior stay violations.

2       The Sundquists, represented by another not-very-competent

3   counsel, sued under state law in 2011, which complaint was

4   dismissed by the state trial court.  On appeal, the California

5   Third District Court of Appeal, while critical of the poor

6   quality of the drafting of the complaint, reversed the dismissal

7   in 2014, ruling that the complaint stated causes of action on six

8   state-law counts including deceit and various fiduciary breaches.

9       As to the count alleging wrongful foreclosure, however, the

10  California appellate court invoked conflict preemption to rule

11  that Bankruptcy Code § 362(k)(1) preempts state-law wrongful

12  foreclosure claims that are based solely on violation of the

13  automatic stay and concluded that such claims are within

14  exclusive federal jurisdiction.  It ruled that if the Sundquists

15  desired relief on account of the bankruptcy automatic stay

16  violations, they would have to return to federal court.

17      The Sundquists re-employed Ms. Henderson to prosecute their

18  § 362(k)(1) cause of action in federal court.  Upon filing, the

19  district court referred the civil action to this bankruptcy court

20  as a core proceeding.[1]  Accordingly, this court presided over the

21  discovery phase, in which there were discovery disputes, and

22  presided over the bench trial.

23      At trial, the evidentiary presentation orchestrated by Ms.

24  Henderson consisted of little more than the testimony of the

25  Sundquists, accompanied by a long and vague declaration that

26  summarized the contents of Renée Sundquist's diary, which

27  _____

28      [1]This court does not question the litigation judgment to
    focus only on the § 362(k)(1) cause of action.

declaration was admitted by agreement of the parties.  Ms.
Henderson did not attempt to introduce the actual diary, extracts
of which came into evidence as exhibits that had been marked by
Bank of America and that were admitted under the circumstances
described in footnote 58 of the opinion, without sponsorship by
Ms. Henderson.  _Sundquist_, 566 B.R. at 590 n.58.

Although various items of physical damages and economic
damages were the subject of testimony, there was virtually no
corroborative documentary evidence.  This left the court in the
uncomfortable position of having to note in its decision that
"some components of actual damages will be less than what might
have been proved with more precise evidence."  _Sundquist_, 566
B.R. at 590.  Time and time again, this court was forced to
estimate damages in various categories on the low side and
include a footnote to the effect that if the case were to need to
be retried, the Sundquist evidence likely would be considerably
more robust.  _E.g._, _Sundquist_, 566 B.R. at 604 n.88.

Since § 362(k)(1) is unusual in that it specifies that
attorney fees are a component of actual damages, with the
consequence that fees could operate to increase punitive damages,
and not merely be an additional charge, it was important to
ascertain Ms. Henderson's legitimate fees.

Ms. Henderson did not comply with the requirement of Federal
Rule of Bankruptcy Procedure 2016(b) that she file, within 15
days after executing the fee agreement with the Sundquists for
representing them in the adversary proceeding, the statement
required by § 329 disclosing the compensation agreed to be paid.
Accordingly, this court issued an order reminding Ms. Henderson

of the applicability of § 329 and of Rule 2016(b) and directing
her to file the delinquent statement.

The ensuing supplemental statement stated that fees were on
an unspecified contingency. Case 10-35624, Dkt. 69 (9/12/16).

This court thereupon, consistent with Federal Rule of
Bankruptcy Procedure 2017(b), ordered that Ms. Henderson file a
copy of the contingency fee agreement. The order explained that
contingency fee agreements are subject to § 329(b) review for
reasonable value of services and noted that it is not clear that
a contingency fee is consistent with the attorneys' fee structure
in § 362(k)(1). The order required that she justify the agreed
contingency fees as representing the reasonable value of services
within the meaning of § 329(b) and that she explain how the
contingency fees comported with the attorneys' fee structure set
forth in § 362(k)(1). Case 10-35624, Dkt. 70 (9/14/16).

Ms. Henderson filed a copy of a contingency fee agreement
dated October 22, 2014. Case 10-35624, Dkt. 74 (9/23/16). In
fact, the "Attorney-Client Fee Agreement" was two different
documents pasted together with non-consecutive paragraphs. The
first two pages end in the middle of paragraph no. 3; the third
page, in a distinctly different typeface, began with paragraph
no. 11.[2] It is now conceded that this was a 2016 document back-

---

[2]It has now been revealed that the purported agreement that
Ms. Henderson filed was a 2016 back-dated reconstruction and
revision of a supposed 2014 agreement that has never been
provided. Exhibits filed by Ms. Henderson responding to this
motion to expunge attorneys' lien included an email exchange in
September 2016, containing three different versions of an
Attorney-Client Fee Agreement, which was being "re-created" and
signed at that time. Adv. Pro. 14-02278, Dkt. 452 (9/12/17), Ex.
1, pp. 30-47.
All three of these versions differ from what was actually

1  dated to 2014.  Although Ms. Henderson now explains that she

2  filed an inaccurate copy of her fee agreement and "apologizes,"[3]

3  she has not filed a corrected copy.

4      Ms. Henderson also filed a Supplemental Briefing Regarding

5  Attorneys' Fees in which she urged that § 329(b) reasonable

6  compensation be determined consistent with 11 U.S.C. § 330(a)(3)

7  which looks to the nature, extent, and value of services, taking

8  into account all relevant factors, including, time spent, rates

9  charged, and customary compensation of comparably skilled

10  attorneys in other cases.  She added, "I will file a time billing

11  with the actual time expended and will only seek the lesser of

12  the contingency agreement or the reasonable hourly rate times the

13  number of hours expended consistent with the Lodestar method."

14  Other than a naked assertion that customary compensation can be a

15  contingency fee, she offered no justification for the contingency

16  fee agreement. Case 10-35624, Dkt. 73 (9/23/16).

17      Ms. Henderson filed a declaration documenting 207.56 hours

18

19  filed on September 23, 2016.  Version 1, transmitted by Ms.
    Henderson to the Sundquists September 19, 2016, has only the

20  signature of Ms. Henderson, back-dated to 11/2/14.  Dkt. 452
    (9/12/17), Ex. 1, pp. 33-35.  Version 2, transmitted by Mr.

21  Sundquist to Ms. Henderson, adds to version 1 the signature of
    Mr. Sundquist, back-dated to 11/2/14.  Dkt. 452 (9/12/17), Ex. 1,

22  pp. 37-39.  Version 3 is not identical to versions 1 and 2 and
    has the signatures of both Sundquists and Ms. Henderson, back-

23  dated to 10/22/14.  Dkt. 452 (9/12/17), Ex. 1, pp. 43-45.  Ms.
    Henderson's message accompanying the transmission of version 3

24  is: "Sorry round three with this fee agreement.  I have to have
    language in there that lays out exactly how you are made whole.

25  Just a few changes in language if you don't mind taking a look at
    one more and if you have questions give me a call otherwise send

26  it back with signatures."  Ex. 1, pp. 46-47.

27

28  .    [3]Declaration of Dennise Henderson in Support of Her
    Opposition to the Sundquists' Motion to Expunge Her Attorneys'.
    Fees Lien, Adv. No. 14-02278, Dkt 451, ¶ 22 (9/12/17).

spent on the § 362(k)(1) adversary proceeding at a rate of $300.00 per hour (= $62,268), together with costs for depositions, transcripts, and trial binders of $6,606.55 for a total of $68,874.55.  Case 10-35624, Dkt. 75 (9/26/16).[4]

Mindful that lodestar compensation measured by counsel's billing rate multiplied by the number of hours devoted to the case, plus reimbursement of actual costs, is "strongly" presumed to be reasonable, Burgess v. Klenske (In re Manoa Finance Co.), 853 F.2d 687, 691-92 (9th Cir. 1988), this court fixed the attorneys' fee component of § 362(k)(1) actual damages at $70,000.00.  This was actually more than the lodestar amount that Ms. Henderson stated that she was requesting.

Ms. Henderson did not seek an enhancement above her lodestar compensation.  Nor did she proffer specific evidence to rebut the presumption against a bonus.  Pennsylvania v. Delaware Valley Citizens Council for Clean Air, 478 U.S. 546, 564-69 (1986).

Treating Ms. Henderson's doctored, back-dated contingency fee agreement at face value, this court concluded that the contingency fee exceeded the reasonable value of services within the meaning of § 329(b) and canceled the agreement.  Two adequate, independent reasons support that conclusion.

First, as stated in this court's published decision on the merits, the structure of § 362(k)(1) that incorporates fees as an element of actual damages leads to a nonsensical loop.

---

[4]Although Ms. Henderson now says that she omitted time and expenses, she has not sought to document additional time and expenses.  Declaration of Dennise Henderson in Support of Her Opposition to the Sundquist' Motion to Expunge Her Attorneys' Fees Lien, Adv. No. 14-02278, Dkt 451, ¶ 21 (9/12/17).

The second adequate, independent reason was Ms. Henderson's lack of competence.  This court, out of distaste for being overtly critical of individual counsel, initially preferred to address the problem of her lack of competence between the lines by way of comments scattered throughout the opinion.

Now, however, that Ms. Henderson has announced her intention to appropriate to herself more of the Sundquists' recovery than $70,000.00 and has promised to appeal, the appellate courts deserve candor from the trial court.

With considerable regret at the necessity of being blunt in print, Ms. Henderson's performance in this adversary proceeding was, in this court's experience of having tried bench trials in adversary proceedings and contested matters arising (as of November 14, 2017) in 151,817 bankruptcy cases since February 1988,[5] and considering the importance and magnitude of the issues involved in the litigation, among the ten weakest performances by counsel for debtors that it has had the misfortune to observe. It was as if she was in deep water, flailing with beginner strokes.  Ms. Henderson did not prepare a trial brief.[6]  Her trial presentation was disorganized.  Her notebook of plaintiffs' exhibits was slovenly assembled.  She demonstrated no proficient knowledge of the Federal Rules of Evidence or of the Federal Rules of Bankruptcy Procedure and the Federal Rules of Civil Procedure incorporated therein.  The pretrial declarations of the

---

[5]Source: Clerk, U.S. Bankruptcy Court, E.D. Cal.

[6]As this court explains whenever it does not specifically mandate a trial brief: "trial briefs are permitted but not required; good lawyers provide them, not-so-good lawyers do not."

Sundquists mandated by Local Bankruptcy Rule 9017-1 were crude
and conclusory in content.  She made no attempt to introduce the
Renée Sundquist diary into evidence, which, ironically, was
introduced by way of Bank of America's marked exhibits and wound
up putting important flesh on the bones.  Her questions were
amateurish.  She showed no ability to lay a foundation for
introducing evidence; fortunately, most of her proffered exhibits
were admitted without objection to foundation.  Her demonstration
of the facts was disjointed and difficult to decipher.  She had
no coherent theory of damages.  Her closing argument did not
connect any helpful dots.  What saved the case for the plaintiffs
was that, while poorly prepared to testify, they were so credible
that the court could not in good conscience let the poor
performance by counsel stand in the way of justice.

One reason this court's decision took some months to prepare
was that Ms. Henderson had been of no help regarding the complex
facts and legal theories.  The process of wading through all the
exhibits in the context of the testimony consumed time, required
reflection, and entailed considerable research into intricacies
of the law of actual and punitive damages.

This court's § 362(k)(1) judgment awarded the Sundquists
$1,074,581.50 in actual damages and $5,000,000.00 in punitive
damages, a total of $6,074,581.50.  Additional punitive damages
of $40,000,000.00 awarded to the Sundquists was allocated by
mandatory injunction to deliver the after-tax residue of that sum
to the National Consumer Law Center, National Consumer Bankruptcy
Center, and five public law schools.  The Sundquists were also
enjoined, by mandatory injunction, to deliver $70,000.00 to Ms.

1   Henderson as § 329(b) "reasonable" compensation.

2       Far from being the result of Ms. Henderson's performance,

3   the judgment was entered despite her work. Heretofore, the court

4   has expressed its frustration obliquely and intended to keep it

5   that way, but her subsequent activity has forced the court to be

6   explicit so that no appellate tribunal will be confused.

7       Once the Sundquists replaced her, Ms. Henderson filed a

8   Notice of Lien "by virtue of a written fee agreement with said

9   parties dated October 22, 2014," on any judgment or settlement

10   paid to secure the payment for legal services rendered and costs

11   and expenses "in accordance with the terms of the aforementioned

12   fee agreement." Adv. No. 14-02278, Dkt. 315 (4/26/17).

13       The notice of lien, by its terms, asserts a contractual lien

14   without referring to an equitable lien or quantum meruit, yet

15   from the manner in which Ms. Henderson conflates apples with

16   oranges by talking about equitable liens (and from her concession

17   that her contract has been voided under state law for violation

18   of California ethics rules) it seems that she must now be

19   asserting only an equitable lien.

20       If the issue is quantum meruit, then, as a finding of fact,

21   this court determines that the quantum Ms. Henderson's services

22   were worth did not exceed the $70,000.00 previously authorized,

23   which is more than the number of hours she devoted to the case,

24   multiplied by her normal billing rate, plus claimed expenses.

25       The present procedural posture of the case is that there are

26   pending cross-motions to reopen the evidence – Bank of America

27   wishing to expunge the Renée Sundquist diary and the Sundquists

28   to prove more damages. There is also a motion to vacate the

judgment and dismiss the adversary proceeding on account of a
settlement that would pay the Sundquists "more than" the
$6,074,581.50 provided in the judgment and muzzle them.

Ms. Henderson has been acting through counsel to interfere
with that proposed settlement by threatening to sue Bank of
America by way of collateral attack unless Ms. Henderson receives
fees that "far exceed the $70,000 allocated in Judge Klein's
March 23, 2017 decision."[7]  She also has threatened to sue the
Sundquists under the Uniform Voidable Transactions Act.[8]

---

[7] By letter dated October 9, 2017, and provided to the court
by agreement in open court, Ms. Henderson's attorney Orly Degani
wrote to counsel for Bank of America:

> ... No matter what Judge Klein decides to do regarding Ms.
> Henderson's lien on the Sundquists' judgment, Bank of
> America will be acting at its own risk if it makes any
> payment to the Sundquists in disregard of Ms. Henderson's
> claim for her fees.  While we have been kept in the dark
> thus far as to the amount of the proposed settlement between
> Bank of America and the Sundquists, it is our position that
> Ms. Henderson is entitled to a portion of the settlement sum
> in an amount yet to be determined, either by a court
> exercising proper jurisdiction over the matter (not Judge
> Klein) or by settlement with the Sundquists.  Either way,
> the fees due to Ms. Henderson far exceed the $70,000
> allocated in Judge Klein's March 23, 2017 decision.  We will
> take whatever legal steps are necessary to protect her right
> to recover the fees we believe she is due, including
> appealing or petitioning for writ relief, as appropriate,
> from any potential adverse ruling by Judge Klein.  Please be
> on notice that ignoring Ms. Henderson's fee claim in
> reliance on any ruling by Judge Klein which we will take up
> with a higher court may subject Bank of America to
> liability. ...

[8] On October 13, 2017, in an email provided to the court by
agreement in open court, Ms. Henderson's attorney Sandor "Ted"
Boxer wrote to Sundquist counsel Mark Ellis:

> ... it does not follow that the Sundquists will be free even
> if their motion to expunge is granted to at any time in the
> foreseeable future deal with the amounts sought by my client

1

<u>Jurisdiction</u>

2   Federal subject-matter jurisdiction is founded on 28 U.S.C.

3 § 1334.  This is a core proceeding that a bankruptcy judge may

4 hear and determine.  28 U.S.C. §§ 157(b)(K) & (O).

5   The challenge to jurisdiction is addressed infra.

6

7

<u>Pertinent Statutes and Rules</u>

8  § 329 Debtor's transactions with attorneys.

9    (a) Any attorney representing a debtor in a case, or in
connection with such a case, whether or not such attorney

10 applies for compensation under this title, shall file with
the court a statement of the compensation paid or agreed to

11 be paid, if such payment or agreement was made after one
year before the date of the filing of the petition, for

12 services rendered or to be rendered in contemplation of or
in connection with the case by such attorney, and the source

13 of such compensation.
    (b) If such compensation exceeds the reasonable value

14

---

15

16 regardless of Judge Klein's ultimate ruling for at least two
reasons.

17 First, Orly has already made clear what I believe has been
well known (if for no other reason than the nature of her

18 practice as an appellate attorney) that whatever ruling
Judge Klein makes is unlikely to be final for some time.  My

19 purpose by this email is to bring to your attention a second
factor impinging upon the ability of the Sundquists to deal

20 anytime soon with a significant portion of their recovery,
the potential for a suit under the Uniform Voidable

21 Transaction Act ("UFTA" [sic]) found in Civil Code section
3429 [sic - § 3439] if the Sundquists were to attempt to

22 deal inappropriately with the recovery.

23 In general the UFTA provides remedies (set aside the
transfer, punitive damages) for any attempt by the

24 Sundquists to transfer their property with the intent to
"hinder, delay or defraud" Ms. Henderson.  In measuring

25 intent, there are a variety of factors set forth in the
statute.  One of those factors is "Whether before the

26 transfer was made ... the debtor had been sued or threatened
with suit."  Clearly, the Sundquists must understand that

27 Ms. Henderson has and will pursue her legal remedies to
recover what she believes is due her. ...

28

of any such services, the court may cancel any such
agreement, or order the return of any such payment, to the
extent excessive, to –
                    (1) the estate, if the property transferred –
                    (A) would have been property of the estate;
                    or
                    (B) was to be paid by or on behalf of the
                    debtor under a plan under chapter 11, 12, or
                    13 of this title; or
                    (2) the entity that made such payment.
11 U.S.C. § 329.

        Rule 2016(b). <u>Disclosure of Compensation Paid or Promised
to Attorney for Debtor</u>.  Every attorney for a debtor,
whether or not the attorney applies for compensation, shall
file and transmit to the United States trustee within 14
days after the order for relief, or at another time as the
court may direct, the statement required by § 329 of the
Code including whether the attorney has shared or agreed to
share the compensation with any other entity.  The statement
shall include the particulars of any such sharing or
agreement to share by the attorney, but the details of any
agreement for the sharing of the compensation with a member
or regular associate of the attorney's law firm shall not be
required.  A supplemental statement shall be filed and
transmitted to the United States trustee within 14 days
after any payment or agreement not previously disclosed.
Fed. R. Bankr. P. 2016(b).

        Rule 2017(b). <u>Payment or Transfer to Attorney After Order
for Relief</u>.  On motion by the debtor, the United States
trustee, or on the court's own initiative, the court after
notice and a hearing may determine whether any payment of
money or any transfer of property, or any agreement
therefor, by the debtor to an attorney after entry of an
order for relief in a case under the Code is excessive,
whether the payment, transfer, or agreement therefor is for
services in any way related to the case.
Fed. R. Bankr. P. 2017(b).


                            <u>Analysis</u>

        In order to circumvent this court's § 329(b) order canceling

the contingent fee contract and limiting reasonable compensation

to $70,000.00, the former counsel challenges this court's

jurisdiction.  As she concedes that the actual fee contract is,

regardless of § 329(b), now unenforceable under state law, her

theory is that state-law quantum meruit principles (which equate

                              13

with "reasonable" in California law) take precedence over § 329(b) and permit a fee that "far exceeds" $70,000.00. Not so.

I

Jurisdiction is the linchpin. Henderson insists there is no federal jurisdiction over her fees for representing the Sundquists in their action enforcing Bankruptcy Code § 362 and that only a California state court may adjudicate her fees.

Her premise that the bankruptcy court's power over the attorneys' fees pursuant to § 329 terminated when the case was closed is flawed by the existence of retained jurisdiction.

Her reasoning that the absence of a bankruptcy estate and of creditors to protect deprives this court of jurisdiction to apply § 329(b) to an award payable directly to the Sundquists is incomplete because § 329(b) also protects the Sundquists.

A

Federal subject-matter jurisdiction attached with the filing of the chapter 13 case on June 14, 2010. 28 U.S.C. § 1334(a).

B

Claims of entitlement to an attorneys' fee lien for representation in actions prosecuted under federal bankruptcy jurisdiction are also within federal bankruptcy jurisdiction.

Bankruptcy jurisdiction extends to cases under title 11, and to civil proceedings arising under title 11 or arising in or related to cases under title 11. 28 U.S.C. § 1334(b).

This jurisdiction is "very broad, including nearly every

14

1  matter directly or indirectly related to the bankruptcy" and

2  "derives directly from the [Constitution's] Bankruptcy Clause,

3  which grants Congress the power '[t]o establish ... uniform Laws

4  on the subject of Bankruptcies throughout the United States.'

5  U.S. Const. art. 1, § 8." Sasson v. Sokoloff (In re Sasson), 424

6  F.3d 864, 868-69 (9th Cir. 2005).

7      Bankruptcy jurisdiction includes supplemental jurisdiction

8  pursuant to 28 U.S.C. § 1367 over all other claims that are so

9  related to claims within the court's original jurisdiction that

10  they form part of the same case or controversy under Article III

11  of the United States Constitution. Sasson, 424 F.3d at 869.

12      Discharge of a debtor does not automatically deprive federal

13  courts of jurisdiction over a claim "related to bankruptcy."

14  Sasson, 424 F.3d at 869; Kieslich v. United States (In re

15  Kieslich), 258 F.3d 968, 971 (9th Cir. 2001).

16      This includes post-confirmation bankruptcy jurisdiction over

17  state law claims such as breach of contract, breach of covenant

18  of good faith and fair dealing, and fraud where such claims have

19  a "close nexus" to the bankruptcy case. Sasson, 424 F.3d at 869;

20  Montana v. Goldin (In re Pegasus Gold Corp.), 394 F.3d 1189, 1194

21  (9th Cir. 2005).

22      Bankruptcy courts even have post-discharge jurisdiction to

23  enjoin collection actions in another country. Sasson, 424 F.3d

24  at 869; Hong Kong & Shanghai Banking Corp. v. Simon (In re

25  Simon), 153 F.3d 991, 996 (9th Cir. 1998).

26      Bankruptcy courts retain broad equitable powers to carry out

27  the provisions of the Bankruptcy Code. Johnson v. Home State

28  Bank, 501 U.S. 78, 88 (1991); Sasson, 424 F.3d at 869; Saxman v.

1  Educ. Credit Mgmt. Corp. (In re Saxman), 325 F.3d 1168, 1174 (9th

2  Cir. 2003).

3        These powers are ample for the exercise of federal

4  jurisdiction over the fees of a California lawyer, and attendant

5  liens for fees, in a bankruptcy matter notwithstanding that such

6  matters are ordinarily resolved in state courts.

7

8                                    C

9        The dismissal of the Sundquist chapter 13 case before this

10  stay enforcement action was filed does not affect the exercise of

11  bankruptcy jurisdiction over the fees of debtors' counsel.

12        After a bankruptcy case is dismissed under § 349, there

13  remains a residuum of federal bankruptcy jurisdiction.  Carraher

14  v. Morgan Electronics, Inc. (In re Carraher), 971 F.2d 327, 328

15  (9th Cir. 1992) (discretion to retain "related to" case); Fid. &

16  Dep. Co. of Md. v. Morris (In re Morris), 950 F.2d 1531, 1533-35

17  (11th Cir. 1992) (same).

18        Such residual jurisdiction includes matters "arising under"

19  the Bankruptcy Code and ancillary matters, such as dealing with

20  attorneys' fees.  Elias v. U.S. Trustee (In re Elias), 188 F.3d

21  1160, 1162 (9th Cir. 1999); Tsafaroff v. Taylor (In re Taylor),

22  884 F.2d 478, 481 (9th Cir. 1989); U.S.A. Motel Corp. v. Danning

23  (In re U.S.A. Motel Corp.), 521 F.2d 117, 118 (9th Cir. 1975).

24        Likewise, enforcement of the automatic stay is a civil

25  proceeding "arising under title 11" over which the bankruptcy

26  court retains jurisdiction after dismissal of the case.  Johnson

27  v. Smith (In re Johnson), 575 F.3d 1079, 1082-84 (10 Cir. 2009);

28  Price v. Rochford, 947 F.2d 829, 830-32 (7th Cir. 1991); Davis v.

1   Courington (In re Davis), 177 B.R. 907, 911 (9th Cir. BAP 1995);

2   cf. 40235 Washington St. Corp. v. Lusardi, 329 F.3d 1076, 1080

3   n.2 (9th Cir. 2003) (retained jurisdiction to annul § 362 stay).

4        Similarly, the attorneys' fees incurred by a debtor in

5   vindicating violations of the automatic stay remain subject to

6   § 329(b). Cases such as Elias and Tsafaroff render the

7   contention that this court lost jurisdiction over attorney fees

8   upon dismissal of the chapter 13 case lacking in merit.

9

10                               D

11        Nor did closing the Sundquist chapter 13 case terminate

12   § 1334 jurisdiction.  That much is evident from the Bankruptcy

13   Code reopening provision: "A case may be reopened in the court in

14   which such case was closed to administer assets, to accord relief

15   to the debtor, or for other cause."  11 U.S.C. § 350(b).

16        In a chapter 7 case, the closing of the case occurs

17   concurrent with termination of the services of the trustee.  11

18   U.S.C. § 350(a).  If unscheduled assets later emerge as property

19   of the estate, it is administratively necessary to reopen the

20   case in order to have a trustee appointed who may deal with the

21   assets.  Thus, when reopening a case under § 350(b), a court must

22   determine whether a trustee is necessary to protect the interests

23   of creditors and the debtor or to ensure efficient administration

24   of the case.  11 U.S.C. § 350(b); Fed. R. Bankr. P. 5010.

25        Although closing and reopening of bankruptcy cases may have

26   practical and administrative significance, reopening is not an

27   act of jurisdictional significance.  Staffer v. Predovich (In re

28   Staffer), 306 F.3d 967, 972-73 (9th Cir. 2002); Menk v. LaPaglia

(In re Menk), 241 B.R. 896, 905-06 (9th Cir. BAP 1999).

Much bankruptcy-related activity may occur without reopening a case: automatic stay enforcement; dischargeability actions; awards of compensation; imposition of sanctions; determinations of equitable subordination; contempt; dealing with unclaimed funds; motions for post-judgment relief; execution of judgments. Menk, 241 B.R. at 905-06.

It follows that the bankruptcy jurisdiction under § 1334 that attached upon filing in June 2010 survives today to enable the action against Bank of America for willful stay violations and to exercise authority over fees of debtors' counsel.

E

There are more layers to the jurisdictional onion.

Federal jurisdiction over civil proceedings "arising under" title 11 is "original but not exclusive jurisdiction;" i.e. concurrent state-federal jurisdiction.  28 U.S.C. § 1334(b).

The Sundquists' § 362 stay enforcement action is created by the Bankruptcy Code and, hence, "arises under" title 11.

The § 329(b) power to cancel attorneys' fee contracts and to limit fees to "reasonable" compensation is likewise created by the Bankruptcy Code and, hence, "arises under" title 11.

In contrast, an attorneys' lien for fees fixed through the exercise of § 329(b) authority does not "arise under" title 11. Rather, it is either "arising in" or "related to" the title 11 case.  28 U.S.C. § 1334(b).

The lien for fees fixed pursuant to § 329(b) fits best in § 1334(b) as "arising in" the case.  "Arising in" proceedings are

not based on a right expressly created by the Bankruptcy Code,
i.e. not "arising under," but would not exist if a title 11 case
had not been filed.  Eastport Assocs. v. City of Los Angeles (In
re Eastport Assocs.), 935 F.2d 1071, 1076 (9th Cir. 1991); Wood
v. Wood (In re Wood), 825 F.2d 90, 97 (5th Cir. 1987); Menk, 241
B.R. at 909; 1 COLLIER ON BANKRUPTCY ¶ 3.01[4][c][iv] (Alan Resnick
& Henry Sommer eds. 16th ed. 2016) ("COLLIER").

Henderson's claim to a lien for fees that were subjected to
§ 329(b) would not exist if the Sundquist title 11 case had not
been filed.  It is inseparable from its bankruptcy context.

Recognizing the overlap between "arising in" and "related
to," the claim for a lien for fees qualifies as "related to" the
title 11 case on the supplemental jurisdiction theory that it is
so related to the § 362 and § 329(b) claims within this court's
original jurisdictional that they form part of the same case or
controversy under Article III of the United States Constitution.
28 U.S.C. §§ 1334(b) & 1367; Sasson, 424 F.3d at 869.


F

The next layer of the onion is abstention.

Henderson's assertion that her lien-based claim to fees
must be determined by a California state court is construed as a
§ 1334(c) request for abstention.  28 U.S.C. § 1334(c).

Abstention subdivides into mandatory abstention and
discretionary abstention.


1

This cannot be an instance of mandatory abstention under

§ 1334(c)(2), which can only occur with respect to a "related to" claim under state law, because there is no action commenced that can be timely adjudicated in a state forum of appropriate jurisdiction.  28 U.S.C. § 1334(c)(2).

Indeed, this adversary proceeding arrived in federal court because the California Third District Court of Appeal ruled that the Sundquists' California cause of action for wrongful foreclosure based solely on a bankruptcy automatic stay violation is a matter of exclusive federal jurisdiction.  Regardless of whether its conclusion about exclusivity of federal jurisdiction was correct, this constitutes a ruling by a state appellate court that the Sundquists' wrongful-foreclosure-in-violation-of-automatic-stay theory belongs in federal court.

The corollary is that the California courts view attorney fees associated with such a wrongful foreclosure action premised solely on a bankruptcy automatic stay as a matter also within the jurisdiction of the federal bankruptcy court.

2

Permissive abstention is potentially available under § 1334(c)(1).  The statute provides that "nothing prevents" a court "from abstaining" in the interest of justice, or the interest of comity with state courts, or out of respect for state law.  28 U.S.C. § 1334(c)(1).  That syntax commits the abstention question to the discretion of the court.

None of the § 1334(c)(1) factors would be served by abstaining from hearing what amounts to an end-run around a bankruptcy court's § 329(b) order.  Interests of justice favor

keeping trial-related matters in the one court, subject to one appellate system.  Comity is not offended where the state court of appeals has disclaimed jurisdiction over the underlying cause of action.  Respect for state law is not a factor because, first, § 329(b) is a federal question not based on state law and, second, it is conceded that the contingency fee contract has recently been voided as not having complied with state law.

This court elects not to exercise its discretion to abstain.

G

In sum, automatic stay enforcement is a matter of retained jurisdiction under 28 U.S.C. § 1334.  Neither the dismissal of the case, nor the closing of the case vitiates the bankruptcy court's authority to redress the automatic stay violations presented in this case.

Necessarily accompanying that retained jurisdiction is the § 329 bankruptcy court authority over the attorneys' fees that are "connected with" the bankruptcy case under the overlapping "arising in" and "related to" prongs of § 1334 jurisdiction.

While this court has discretion to abstain from exercising such jurisdiction, it elects not to abstain.

II

Having concluded that the exercise of federal bankruptcy jurisdiction over the fees of debtors' counsel is appropriate notwithstanding the dismissal and the closing of the Sundquist chapter 13 case, the focus shifts to the terms of § 329(b).

A

The relevant terms of § 329 require a statement of
compensation and a remedy for excessive compensation.

Any attorney representing a debtor in connection with a case
under title 11 must file a statement of compensation agreed to be
paid, for any payment or agreement "made after one year before
the date of the filing of the petition" for services to be
rendered in connection with the case.  11 U.S.C. § 329(a).

If the agreed compensation "exceeds the reasonable value of
such services, the court may cancel any such agreement" and limit
compensation to reasonable value.  11 U.S.C. § 329(b).

1

We start with the temporal.  Payments and agreements "made
after one year before the filing of the petition" must be
disclosed in a filed statement.  11 U.S.C. § 329(a).

At face value, the payments and agreements subjected to
disclosure reach back one year before the filing of the petition
and extend after the filing of the petition indefinitely –
theoretically, to the end of time.

That no time limit is suggested in the sweep of § 329 is not
surprising.  Congress provided for a number of indefinite term
situations in the Bankruptcy Code.  Unscheduled property
(typically an undisclosed cause of action or undisclosed interest
in real estate) is not deemed abandoned and administered at the
closing of the case and retains its status as property of the
estate indefinitely.  11 U.S.C. § 554(d); e.g., In re Dunning
Bros., 410 B.R. 877, 879 (Bankr. E.D. Cal. 2009) (case filed in

1   1936 reopened in 2009 to administer undisclosed interest in real

2   estate). The automatic stay of acts against property of the

3   estate does not terminate when a case is closed and "continues

4   until such property is no longer property of the estate." 11

5   U.S.C. § 362(c)(1). The discharge injunction is permanent and

6   may lead to enforcement proceedings years later. 11 U.S.C. §

7   524(a); e.g., Lone Star Sec. & Video, Inc. v. Gurrola (In re

8   Gurrola), 328 B.R. 158, 164-76 (9th Cir. BAP 2005).

9      The § 329 obligation of an attorney for the debtor to

10   disclose fees and fee agreements is co-extensive with a debtor's

11   involvement in a bankruptcy case and remains in effect for so

12   long as § 1334 jurisdiction connected with that case survives.

13

14                            2

15      The limiting principle for § 329 lies in the phrase "in

16   connection with such a case." 11 U.S.C. § 329(a).

17      Rule 2017(b) supplies a rule of construction emphasizing

18   that "in connection with" in § 329 is a broad concept that

19   extends to "services in any way related to the case." Fed. R.

20   Bankr. P. 2017(b).

21      Representation "in connection with such a case" necessarily

22   includes everything that is premised on § 1334 jurisdiction.

23      It also includes supplemental jurisdiction under § 1367 over

24   all other claims that are so related to claims in the action

25   within the court's § 1334 original jurisdiction that they form

26   part of the same case or controversy under Article III of the

27   United States Constitution. Sasson, 424 F.3d at 869; Pegasus

28   Gold, 394 F.3d at 1195.

Representation "in connection with such a case" is not limited to actions in federal court. As § 1334(b) jurisdiction over civil proceedings arising under title 11, or arising in or related to cases under title 11 is "original but not exclusive" — i.e. concurrent federal and state jurisdiction — such actions might be prosecuted in state court. 28 U.S.C. § 1334(b).

Representation "in connection with such a case" extends to other actions in state courts in other states. The Fourth Circuit, speaking through a panel that included retired Supreme Court Justice Lewis Powell, held that two Ohio state-court actions pursued under state-law business tort theories against a bank to create leverage against that bank's nondischargeability action in a West Virginia bankruptcy case were "in connection with" the bankruptcy case. Burd v. Walters (In re Walters), 868 F.2d 665, 667 (4th Cir. 1989). In so ruling, it endorsed the broad "in any way related to" construction set forth in Rule 2017(b) and concluded that the bankruptcy court did not abuse discretion by exercising § 329(a) control over the Ohio lawyer's fees for state-court work. Walters, 868 F.2d at 666 n.1 & 667.

Here, the subject fees are for representing the Sundquists in prosecuting a § 362(k)(1) cause of action that "arises under" the Bankruptcy Code on account of automatic stay violations in their chapter 13 bankruptcy case. Such fees, beyond cavil, are "in connection with" their bankruptcy case for purposes of § 329.

3

The § 329(b) powers to cancel fee agreements and order return of payments to the extent that they exceed the "reasonable

1   value" of services are committed to the discretion of the

2   bankruptcy court.  <u>Am. Law Ctr., PC v. Stanley (In re Jastrem)</u>,

3   253 F.3d 434, 442 (9th Cir. 2001).

4

5                                      a

6        In determining "reasonable value," the touchstone is the

7   § 330(a)(3) list of considerations for determining reasonable

8   compensation for officers and professional persons.  11 U.S.C.

9   § 330(a)(3); <u>Jastrem</u>, 253 F.3d at 443 (invoking § 330(a)(3) in

10  review of § 329(b) order).

11       The considerations focus on the nature, extent, and value of

12  services, taking into account all relevant factors, including

13  time spent, rates charged, and customary compensation in

14  comparable cases.  <u>Jastrem</u>, 253 F.3d at 443; 3 COLLIER

15  ¶ 329.04[1][c].

16       In this circuit, a reasonable hourly rate multiplied by the

17  number of hours actually and reasonably expended, the so-called

18  lodestar rate, is presumptively a reasonable fee in a bankruptcy

19  case.  <u>Manoa Finance</u>, 853 F.2d at 691-92.

20       Here, Henderson documented 207.56 hours devoted to the

21  Sundquist litigation at her usual hourly rate of $300.00,

22  together with $6,606.55 in costs, for a total of $68,874.55.

23       Quality of services may be taken into account.  <u>Hale v. U.S.</u>

24  <u>Trustee</u>, 509 F.3d 1139, 1147 (9th Cir. 2007); <u>In re Sponhouse</u>,

25  477 B.R. 147-55 (Bankr. D. Nev. 2012); <u>In re Dean</u>, 401 B.R. 917,

26  922 (Bankr. D. Id. 2008).

27       Here, the court took into account the factors identified in

28  <u>Manoa Finance</u> and also considered the risk of nonpayment.  The

quality of performance was, in this court's judgment, not worthy
of $300.00 per hour.  Nevertheless, it accepted that claimed
rate, reasoning that it included an implicit enhancement (perhaps
50 percent) above normal lodestar for an attorney of her caliber
of performance that could be justified as accommodating the risk
of nonpayment.  Accordingly, the court determined that
compensation in excess of $70,000.00 would be excessive within
the meaning of § 329(b).

Although this court viewed the "reasonable value" question
through the prism of § 329(b), there is an alternative and
independent analysis that leads to the same result.  The Ninth
Circuit recognizes as part of making an actual damages award
under § 362(k)(1) the authority of a bankruptcy court to limit
fees to "fees reasonably incurred" and holds that courts awarding
fees under § 362(k)(1) "retain the discretion to eliminate
unnecessary or plainly excessive fees."  America's Servicing Co.
v. Schwartz-Tallard (In re Schwartz-Tallard), 803 F.3d 1095, 1101
(9th Cir. 2015) (en banc).

Applying Schwartz-Tallard, this court in the exercise of its
discretion is persuaded that a fee greater than $70,000.00 would
be plainly excessive.

Either way, Manoa Finance teaches that this court's award of
$70,000.00 is presumptively reasonable compensation.


                              b

Congress also provided in § 329(b) that the court may cancel
a fee agreement.  While the terms of that section do not
expressly specify a standard for determining whether to cancel

                              26

such an agreement, the ultimate question is whether the agreement would call for excessive compensation.

Contingency fee agreements are as vulnerable to cancellation under § 329(b) as hourly fee agreements. Pope v. Knostman (In re Lee), 884 F.2d 897, 899 (5th Cir. 1989) ("Regardless of whether [attorney's] fee was a flat fee or a contingency fee, [attorney] was entitled to receive compensation only for the reasonable value of the services rendered to the Debtors.").

The context of § 362(k)(1) affects the analysis of the reasonableness of a contingency fee. The statutory phrase "shall recover actual damages, including costs and attorneys' fees," makes attorneys' fees a component of damages. Schwartz-Tallard, 803 F.3d at 1099-1101.

Where attorneys' fees are an element of actual damages in a automatic stay proceeding, such as this case, in which there are undeniable and non-trivial stay violations by a deep-pocketed creditor, some degree of § 362(k)(1) liability is virtually inevitable. Any liability will bring with it the certainty that reasonable attorneys' fees will be awarded and be collectable.

The structure of the unusual approach to fees in § 362(k)(1) indicates a policy by Congress to assure that attorneys will be assured of being paid fairly for their time and effort in vindicating the rights of individual victims of stay violations. This attorney-fee-friendly policy is furthered by assuring lodestar compensation for counsel who must enforce the automatic stay for injured individuals who, in the vast majority of cases, are impecunious debtors.

The corollary to the attorney-fee-friendly damages provision

1   in § 362(k)(1) that materially reduces the risk of non-payment is

2   to undermine the standard justification of the need for

3   contingent fees — i.e. risk of nonpayment.

4        It was not irrational for Congress to create a structure

5   that links attorneys' fees to the time and effort reasonably

6   devoted to the task of enforcing the automatic stay, rather than

7   to the amount of the ultimate award.  The prospect of full

8   reasonable compensation as an element of actual damages reduces

9   the incentives for counsel to complicate stay enforcement

10  litigation by seeking extravagant punitive damages for personal

11  profit or to pursue doubtful cases on speculation.  Likewise,

12  this structure gives the stay violator an economic incentive to

13  make amends promptly, so as to minimize fee damages, rather than

14  to wage litigation warfare.

15       When this court ordered Ms. Henderson to explain how her

16  contingency fee agreement represents the reasonable value of

17  services per § 329(b) and comports with the attorneys' fee

18  structure set forth in § 362(k)(1), she did not try to square her

19  contingency fee with the statute and, instead, quoted from

20  Schwartz-Tallard and saying she "will only seek the lesser of the

21  contingency fee agreement or the reasonable hourly rate times the

22  number of hours expended consistent with the Lodestar method."

23  Supplemental Briefing Regarding Attorneys' Fees, p. 2, Case 10-

24  35624, Dkt. 73 (9/23/16).

25       It is now claimed that the "quantum meruit value of Ms.

26  Henderson's services far exceeds the $70,000 the court awarded

27  her."  Supplemental Opposition to Motion to Expunge Lien, p. 11,

28

28

Adv. Pro. 14-02278, Dkt. 511 (10/24/17).[9]  There is still no
attempt by Ms. Henderson to square a contingent fee, or a quantum
meruit equivalent, with the structure of § 362(k)(1).   The
problem remains that the lodestar fee for Ms. Henderson's
services is conceded to be $68,874.55.  If the real fees "far
exceed $70,000," then, in view of their status as actual damages,
does the actual damages award need to be increased?  How would
that be justified in light of the command of <u>Schwartz-Tallard</u> to
limit fees to fees reasonably incurred?  No answers favorable to
Ms. Henderson suggest themselves.

This court had the discretion under § 329(b) to cancel the
contingency fee agreement.  That discretion was exercised in
favor of cancellation, mindful that counsel was being fully
compensated according to her own version of lodestar principles.


                              B

Rules 2016 and 2017 implement § 329.  Fed. R. Bankr. P.2016
& 2017.


                              1

Nondisclosure and defective disclosure warrant denial of all
fees in the discretion of the court.


                              2

Rule 2016(b) required Ms. Henderson to file a disclosure of

_____

[9]The noise in Ms. Henderson's brief about the existence of a
contingency fee with the Sundquists' successor counsel is a red
herring.  This court has not endorsed that fee arrangement and
has not yet had the occasion to address it.

compensation paid or promised to be paid within 14 days of the
order for relief when the Sundquist case was filed in June 2016.
She complied with that requirement.

Rule 2016(b) also required Ms. Henderson to file a
supplemental statement within 14 days after entering into the
agreement to represent the Sundquists in their § 362(k)(1)
action.  Taking her at her word that there was an agreement
executed when or soon after she entered her appearance as counsel
on September 19, 2014, she was in default of that obligation from
2014 until September 12, 2016, when she filed a supplemental
statement that cryptically revealed "contingency" in response to
this court's order.  Case 10-35624, Dkt. 69 (9/12/16).

Rule 2017(b) permits the court on its own initiative, after
notice and a hearing, to determine whether any fee agreement with
an attorney entered after the order for relief in the case is
excessive if the agreement "is for services in any way related to
the case."  Fed. R. Bankr. P. 2017(b).

The phrase "notice and a hearing" means notice as is
appropriate in the particular circumstances and opportunity for a
hearing as is appropriate in the particular circumstances.  11
U.S.C. § 102(1)(A).

An act is authorized without an actual hearing if notice is
given properly and if an actual hearing is not requested timely
by a party in interest.  11 U.S.C. § 101(1)(B)(i).

This court complied with the notice and opportunity for
hearing requirement by way of two orders that drew written
responses from Ms. Henderson.  First, the order filed August 24,
2016, - Order that Dennise Henderson File Statement Required by

1  11 U.S.C. § 329(a) and Federal Rule of Bankruptcy Procedure

2  2016(b) — noted the procedural history, recited the requirements

3  of § 329, included a block quotation of all of § 329, explained

4  that the court is authorized to scrutinize such fees for

5  reasonableness, and included a block quotation of all of Rule

6  2016(b).  Case 10-35624, Dkt. 60 (8/24/16).  She was ordered to

7  file the supplemental statement by September 12, 2016.

8       Upon review of Ms. Henderson's supplemental Rule 2016(b)

9  statement that revealed nothing but "contingency," this court

10 entered a second order — Order that Dennise Henderson File Copy

11 of Contingency Fee Agreement and Justify Agreement Under 11

12 U.S.C. §§ 329(b) and 362(k)(1) — in which it was explained that

13 contingency fee agreements are subject to § 329(b) review for

14 reasonable value of services.  It also noted that it is unclear

15 whether a contingency fee agreement is consistent with the

16 attorneys' fee structure set forth in § 362(k)(1).  She was

17 ordered to file by September 23, 2016, a copy of her contingency

18 fee agreement and to "provide an explanation justifying the

19 agreed contingency fees as, first, representing the reasonable

20 value of services within the meaning of § 329(b) and, second, how

21 her contingency fee agreement is consistent with the attorneys'

22 fee structure set forth in 11 U.S.C. § 362(k)(1)."  Case 10-

23 35624, Dkt. 70 (9/14/16).

24      Ms. Henderson responded by filing her Supplemental Briefing

25 Regarding Attorneys' Fees.  She acknowledged that the court has

26 "authority under 11 U.S.C. § 329(b) and Federal Rule of

27 Bankruptcy Procedure 2017(b) to order a debtor's attorney to

28 return any attorneys' fees that exceeded the reasonable value of

services provided." She noted that § 330 sets out the standard for determining reasonableness under §329. And she asserted:

> it was never the intent of counsel to exceed the reasonable compensation under the [B]ankruptcy [C]ode. By separate declaration, I will file a time billing with the actual time expended and will only seek the lesser of the contingency fee agreement or the reasonable hourly rate times the number of hours expended consistent with the Lodestar method.

Case 10-35624, Dkt. 73 (9/23/16).

Next, she filed a Declaration of Dennise Henderson on Attorneys Fees and Costs in which she claimed 207.56 hours spent on the § 362(k)(1) adversary proceeding at a rate of $300.00 per hour (= $62,268), together with costs for depositions, transcripts, and trial binders of $6,606.55 for a total of $68,874.55. Case 10-35624, Dkt. 75 (9/26/16).

Based on this written exchange, this court concluded that the notice and opportunity for hearing requirement had been satisfied and that, in view of her concession that she was not seeking a contingency greater than $68,874.55, further concluded that no actual hearing was needed.

Ms. Henderson now claims that it was always her intent to collect from the Sundquists the full amount of her contingency to the extent that it exceeded lodestar compensation.

3

The counsel statements required by § 329(a) and Rule 2016(b) must include "full, candid, and complete" disclosure. <u>Neben & Starrett v. Chartwell Fin. Corp. (In re Park-Helena)</u>, 63 F.3d 877, 882 (9th Cir. 1995), <u>citing with approval</u>, <u>In re Plaza Hotel Corp.</u>, 111 B.R. 882-83 (Bankr. E.D. Cal. 1990).

Ms. Henderson's filed statement asserted that she did not

intend to collect more than reasonable compensation and that she "will only seek the lesser of the contingency fee agreement or the reasonable hourly rate times the number of hours expended consistent with the Lodestar method," which she then fixed at $68,874.55.

She did not disclose that, as she now says, she always intended to enforce the full contingency against the Sundquists. If accurate, then the disclosure to the court was materially defective because it did not disclose full relevant information.

The law of the Ninth Circuit established in Park-Helena that "even a negligent or inadvertent failure to disclose full relevant information may result in denial of all requested fees" in the discretion of the court. Park-Helena, 63 F.3d at 882.

The record admits of two possibilities, each of which would, in the court's discretion, justify complete denial of attorneys' fees. If the undisclosed intention to enforce the full contingency is not a recent fabrication, then there was a failure to disclose full relevant information for which all fees may be denied. If the undisclosed intention is a recent fabrication, then counsel has lied to the court in a declaration and papers filed in opposition to this motion for which sanctions are appropriate on a variety of theories. Either way, this court has the discretion to deny all fees.

III

Ms. Henderson waived and renounced her right to claim for additional compensation on quantum meruit or any other theory in her responses to this court's request that she justify her

33

1   contingency fee agreement under § 329(b) and § 362(k)(1).

2      First, she filed a statement saying: "it was never the

3   intent of counsel to exceed the reasonable compensation under the

4   [B]ankruptcy [C]ode. By separate declaration, I will file a time

5   billing with the actual time expended and will only seek the

6   lesser of the contingency fee agreement or the reasonable hourly

7   rate times the number of hours expended consistent with the

8   Lodestar method." Case 10-35624, Dkt. 73 (9/23/16).

9      Second, she filed a Declaration in which she claimed 207.56

10   hours spent on the § 362(k)(1) adversary proceeding at a rate of

11   $300.00 per hour (= $62,268), together with costs for

12   depositions, transcripts, and trial binders of $6,606.55 for a

13   total of $68,874.55. Case 10-35624, Dkt. 75 (9/26/16).

14      She cannot now claim more.

15

16                                 IV

17      Quantum meruit principles are not available to rescue

18   counsel from cancellation of her contingency fee contract and the

19   consequences of not disclosing her secret intent to enforce the

20   contingency fee for a sum greater than a lodestar award.

21      Under state law, the voiding of a contingency fee contract

22   disentitles the attorney to any fee greater than a "reasonable"

23   fee. Cal. Bus. & Prof. Code § 6147(b) ("failure to comply with

24   any provision of this section renders the agreement voidable at

25   the option of the plaintiff, and the attorney shall thereupon be

26   entitled to collect a reasonable fee").

27      Viewed as a matter of federal law, the equitable remedy of

28   quantum meruit is not available following the denial of fees as a

remedy for not complying with § 329(a) and Rule 2016(b). One who
has not complied with the Code and Rules lacks the requisite
clean hands. Law Offices of Ivan W. Halperin v. Occidental Fin.
Group, Inc. (In re Occidental Fin. Group, Inc.), 40 F.3d 1059,
1063 (9th Cir. 1994), citing with approval, DeRonde v. Shirley
(In re Shirley), 134 B.R. 940, 944-45 (9th Cir. BAP 1992).

Nor is quantum meruit available to counsel in state court
following denial of fees by a bankruptcy court. The Bankruptcy
Code and the Federal Rules of Bankruptcy Procedure operate to
preempt and preclude compensation on state-law theories not
recognized by the Code and Rules.

As explained in Shirley, an attorney who has been denied
fees in bankruptcy court may not pursue an alternative remedy in
state court: "to allow such a reading would be to circumvent the
operation of provisions of the Code and Rules concerning the
employment of professionals and the payment of fees in connection
with bankruptcy cases." Shirley, 234 B.R. at 944, cited with
approval, Occidental Fin. Grp., 40 F.3d at 1063.

The California courts would agree that they should defer to
the federal courts in such circumstances. The California Third
District Court of Appeal ruled in the Sundquists' state-court
appeal that a wrongful foreclosure action premised solely on
violation of the bankruptcy automatic stay is a matter of
exclusive federal jurisdiction. It follows that the state court
would regard a fee dispute deriving from that particular dispute
as also within federal jurisdiction.

Even if state-law quantum meruit is not preempted and
precluded, this court determines, as a finding of fact, that the

35

1    quantum merited, i.e. the "reasonable" fee under either federal

2    or state law, by Ms. Henderson is $70,000.00.

3

4                                    V

5         Ms. Henderson is threatening various actions in state court

6    against the Sundquists, their successor counsel, and Bank of

7    America for fees that "far exceed" $70,000.00 and for remedies,

8    including punitive damages, under California's Uniform Voidable

9    Transactions Act.

10        All such actions would constitute collateral attacks on this

11   court's § 329(b) judgment that $70,000.00 is "reasonable"

12   compensation for Ms. Henderson.  All of the predicate facts are

13   so inextricably intertwined with the § 362(k)(1) action that the

14   bankruptcy court's judgment cannot be escaped other than by way

15   of appeal.  Miles v. Okun (In re Miles), 430 F.3d 1083, 1088-91

16   (9th Cir. 2005) (§ 303(i) damages remedy preempts state tort

17   claims); Maitland v. Mitchell (In re Harris Pine Mills), 44 F.3d

18   1431, 1437-38 (9th Cir. 1995) (postpetition state law claims

19   inextricably intertwined with bankruptcy sale); Gonzales v.

20   Parks, 830 F.2d 1033, 1035-37 (9th Cir. 1987) (bankruptcy

21   preempts state law abuse of process claims).

22        Collateral attacks attempting to tunnel back on this court's

23   § 329(b) judgment are within § 1334(b) jurisdiction because this

24   court has jurisdiction to interpret and enforce its orders.

25   Travelers Indemnity Co. v. Bailey, 557 U.S. 137, 151 (2009).

26        Original federal subject-matter jurisdiction persists over

27   § 329(b) matters as "arising under" the bankruptcy case.  28

28   U.S.C. §1334(b).

                                   36

Armed with original federal jurisdiction, the defendants in any such action would be entitled to remove them under the Bankruptcy Removal Statute. 28 U.S.C. § 1452(a). In short, they would come right back here to be adjudicated.

The proper course for Ms. Henderson to challenge this court's § 329(b) judgment determining "reasonable" compensation to be $70,000.00 is to continue to appeal that order pursuant to regular federal appellate procedure. 28 U.S.C. § 158. She already has filed a notice of appeal, which will become effective when final judgment is entered. Fed. R. Bankr. P. 8002(b)(2). She is welcome to avail herself of that opportunity.

VI

The question becomes what to do. Acting pursuant to § 329(b) and relying on her representations to the court in connection with her § 329(a) and Rule 2016(b) disclosures and Rule 2017 response that her full lodestar fees were $68,874.55 and that she wanted the "lesser" of that sum or her agreed contingency fee, the court awarded Ms. Henderson $70,000.00. It was persuaded that $70,000.00 was generous in light of the quality of work and that any greater amount would exceed the reasonable value of services. To avoid ambiguity, and acting consistent with her representation that she wanted the "lesser" of contingency or lodestar, it cancelled the contingency fee agreement as permitted by § 329(b).

Now she reveals that she always secretly intended to collect the full contingency from the Sundquists. That revelation puts her in the cross-hairs of the Ninth Circuit Park-Helena doctrine

that gives this court discretion to deny all fees.  <u>Park-Helena</u>,
63 F.3d at 882.  Her statements under § 329(a) and Rules 2016(b)
and 2017 were anything but "full, candid, and complete."

    She has been litigating in a manner that equates with an
effort to sabotage the settlement her former clients have
achieved.  It is one thing to assert an attorneys' lien, which
was unnecessary in view of this court's mandatory injunction
requiring the Sundquists to pay her $70,000.00.  It is quite
another thing overtly to try to create hold-up value to extort a
settlement by creating delay and by threatening voidable transfer
litigation and punitive damages against successor counsel, former
clients, and the settling defendant.  That conduct tempts the
court to invoke <u>Park-Helena</u> to set off against the $70,000.00 all
fees and expenses incurred by the Sundquists in fending off her
demands for "far more" than the "reasonable" $70,000.00.

    Nevertheless, the fact remains that counsel undertook a
representation that other lawyers declined.  She stood up for the
Sundquists.  In the tradition of lawyers who find themselves
needing to act as amateur psychologists to clients in emotion-
charged situations, she held their hands and comforted them
through the process.  She may have flailed in water over her head
in competition with a strong-swimming defense, but at least the
facts were on her side.  While there is much to be criticized
about the quality of, and omissions in, her litigation
presentation, it was adequate – barely adequate – to enable this
court to discern the just result.

    Accordingly, this court will exercise its discretion to
refrain from using <u>Park-Helena</u> to reduce the $70,000.00 to zero

1    or to some intermediate sum.

2         The Sundquists remain under a mandatory injunction to pay

3    Ms. Henderson $70,000.00 from their recovery, enforceable by

4    contempt.  As the asserted lien is unnecessary in view of the

5    mandatory injunction, the lien will be expunged in its entirety.

6

7                              * * *

8         In short, this court has authority and jurisdiction to limit

9    counsel's fees under § 329(b) to the "reasonable" amount of

10   $70,000.00.  Although abstention over the fee dispute would be

11   permissible, this court exercises its discretion to retain

12   jurisdiction.  Under § 329(b), the "reasonable" value of services

13   rendered by debtor's counsel is $70,000.00.  Although counsel did

14   not disclose her fee arrangements in the "full, candid, and

15   complete" manner required by law, this court exercises its

16   discretion to leave untouched its $70,000.00 award.  Proceedings

17   in the nature of attempts to garner from other courts fees in

18   excess of $70,000.00 are nevertheless matters of original federal

19   jurisdiction per Judicial Code § 1334(b) as "arising under" the

20   Bankruptcy Code and will be subject to removal to this court per

21   Judicial Code § 1452.

22        This opinion contains findings of fact that supplement

23   findings made and reported at Sundquist, 566 B.R. at 570-621.

24        An order will issue expunging the subject lien.

25

26   Dated: November 15, 2017

27   _____

28   UNITED STATES BANKRUPTCY JUDGE

                              39

1

2

**INSTRUCTIONS TO CLERK OF COURT**
**SERVICE LIST**

3          The Clerk of Court is instructed to send the
attached document, via the BNC, to the following parties:

4

5  Dennise Henderson
   1903 21st Street
   Sacramento, California 95811

6

7  Orly Degani
   12400 Wilshire Blvd #400
   Los Angeles, CA 90025

8

9  Jonathan Doolittle
   Reed Smith LLP
   101 Second Street, Suite 1800

10 San Francisco, California 94105

11 James Stang and Kenneth Brown
   Pachulski Stang Ziehl & Jones LLP

12 10100 Santa Monica Blvd, #1300
   Los Angeles, California 90067

13

   Estela Pino
14 Pino & Associates
   800 Howe Avenue, Suite 420

15 Sacramento, California 95825

16 Roger N Heller
   275 Battery St 29th Fl

17 San Francisco CA 94111

18 Rhonda S Goldstein
   1111 Franklin St 8th Fl

19 Oakland CA 94607

20 Elise K Traynum
   Office of the General Counsel

21 200 McAllister St
   San Francisco CA 94102

22

   Sandor T Boxer
23 1888 Century Park E #1150
   Los Angeles CA 90067

24

   Mark E Ellis
25 1425 River Park Drive, Suite 400
   Sacramento, CA 95815

26

27

28