48 pages
Orly Degani (SBN 177741)
DEGANI LAW OFFICES
12400 Wilshire Boulevard, Suite 400
Los Angeles, CA 90025
Telephone (424) 704-8700
orly@deganiappeals.com

Sandor T. Boxer (SBN 36288)
LAW OFFICES OF SANDOR T. BOXER
1888 Century Park East, Suite 1150
Los Angeles, CA 90067-1727
Telephone: (310) 826-9780
tedb@tedboxer.com

Attorneys for Interested Party and
Former Plaintiffs' Counsel Dennise Henderson

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF CALIFORNIA
## SACRAMENTO DIVISION

| | |
|---|---|
| **In Re: ERIK SUNDQUIST and RENEE SUNDQUIST,** | ) **Bankruptcy Case No. 10-35624** |
| Debtors | ) **Chapter 13** |
| | ) **Adv. No. 14-02278** |
| _____ | ) |
| **ERIK SUNDQUIST and RENEE SUNDQUIST,** | ) **DC No.: ELG-1** |
| Plaintiffs | ) |
| vs. | ) **NOTICE OF APPEAL AND** |
| **RECONSTRUCT COMPANY, N.A.;** | ) **STATEMENT OF ELECTION** |
| **BANK OF AMERICA, N.A.; et al** | ) |
| Defendants | ) **Hon. Christopher M. Klein** |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| _____ | ) |

# NOTICE OF APPEAL AND STATEMENT OF ELECTION

## Part 1: Identify the appellants

1.      Name(s) of appellant(s):

Dennise Henderson

2.      Position of appellant(s) in the adversary proceeding or bankruptcy case that is the subject of this appeal:

For appeals in an adversary proceeding.    For appeals in a bankruptcy case and not in an adversary proceeding

☐ Plaintiff                              ☐ Debtor
☐ Defendant                        ☐ Creditor
■ Other (describe) former counsel for   ☐ Trustee
                       Plaintiffs          ☐ Other (describe)_____

## Part 2: Identify the subject of this appeal

1.      Describe the judgment, order, or decree appealed from: (1) Order Granting Motion to Expunge Lien (Attachment A) and (2) Opinion on Motion to Expunge Attorneys' Fee Lien (Attachment B).

2.      State the date on which the judgment, order, or decree was entered: November 15, 2017.

## Part 3: Identify the other parties to the appeal

List the names of all parties to the judgment, order, or decree appealed from and the names, addresses, and telephone numbers of their attorneys (attach additional pages if necessary):

1. Party: Erik J. and Renee Sundquist   Attorney: Mark E. Ellis
                                             ELLIS LAW GROUP, LLP
                                             1425 River Park Drive, Suite 400
                                           Sacramento, CA 95815
                                           Tel: (916) 283-8820

2. Party: Erik J. and Renee Sundquist    Attorney: Estela Pino
                                          PINO & ASSOCIATES
                                          20 Bicentennial Circle, Suite 200
                                          Sacramento, CA 95826
                                          Tel: (916) 641-2218

3. Party: Erik J. and Renee Sundquist    Attorney: James Stang and Kenneth Brown
                                          PACHULSKI STANG ZIEHL & JONES LLP
                                          10100 Santa Monica Blvd., #1300
                                          Los Angeles, CA 90067
                                          Tel: (310) 277-6910

## Part 4: Optional election to have appeal heard by District Court (applicable only in certain districts)

If a Bankruptcy Appellate Panel is available in this judicial district, the Bankruptcy Appellate Panel will hear this appeal unless, pursuant to 28 U.S.C. §158(c)(1), a party elects to have the appeal heard by the United States District Court. If an appellant filing this notice wishes to have the appeal heard by the United States District Court, check below. Do not check the box if the appellants wishes the Bankruptcy Appellate Panel to heard the appeal.

☐ Appellant(s) elect to have the appeal heard by the United States District Court rather than by the Bankruptcy Appellate Panel.

**Part 5: Sign below**

_____          Date: November 28, 2017
Orly Degani

_____          Date: November 28, 2017
Sandor L. Boxer
Signature of attorney for appellant(s)(or appellant(s)
if not represented by an attorney)

Name, address and telephone number of attorney
(or appellant(s) if not represented by an attorney);

Orly Degani
DEGANI LAW OFFICES
12400 Wilshire Boulevard, Suite 400
Los Angeles, CA 90025
Telephone (424) 704-8700

Sandor T. Boxer
LAW OFFICES OF SANDOR T. BOXER
1888 Century Park East, Suite 1150
Los Angeles, CA 90067-1727
Telephone:  (310) 826-9780

**Attachment A.**

**Copy of Order from which Appeal is being taken**

**Order Granting Motion to Expunge Lien**

1    **UNITED STATES BANKRUPTCY COURT**

2    **EASTERN DISTRICT OF CALIFORNIA**

3    In re:                                    ) Case No.   10-35624-C-13
                                              )
4    ERIK J. SUNDQUIST and                    )
     RENEE SUNDQUIST,                         )
5                                             )
           Debtors.                           )
6    _____        )
                                              )
7    ERIK J. SUNDQUIST, and                   )
     RENEE SUNDQUIST,                         )
8                                             )
9           Plaintiffs,                       ) Adversary No.   14-2278
                                              )
10   v.                                       )
                                              )
11   BANK OF AMERICA, N.A.;                   )
     RECONTRUST COMPANY, N.A.; BAC            )
12   HOME LOANS SERVICING, LP,                ) Docket Control Number ELG-1
                                              )
13                                            )
           Defendants.                        )
14   _____        )

15

16           **ORDER GRANTING MOTION TO EXPUNGE LIEN**

17        Plaintiff brought the motion before the court on September

18   26, 2017 at 2:00 p.m. The motion was continued to October 4, 2017

19   and subsequently to October 18, 2017 at 11:00 a.m. After oral

20   argument of the parties, the court took the matter as submitted.

21   The court having entered an opinion on the Motion to Expunge

22   Lien,

23        **IT IS ORDERED** that the Motion to Expunge Lien is GRANTED,

24   and the attorney's fee lien asserted by Dennise Henderson is

25   expunged in its entirety.

26

27   DATE: November 15, 2017

28                            _____
                              UNITED STATES BANKRUPTCY JUDGE

**ATTACHMENT A PAGE 6**

**INSTRUCTIONS TO CLERK OF COURT**
**SERVICE LIST**

The Clerk of Court is instructed to send the attached document, via the BNC, to the following parties:

Dennise Henderson
1903 21st Street
Sacramento, California 95811

Orly Degani
12400 Wilshire Blvd #400
Los Angeles, CA 90025

Jonathan Doolittle
Reed Smith LLP
101 Second Street, Suite 1800
San Francisco, California 94105

James Stang and Kenneth Brown
Pachulski Stang Ziehl & Jones LLP
10100 Santa Monica Blvd, #1300
Los Angeles, California 90067

Estela Pino
Pino & Associates
800 Howe Avenue, Suite 420
Sacramento, California 95825

Roger N Heller
275 Battery St 29th Fl
San Francisco CA 94111

Rhonda S Goldstein
1111 Franklin St 8th Fl
Oakland CA 94607

Elise K Traynum
Office of the General Counsel
200 McAllister St
San Francisco CA 94102

Sandor T Boxer
1888 Century Park E #1150
Los Angeles CA 90067

Mark E Ellis
1425 River Park Drive, Suite 400
Sacramento, CA 95815

**Attachment B.**

**Copy of Order from which Appeal is being taken**

**Opinion on Motion to Expunge Attorneys' Fee Lien**



FILED

NOV 15 2017

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

FOR PUBLICATION

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

In re: ERIK SUNDQUIST and RENÉE )
SUNDQUIST, )
                    Debtors.   )   Case No. 10-35624
_____ )
                                )
ERIK SUNDQUIST and RENÉE        )
SUNDQUIST,                      )   Adv. Pro. No. 14-02278
                    Plaintiffs, )
v.                              )
                                )
BANK OF AMERICA, N.A.;          )   Docket Control No. ELG-1
RECONTRUST COMPANY, N.A.; BAC   )
HOME LOANS SERVICING, LP,       )
                    Defendants. )
_____ )

**OPINION ON MOTION TO EXPUNGE ATTORNEYS' FEE LIEN**

**Before: Christopher M. Klein, Bankruptcy Judge**

---

Mark E. Ellis, Ellis Law Group, LLP, Sacramento, California, for Plaintiffs.

Orly Degani, Degani Law Offices, Los Angeles, California; Sandor T. "Ted" Boxer, Law Offices of Sandor T. Boxer, Los Angeles, California, for Dennise Henderson, Attorneys' Lien Claimant.

---

CHRISTOPHER M. KLEIN, Bankruptcy Judge:

This Motion to Expunge an attorneys' fee lien asserted by the debtors' former attorney involves an important tool in the judicial toolbox for addressing the dilemma of counsel who incompetently represent debtors who have a meritorious case.

Former counsel asserts an attorneys' fee lien as a challenge to the bankruptcy court's power to cancel an attorneys' contract under Bankruptcy Code § 329(b), 11 U.S.C. § 329(b), and to limit fees for debtors' counsel to "reasonable" compensation.

1    The lien is being used as a device to create "hold-up" value
2    by impeding settlement efforts by plaintiffs and defendant in
3    order to extract a fee "far higher" than what this court
4    authorized as "reasonable" compensation under § 329(b).

5        The Motion to Expunge is GRANTED; the § 329(b) order
6    requiring that the plaintiffs pay the former attorney $70,000.00
7    as § 329(b) "reasonable" compensation remains in effect.

8
9                                  Facts
10        The underlying facts are set forth in this court's reported
11   decision, Sundquist v. Bank of America, N.A., 566 B.R. 563, 571-
12   85 (Bankr. E.D. Cal. 2017), and will be merely summarized here.

13        Attorney Dennise Henderson represented Erik and Renée
14   Sundquist in their chapter 13 case filed June 14, 2010.  A series
15   of automatic stay violations by Bank of America, including
16   foreclosure, prosecution of an unlawful detainer action, and
17   other uncivilized conduct ensued that prompted the Sundquists to
18   give up their effort to use a chapter 13 plan to cure a bank-
19   induced default while they attempted to negotiate a mortgage
20   modification.  They voluntarily dismissed the chapter 13 case on
21   September 20, 2010, and Ms. Henderson ceased to represent them.

22        Presaging what was to come when she re-emerged in 2014 for
23   the eventual stay violation litigation, during the period between
24   filing the case on June 14 and dismissing on September 20, 2010,
25   Ms. Henderson made no complaint to the court and did not figure
26   out an effective strategy to bring Bank of America to book for
27   its stay violations.

28        After the chapter 13 case was dismissed, Bank of America

1　kept exacerbating the consequences of its prior stay violations.

2　　　The Sundquists, represented by another not-very-competent

3　counsel, sued under state law in 2011, which complaint was

4　dismissed by the state trial court.  On appeal, the California

5　Third District Court of Appeal, while critical of the poor

6　quality of the drafting of the complaint, reversed the dismissal

7　in 2014, ruling that the complaint stated causes of action on six

8　state-law counts including deceit and various fiduciary breaches.

9　　　As to the count alleging wrongful foreclosure, however, the

10　California appellate court invoked conflict preemption to rule

11　that Bankruptcy Code § 362(k)(1) preempts state-law wrongful

12　foreclosure claims that are based solely on violation of the

13　automatic stay and concluded that such claims are within

14　exclusive federal jurisdiction.  It ruled that if the Sundquists

15　desired relief on account of the bankruptcy automatic stay

16　violations, they would have to return to federal court.

17　　　The Sundquists re-employed Ms. Henderson to prosecute their

18　§ 362(k)(1) cause of action in federal court.  Upon filing, the

19　district court referred the civil action to this bankruptcy court

20　as a core proceeding.[1]  Accordingly, this court presided over the

21　discovery phase, in which there were discovery disputes, and

22　presided over the bench trial.

23　　　At trial, the evidentiary presentation orchestrated by Ms.

24　Henderson consisted of little more than the testimony of the

25　Sundquists, accompanied by a long and vague declaration that

26　summarized the contents of Renée Sundquist's diary, which

27

28　　　[1]This court does not question the litigation judgment to
focus only on the § 362(k)(1) cause of action.

declaration was admitted by agreement of the parties.  Ms.
Henderson did not attempt to introduce the actual diary, extracts
of which came into evidence as exhibits that had been marked by
Bank of America and that were admitted under the circumstances
described in footnote 58 of the opinion, without sponsorship by
Ms. Henderson.  <u>Sundquist</u>, 566 B.R. at 590 n.58.

Although various items of physical damages and economic
damages were the subject of testimony, there was virtually no
corroborative documentary evidence.  This left the court in the
uncomfortable position of having to note in its decision that
"some components of actual damages will be less than what might
have been proved with more precise evidence."  <u>Sundquist</u>, 566
B.R. at 590.  Time and time again, this court was forced to
estimate damages in various categories on the low side and
include a footnote to the effect that if the case were to need to
be retried, the Sundquist evidence likely would be considerably
more robust.  <u>E.g.</u>, <u>Sundquist</u>, 566 B.R. at 604 n.88.

Since § 362(k)(1) is unusual in that it specifies that
attorney fees are a component of actual damages, with the
consequence that fees could operate to increase punitive damages,
and not merely be an additional charge, it was important to
ascertain Ms. Henderson's legitimate fees.

Ms. Henderson did not comply with the requirement of Federal
Rule of Bankruptcy Procedure 2016(b) that she file, within 15
days after executing the fee agreement with the Sundquists for
representing them in the adversary proceeding, the statement
required by § 329 disclosing the compensation agreed to be paid.
Accordingly, this court issued an order reminding Ms. Henderson

1  of the applicability of § 329 and of Rule 2016(b) and directing

2  her to file the delinquent statement.

3      The ensuing supplemental statement stated that fees were on

4  an unspecified contingency.  Case 10-35624, Dkt. 69 (9/12/16).

5      This court thereupon, consistent with Federal Rule of

6  Bankruptcy Procedure 2017(b), ordered that Ms. Henderson file a

7  copy of the contingency fee agreement.  The order explained that

8  contingency fee agreements are subject to § 329(b) review for

9  reasonable value of services and noted that it is not clear that

10  a contingency fee is consistent with the attorneys' fee structure

11  in § 362(k)(1).  The order required that she justify the agreed

12  contingency fees as representing the reasonable value of services

13  within the meaning of § 329(b) and that she explain how the

14  contingency fees comported with the attorneys' fee structure set

15  forth in § 362(k)(1).  Case 10-35624, Dkt. 70 (9/14/16).

16      Ms. Henderson filed a copy of a contingency fee agreement

17  dated October 22, 2014.  Case 10-35624, Dkt. 74 (9/23/16).  In

18  fact, the "Attorney-Client Fee Agreement" was two different

19  documents pasted together with non-consecutive paragraphs.  The

20  first two pages end in the middle of paragraph no. 3; the third

21  page, in a distinctly different typeface, began with paragraph

22  no. 11.[2]  It is now conceded that this was a 2016 document back-

23  ────────────────────

24     [2]It has now been revealed that the purported agreement that
Ms. Henderson filed was a 2016 back-dated reconstruction and
25  revision of a supposed 2014 agreement that has never been
provided.  Exhibits filed by Ms. Henderson responding to this
26  motion to expunge attorneys' lien included an email exchange in
September 2016, containing three different versions of an
27  Attorney-Client Fee Agreement, which was being "re-created" and
signed at that time.  Adv. Pro. 14-02278, Dkt. 452 (9/12/17), Ex.
28  1, pp. 30-47.
     All three of these versions differ from what was actually

1   dated to 2014.  Although Ms. Henderson now explains that she
2   filed an inaccurate copy of her fee agreement and "apologizes,"[3]
3   she has not filed a corrected copy.
4       Ms. Henderson also filed a Supplemental Briefing Regarding
5   Attorneys' Fees in which she urged that § 329(b) reasonable
6   compensation be determined consistent with 11 U.S.C. § 330(a)(3)
7   which looks to the nature, extent, and value of services, taking
8   into account all relevant factors, including, time spent, rates
9   charged, and customary compensation of comparably skilled
10  attorneys in other cases.  She added, "I will file a time billing
11  with the actual time expended and will only seek the lesser of
12  the contingency agreement or the reasonable hourly rate times the
13  number of hours expended consistent with the Lodestar method."
14  Other than a naked assertion that customary compensation can be a
15  contingency fee, she offered no justification for the contingency
16  fee agreement. Case 10-35624, Dkt. 73 (9/23/16).
17      Ms. Henderson filed a declaration documenting 207.56 hours
18  ———————————————
19  filed on September 23, 2016.  Version 1, transmitted by Ms.
    Henderson to the Sundquists September 19, 2016, has only the
20  signature of Ms. Henderson, back-dated to 11/2/14.  Dkt. 452
    (9/12/17), Ex. 1, pp. 33-35.  Version 2, transmitted by Mr.
21  Sundquist to Ms. Henderson, adds to version 1 the signature of
    Mr. Sundquist, back-dated to 11/2/14.  Dkt. 452 (9/12/17), Ex. 1,
22  pp. 37-39.  Version 3 is not identical to versions 1 and 2 and
    has the signatures of both Sundquists and Ms. Henderson, back-
23  dated to 10/22/14.  Dkt. 452 (9/12/17), Ex. 1, pp. 43-45.  Ms.
    Henderson's message accompanying the transmission of version 3
24  is: "Sorry round three with this fee agreement.  I have to have
    language in there that lays out exactly how you are made whole.
25  Just a few changes in language if you don't mind taking a look at
    one more and if you have questions give me a call otherwise send
26  it back with signatures."  Ex. 1, pp. 46-47.
27
    .   [3]Declaration of Dennise Henderson in Support of Her
28  Opposition to the Sundquists' Motion to Expunge Her Attorneys'.
    Fees Lien, Adv. No. 14-02278, Dkt 451, ¶ 22 (9/12/17).

1   spent on the § 362(k)(1) adversary proceeding at a rate of

2   $300.00 per hour (= $62,268), together with costs for

3   depositions, transcripts, and trial binders of $6,606.55 for a

4   total of $68,874.55. Case 10-35624, Dkt. 75 (9/26/16).[4]

5      Mindful that lodestar compensation measured by counsel's

6   billing rate multiplied by the number of hours devoted to the

7   case, plus reimbursement of actual costs, is "strongly" presumed

8   to be reasonable, Burgess v. Klenske (In re Manoa Finance Co.),

9   853 F.2d 687, 691-92 (9th Cir. 1988), this court fixed the

10   attorneys' fee component of § 362(k)(1) actual damages at

11   $70,000.00. This was actually more than the lodestar amount that

12   Ms. Henderson stated that she was requesting.

13      Ms. Henderson did not seek an enhancement above her lodestar

14   compensation. Nor did she proffer specific evidence to rebut the

15   presumption against a bonus. Pennsylvania v. Delaware Valley

16   Citizens Council for Clean Air, 478 U.S. 546, 564-69 (1986).

17      Treating Ms. Henderson's doctored, back-dated contingency

18   fee agreement at face value, this court concluded that the

19   contingency fee exceeded the reasonable value of services within

20   the meaning of § 329(b) and canceled the agreement. Two

21   adequate, independent reasons support that conclusion.

22      First, as stated in this court's published decision on the

23   merits, the structure of § 362(k)(1) that incorporates fees as an

24   element of actual damages leads to a nonsensical loop.

25

26      [4]Although Ms. Henderson now says that she omitted time and

27   expenses, she has not sought to document additional time and

expenses. Declaration of Dennise Henderson in Support of Her

28   Opposition to the Sundquist' Motion to Expunge Her Attorneys'

Fees Lien, Adv. No. 14-02278, Dkt 451, ¶ 21 (9/12/17).

1    The second adequate, independent reason was Ms. Henderson's
2  lack of competence.  This court, out of distaste for being
3  overtly critical of individual counsel, initially preferred to
4  address the problem of her lack of competence between the lines
5  by way of comments scattered throughout the opinion.
6    Now, however, that Ms. Henderson has announced her intention
7  to appropriate to herself more of the Sundquists' recovery than
8  $70,000.00 and has promised to appeal, the appellate courts
9  deserve candor from the trial court.
10    With considerable regret at the necessity of being blunt in
11 print, Ms. Henderson's performance in this adversary proceeding
12 was, in this court's experience of having tried bench trials in
13 adversary proceedings and contested matters arising (as of
14 November 14, 2017) in 151,817 bankruptcy cases since February
15 1988,[5] and considering the importance and magnitude of the issues
16 involved in the litigation, among the ten weakest performances by
17 counsel for debtors that it has had the misfortune to observe.
18 It was as if she was in deep water, flailing with beginner
19 strokes.  Ms. Henderson did not prepare a trial brief.[6]  Her
20 trial presentation was disorganized.  Her notebook of plaintiffs'
21 exhibits was slovenly assembled.  She demonstrated no proficient
22 knowledge of the Federal Rules of Evidence or of the Federal
23 Rules of Bankruptcy Procedure and the Federal Rules of Civil
24 Procedure incorporated therein.  The pretrial declarations of the
25
26    [5]Source: Clerk, U.S. Bankruptcy Court, E.D. Cal.
27    [6]As this court explains whenever it does not specifically
28 mandate a trial brief: "trial briefs are permitted but not
required; good lawyers provide them, not-so-good lawyers do not."

Sundquists mandated by Local Bankruptcy Rule 9017-1 were crude
and conclusory in content.  She made no attempt to introduce the
Renée Sundquist diary into evidence, which, ironically, was
introduced by way of Bank of America's marked exhibits and wound
up putting important flesh on the bones.  Her questions were
amateurish.  She showed no ability to lay a foundation for
introducing evidence; fortunately, most of her proffered exhibits
were admitted without objection to foundation.  Her demonstration
of the facts was disjointed and difficult to decipher.  She had
no coherent theory of damages.  Her closing argument did not
connect any helpful dots.  What saved the case for the plaintiffs
was that, while poorly prepared to testify, they were so credible
that the court could not in good conscience let the poor
performance by counsel stand in the way of justice.

One reason this court's decision took some months to prepare
was that Ms. Henderson had been of no help regarding the complex
facts and legal theories.  The process of wading through all the
exhibits in the context of the testimony consumed time, required
reflection, and entailed considerable research into intricacies
of the law of actual and punitive damages.

This court's § 362(k)(1) judgment awarded the Sundquists
$1,074,581.50 in actual damages and $5,000,000.00 in punitive
damages, a total of $6,074,581.50.  Additional punitive damages
of $40,000,000.00 awarded to the Sundquists was allocated by
mandatory injunction to deliver the after-tax residue of that sum
to the National Consumer Law Center, National Consumer Bankruptcy
Center, and five public law schools.  The Sundquists were also
enjoined, by mandatory injunction, to deliver $70,000.00 to Ms.

1  Henderson as § 329(b) "reasonable" compensation.

2      Far from being the result of Ms. Henderson's performance,

3  the judgment was entered despite her work. Heretofore, the court

4  has expressed its frustration obliquely and intended to keep it

5  that way, but her subsequent activity has forced the court to be

6  explicit so that no appellate tribunal will be confused.

7      Once the Sundquists replaced her, Ms. Henderson filed a

8  Notice of Lien "by virtue of a written fee agreement with said

9  parties dated October 22, 2014," on any judgment or settlement

10  paid to secure the payment for legal services rendered and costs

11  and expenses "in accordance with the terms of the aforementioned

12  fee agreement." Adv. No. 14-02278, Dkt. 315 (4/26/17).

13      The notice of lien, by its terms, asserts a contractual lien

14  without referring to an equitable lien or quantum meruit, yet

15  from the manner in which Ms. Henderson conflates apples with

16  oranges by talking about equitable liens (and from her concession

17  that her contract has been voided under state law for violation

18  of California ethics rules) it seems that she must now be

19  asserting only an equitable lien.

20      If the issue is quantum meruit, then, as a finding of fact,

21  this court determines that the quantum Ms. Henderson's services

22  were worth did not exceed the $70,000.00 previously authorized,

23  which is more than the number of hours she devoted to the case,

24  multiplied by her normal billing rate, plus claimed expenses.

25      The present procedural posture of the case is that there are

26  pending cross-motions to reopen the evidence – Bank of America

27  wishing to expunge the Renée Sundquist diary and the Sundquists

28  to prove more damages. There is also a motion to vacate the

1  judgment and dismiss the adversary proceeding on account of a

2  settlement that would pay the Sundquists "more than" the

3  $6,074,581.50 provided in the judgment and muzzle them.

4      Ms. Henderson has been acting through counsel to interfere

5  with that proposed settlement by threatening to sue Bank of

6  America by way of collateral attack unless Ms. Henderson receives

7  fees that "far exceed the $70,000 allocated in Judge Klein's

8  March 23, 2017 decision."[7]  She also has threatened to sue the

9  Sundquists under the Uniform Voidable Transactions Act.[8]

10  _____

11      [7] By letter dated October 9, 2017, and provided to the court
by agreement in open court, Ms. Henderson's attorney Orly Degani

12  wrote to counsel for Bank of America:

13      ... No matter what Judge Klein decides to do regarding Ms.
14      Henderson's lien on the Sundquists' judgment, Bank of
    America will be acting at its own risk if it makes any
15      payment to the Sundquists in disregard of Ms. Henderson's
    claim for her fees.  While we have been kept in the dark
16      thus far as to the amount of the proposed settlement between
    Bank of America and the Sundquists, it is our position that
17      Ms. Henderson is entitled to a portion of the settlement sum
    in an amount yet to be determined, either by a court
18      exercising proper jurisdiction over the matter (not Judge
    Klein) or by settlement with the Sundquists.  Either way,
19      the fees due to Ms. Henderson far exceed the $70,000
    allocated in Judge Klein's March 23, 2017 decision.  We will
20      take whatever legal steps are necessary to protect her right
    to recover the fees we believe she is due, including
21      appealing or petitioning for writ relief, as appropriate,
    from any potential adverse ruling by Judge Klein.  Please be
22      on notice that ignoring Ms. Henderson's fee claim in
    reliance on any ruling by Judge Klein which we will take up
23      with a higher court may subject Bank of America to
24      liability. ...

25      [8]On October 13, 2017, in an email provided to the court by
26  agreement in open court, Ms. Henderson's attorney Sandor "Ted"
Boxer wrote to Sundquist counsel Mark Ellis:

27
    ... it does not follow that the Sundquists will be free even
28      if their motion to expunge is granted to at any time in the
    foreseeable future deal with the amounts sought by my client

<u>Jurisdiction</u>

Federal subject-matter jurisdiction is founded on 28 U.S.C. § 1334. This is a core proceeding that a bankruptcy judge may hear and determine. 28 U.S.C. §§ 157(b)(K) & (O).

The challenge to jurisdiction is addressed infra.


<u>Pertinent Statutes and Rules</u>

§ 329 Debtor's transactions with attorneys.

(a) Any attorney representing a debtor in a case, or in connection with such a case, whether or not such attorney applies for compensation under this title, shall file with the court a statement of the compensation paid or agreed to be paid, if such payment or agreement was made after one year before the date of the filing of the petition, for services rendered or to be rendered in contemplation of or in connection with the case by such attorney, and the source of such compensation.
(b) If such compensation exceeds the reasonable value

---

regardless of Judge Klein's ultimate ruling for at least two reasons.

First, Orly has already made clear what I believe has been well known (if for no other reason than the nature of her practice as an appellate attorney) that whatever ruling Judge Klein makes is unlikely to be final for some time. My purpose by this email is to bring to your attention a second factor impinging upon the ability of the Sundquists to deal anytime soon with a significant portion of their recovery, the potential for a suit under the Uniform Voidable Transaction Act ("UFTA" [sic]) found in Civil Code section 3429 [sic - § 3439] if the Sundquists were to attempt to deal inappropriately with the recovery.

In general the UFTA provides remedies (set aside the transfer, punitive damages) for any attempt by the Sundquists to transfer their property with the intent to "hinder, delay or defraud" Ms. Henderson. In measuring intent, there are a variety of factors set forth in the statute. One of those factors is "Whether before the transfer was made ... the debtor had been sued or threatened with suit." Clearly, the Sundquists must understand that Ms. Henderson has and will pursue her legal remedies to recover what she believes is due her. ...

of any such services, the court may cancel any such
agreement, or order the return of any such payment, to the
extent excessive, to –
            (1) the estate, if the property transferred –
            (A) would have been property of the estate;
            or
            (B) was to be paid by or on behalf of the
            debtor under a plan under chapter 11, 12, or
            13 of this title; or
      (2) the entity that made such payment.
11 U.S.C. § 329.

        Rule 2016(b). <u>Disclosure of Compensation Paid or Promised
to Attorney for Debtor</u>. Every attorney for a debtor,
whether or not the attorney applies for compensation, shall
file and transmit to the United States trustee within 14
days after the order for relief, or at another time as the
court may direct, the statement required by § 329 of the
Code including whether the attorney has shared or agreed to
share the compensation with any other entity. The statement
shall include the particulars of any such sharing or
agreement to share by the attorney, but the details of any
agreement for the sharing of the compensation with a member
or regular associate of the attorney's law firm shall not be
required. A supplemental statement shall be filed and
transmitted to the United States trustee within 14 days
after any payment or agreement not previously disclosed.
Fed. R. Bankr. P. 2016(b).

        Rule 2017(b). <u>Payment or Transfer to Attorney After Order
for Relief</u>. On motion by the debtor, the United States
trustee, or on the court's own initiative, the court after
notice and a hearing may determine whether any payment of
money or any transfer of property, or any agreement
therefor, by the debtor to an attorney after entry of an
order for relief in a case under the Code is excessive,
whether the payment, transfer, or agreement therefor is for
services in any way related to the case.
Fed. R. Bankr. P. 2017(b).


                          <u>Analysis</u>

    In order to circumvent this court's § 329(b) order canceling

the contingent fee contract and limiting reasonable compensation

to $70,000.00, the former counsel challenges this court's

jurisdiction. As she concedes that the actual fee contract is,

regardless of § 329(b), now unenforceable under state law, her

theory is that state-law quantum meruit principles (which equate

                              13

1  with "reasonable" in California law) take precedence over

2  § 329(b) and permit a fee that "far exceeds" $70,000.00.  Not so.

3

4                                    I

5       Jurisdiction is the linchpin.  Henderson insists there is no

6  federal jurisdiction over her fees for representing the

7  Sundquists in their action enforcing Bankruptcy Code § 362 and

8  that only a California state court may adjudicate her fees.

9       Her premise that the bankruptcy court's power over the

10 attorneys' fees pursuant to § 329 terminated when the case was

11 closed is flawed by the existence of retained jurisdiction.

12      Her reasoning that the absence of a bankruptcy estate and of

13 creditors to protect deprives this court of jurisdiction to apply

14 § 329(b) to an award payable directly to the Sundquists is

15 incomplete because § 329(b) also protects the Sundquists.

16

17                                   A

18      Federal subject-matter jurisdiction attached with the filing

19 of the chapter 13 case on June 14, 2010.  28 U.S.C. § 1334(a).

20

21                                   B

22      Claims of entitlement to an attorneys' fee lien for

23 representation in actions prosecuted under federal bankruptcy

24 jurisdiction are also within federal bankruptcy jurisdiction.

25      Bankruptcy jurisdiction extends to cases under title 11, and

26 to civil proceedings arising under title 11 or arising in or

27 related to cases under title 11.  28 U.S.C. § 1334(b).

28      This jurisdiction is "very broad, including nearly every

1   matter directly or indirectly related to the bankruptcy" and

2   "derives directly from the [Constitution's] Bankruptcy Clause,

3   which grants Congress the power '[t]o establish ... uniform Laws

4   on the subject of Bankruptcies throughout the United States.'

5   U.S. Const. art. 1, § 8." <u>Sasson v. Sokoloff (In re Sasson)</u>, 424

6   F.3d 864, 868-69 (9th Cir. 2005).

7      Bankruptcy jurisdiction includes supplemental jurisdiction

8   pursuant to 28 U.S.C. § 1367 over all other claims that are so

9   related to claims within the court's original jurisdiction that

10   they form part of the same case or controversy under Article III

11   of the United States Constitution. <u>Sasson</u>, 424 F.3d at 869.

12      Discharge of a debtor does not automatically deprive federal

13   courts of jurisdiction over a claim "related to bankruptcy."

14   <u>Sasson</u>, 424 F.3d at 869; <u>Kieslich v. United States (In re</u>

15   <u>Kieslich)</u>, 258 F.3d 968, 971 (9th Cir. 2001).

16      This includes post-confirmation bankruptcy jurisdiction over

17   state law claims such as breach of contract, breach of covenant

18   of good faith and fair dealing, and fraud where such claims have

19   a "close nexus" to the bankruptcy case. <u>Sasson</u>, 424 F.3d at 869;

20   <u>Montana v. Goldin (In re Pegasus Gold Corp.)</u>, 394 F.3d 1189, 1194

21   (9th Cir. 2005).

22      Bankruptcy courts even have post-discharge jurisdiction to

23   enjoin collection actions in another country. <u>Sasson</u>, 424 F.3d

24   at 869; <u>Hong Kong & Shanghai Banking Corp. v. Simon (In re</u>

25   <u>Simon)</u>, 153 F.3d 991, 996 (9th Cir. 1998).

26      Bankruptcy courts retain broad equitable powers to carry out

27   the provisions of the Bankruptcy Code. <u>Johnson v. Home State</u>

28   <u>Bank</u>, 501 U.S. 78, 88 (1991); <u>Sasson</u>, 424 F.3d at 869; <u>Saxman v.</u>

1　Educ. Credit Mgmt. Corp. (In re Saxman), 325 F.3d 1168, 1174 (9th

2　Cir. 2003).

3　　　These powers are ample for the exercise of federal

4　jurisdiction over the fees of a California lawyer, and attendant

5　liens for fees, in a bankruptcy matter notwithstanding that such

6　matters are ordinarily resolved in state courts.

7

8　　　　　　　　　　　　　　　　C

9　　　The dismissal of the Sundquist chapter 13 case before this

10　stay enforcement action was filed does not affect the exercise of

11　bankruptcy jurisdiction over the fees of debtors' counsel.

12　　　After a bankruptcy case is dismissed under § 349, there

13　remains a residuum of federal bankruptcy jurisdiction. Carraher

14　v. Morgan Electronics, Inc. (In re Carraher), 971 F.2d 327, 328

15　(9th Cir. 1992) (discretion to retain "related to" case); Fid. &

16　Dep. Co. of Md. v. Morris (In re Morris), 950 F.2d 1531, 1533-35

17　(11th Cir. 1992) (same).

18　　　Such residual jurisdiction includes matters "arising under"

19　the Bankruptcy Code and ancillary matters, such as dealing with

20　attorneys' fees. Elias v. U.S. Trustee (In re Elias), 188 F.3d

21　1160, 1162 (9th Cir. 1999); Tsafaroff v. Taylor (In re Taylor),

22　884 F.2d 478, 481 (9th Cir. 1989); U.S.A. Motel Corp. v. Danning

23　(In re U.S.A. Motel Corp.), 521 F.2d 117, 118 (9th Cir. 1975).

24　　　Likewise, enforcement of the automatic stay is a civil

25　proceeding "arising under title 11" over which the bankruptcy

26　court retains jurisdiction after dismissal of the case. Johnson

27　v. Smith (In re Johnson), 575 F.3d 1079, 1082-84 (10 Cir. 2009);

28　Price v. Rochford, 947 F.2d 829, 830-32 (7th Cir. 1991); Davis v.

1  Courington (In re Davis), 177 B.R. 907, 911 (9th Cir. BAP 1995);

2  cf. 40235 Washington St. Corp. v. Lusardi, 329 F.3d 1076, 1080

3  n.2 (9th Cir. 2003) (retained jurisdiction to annul § 362 stay).

4      Similarly, the attorneys' fees incurred by a debtor in

5  vindicating violations of the automatic stay remain subject to

6  § 329(b). Cases such as Elias and Tsafaroff render the

7  contention that this court lost jurisdiction over attorney fees

8  upon dismissal of the chapter 13 case lacking in merit.

9

10                              D

11      Nor did closing the Sundquist chapter 13 case terminate

12  § 1334 jurisdiction. That much is evident from the Bankruptcy

13  Code reopening provision: "A case may be reopened in the court in

14  which such case was closed to administer assets, to accord relief

15  to the debtor, or for other cause." 11 U.S.C. § 350(b).

16      In a chapter 7 case, the closing of the case occurs

17  concurrent with termination of the services of the trustee. 11

18  U.S.C. § 350(a). If unscheduled assets later emerge as property

19  of the estate, it is administratively necessary to reopen the

20  case in order to have a trustee appointed who may deal with the

21  assets. Thus, when reopening a case under § 350(b), a court must

22  determine whether a trustee is necessary to protect the interests

23  of creditors and the debtor or to ensure efficient administration

24  of the case. 11 U.S.C. § 350(b); Fed. R. Bankr. P. 5010.

25      Although closing and reopening of bankruptcy cases may have

26  practical and administrative significance, reopening is not an

27  act of jurisdictional significance. Staffer v. Predovich (In re

28  Staffer), 306 F.3d 967, 972-73 (9th Cir. 2002); Menk v. LaPaglia

1  (In re Menk), 241 B.R. 896, 905-06 (9th Cir. BAP 1999).

2      Much bankruptcy-related activity may occur without reopening

3  a case: automatic stay enforcement; dischargeability actions;

4  awards of compensation; imposition of sanctions; determinations

5  of equitable subordination; contempt; dealing with unclaimed

6  funds; motions for post-judgment relief; execution of judgments.

7  Menk, 241 B.R. at 905-06.

8      It follows that the bankruptcy jurisdiction under § 1334

9  that attached upon filing in June 2010 survives today to enable

10 the action against Bank of America for willful stay violations

11 and to exercise authority over fees of debtors' counsel.

12

13                                  E

14     There are more layers to the jurisdictional onion.

15     Federal jurisdiction over civil proceedings "arising under"

16 title 11 is "original but not exclusive jurisdiction;" i.e.

17 concurrent state-federal jurisdiction.  28 U.S.C. § 1334(b).

18     The Sundquists' § 362 stay enforcement action is created by

19 the Bankruptcy Code and, hence, "arises under" title 11.

20     The § 329(b) power to cancel attorneys' fee contracts and to

21 limit fees to "reasonable" compensation is likewise created by

22 the Bankruptcy Code and, hence, "arises under" title 11.

23     In contrast, an attorneys' lien for fees fixed through the

24 exercise of § 329(b) authority does not "arise under" title 11.

25 Rather, it is either "arising in" or "related to" the title 11

26 case.  28 U.S.C. § 1334(b).

27     The lien for fees fixed pursuant to § 329(b) fits best in

28 § 1334(b) as "arising in" the case.  "Arising in" proceedings are

1   not based on a right expressly created by the Bankruptcy Code,

2   i.e. not "arising under," but would not exist if a title 11 case

3   had not been filed.   <u>Eastport Assocs. v. City of Los Angeles (In</u>

4   <u>re Eastport Assocs.)</u>, 935 F.2d 1071, 1076 (9th Cir. 1991); <u>Wood</u>

5   <u>v. Wood (In re Wood)</u>, 825 F.2d 90, 97 (5th Cir. 1987); <u>Menk</u>, 241

6   B.R. at 909; 1 COLLIER ON BANKRUPTCY ¶ 3.01[4][c][iv] (Alan Resnick

7   & Henry Sommer eds. 16th ed. 2016) ("COLLIER").

8      Henderson's claim to a lien for fees that were subjected to

9   § 329(b) would not exist if the Sundquist title 11 case had not

10   been filed.   It is inseparable from its bankruptcy context.

11      Recognizing the overlap between "arising in" and "related

12   to," the claim for a lien for fees qualifies as "related to" the

13   title 11 case on the supplemental jurisdiction theory that it is

14   so related to the § 362 and § 329(b) claims within this court's

15   original jurisdictional that they form part of the same case or

16   controversy under Article III of the United States Constitution.

17   28 U.S.C. §§ 1334(b) & 1367; <u>Sasson</u>, 424 F.3d at 869.

18

19                          F

20      The next layer of the onion is abstention.

21      Henderson's assertion that her lien-based claim to fees

22   must be determined by a California state court is construed as a

23   § 1334(c) request for abstention.   28 U.S.C. § 1334(c).

24      Abstention subdivides into mandatory abstention and

25   discretionary abstention.

26

27                          1

28      This cannot be an instance of mandatory abstention under

1　§ 1334(c)(2), which can only occur with respect to a "related to"

2　claim under state law, because there is no action commenced that

3　can be timely adjudicated in a state forum of appropriate

4　jurisdiction.　28 U.S.C. § 1334(c)(2).

5　　　Indeed, this adversary proceeding arrived in federal court

6　because the California Third District Court of Appeal ruled that

7　the Sundquists' California cause of action for wrongful

8　foreclosure based solely on a bankruptcy automatic stay violation

9　is a matter of exclusive federal jurisdiction.　Regardless of

10　whether its conclusion about exclusivity of federal jurisdiction

11　was correct, this constitutes a ruling by a state appellate court

12　that the Sundquists' wrongful-foreclosure-in-violation-of-

13　automatic-stay theory belongs in federal court.

14　　　The corollary is that the California courts view attorney

15　fees associated with such a wrongful foreclosure action premised

16　solely on a bankruptcy automatic stay as a matter also within the

17　jurisdiction of the federal bankruptcy court.

18

19　　　　　　　　　　　　　　　2

20　　　Permissive abstention is potentially available under

21　§ 1334(c)(1).　The statute provides that "nothing prevents" a

22　court "from abstaining" in the interest of justice, or the

23　interest of comity with state courts, or out of respect for state

24　law.　28 U.S.C. § 1334(c)(1).　That syntax commits the abstention

25　question to the discretion of the court.

26　　　None of the § 1334(c)(1) factors would be served by

27　abstaining from hearing what amounts to an end-run around a

28　bankruptcy court's § 329(b) order.　Interests of justice favor

keeping trial-related matters in the one court, subject to one appellate system.  Comity is not offended where the state court of appeals has disclaimed jurisdiction over the underlying cause of action.  Respect for state law is not a factor because, first, § 329(b) is a federal question not based on state law and, second, it is conceded that the contingency fee contract has recently been voided as not having complied with state law.

This court elects not to exercise its discretion to abstain.


G

In sum, automatic stay enforcement is a matter of retained jurisdiction under 28 U.S.C. § 1334.  Neither the dismissal of the case, nor the closing of the case vitiates the bankruptcy court's authority to redress the automatic stay violations presented in this case.

Necessarily accompanying that retained jurisdiction is the § 329 bankruptcy court authority over the attorneys' fees that are "connected with" the bankruptcy case under the overlapping "arising in" and "related to" prongs of § 1334 jurisdiction.

While this court has discretion to abstain from exercising such jurisdiction, it elects not to abstain.


II

Having concluded that the exercise of federal bankruptcy jurisdiction over the fees of debtors' counsel is appropriate notwithstanding the dismissal and the closing of the Sundquist chapter 13 case, the focus shifts to the terms of § 329(b).

A

The relevant terms of § 329 require a statement of compensation and a remedy for excessive compensation.

Any attorney representing a debtor in connection with a case under title 11 must file a statement of compensation agreed to be paid, for any payment or agreement "made after one year before the date of the filing of the petition" for services to be rendered in connection with the case.  11 U.S.C. § 329(a).

If the agreed compensation "exceeds the reasonable value of such services, the court may cancel any such agreement" and limit compensation to reasonable value.  11 U.S.C. § 329(b).


1

We start with the temporal.  Payments and agreements "made after one year before the filing of the petition" must be disclosed in a filed statement.  11 U.S.C. § 329(a).

At face value, the payments and agreements subjected to disclosure reach back one year before the filing of the petition and extend after the filing of the petition indefinitely – theoretically, to the end of time.

That no time limit is suggested in the sweep of § 329 is not surprising.  Congress provided for a number of indefinite term situations in the Bankruptcy Code.  Unscheduled property (typically an undisclosed cause of action or undisclosed interest in real estate) is not deemed abandoned and administered at the closing of the case and retains its status as property of the estate indefinitely.  11 U.S.C. § 554(d); e.g., In re Dunning Bros., 410 B.R. 877, 879 (Bankr. E.D. Cal. 2009) (case filed in

1936 reopened in 2009 to administer undisclosed interest in real
estate). The automatic stay of acts against property of the
estate does not terminate when a case is closed and "continues
until such property is no longer property of the estate." 11
U.S.C. § 362(c)(1). The discharge injunction is permanent and
may lead to enforcement proceedings years later. 11 U.S.C. §
524(a); e.g., <u>Lone Star Sec. & Video, Inc. v. Gurrola (In re
Gurrola)</u>, 328 B.R. 158, 164-76 (9th Cir. BAP 2005).

The § 329 obligation of an attorney for the debtor to
disclose fees and fee agreements is co-extensive with a debtor's
involvement in a bankruptcy case and remains in effect for so
long as § 1334 jurisdiction connected with that case survives.


2

The limiting principle for § 329 lies in the phrase "in
connection with such a case." 11 U.S.C. § 329(a).

Rule 2017(b) supplies a rule of construction emphasizing
that "in connection with" in § 329 is a broad concept that
extends to "services in any way related to the case." Fed. R.
Bankr. P. 2017(b).

Representation "in connection with such a case" necessarily
includes everything that is premised on § 1334 jurisdiction.

It also includes supplemental jurisdiction under § 1367 over
all other claims that are so related to claims in the action
within the court's § 1334 original jurisdiction that they form
part of the same case or controversy under Article III of the
United States Constitution. <u>Sasson</u>, 424 F.3d at 869; <u>Pegasus
Gold</u>, 394 F.3d at 1195.

Representation "in connection with such a case" is not limited to actions in federal court. As § 1334(b) jurisdiction over civil proceedings arising under title 11, or arising in or related to cases under title 11 is "original but not exclusive" — i.e. concurrent federal and state jurisdiction — such actions might be prosecuted in state court. 28 U.S.C. § 1334(b).

Representation "in connection with such a case" extends to other actions in state courts in other states. The Fourth Circuit, speaking through a panel that included retired Supreme Court Justice Lewis Powell, held that two Ohio state-court actions pursued under state-law business tort theories against a bank to create leverage against that bank's nondischargeability action in a West Virginia bankruptcy case were "in connection with" the bankruptcy case. Burd v. Walters (In re Walters), 868 F.2d 665, 667 (4th Cir. 1989). In so ruling, it endorsed the broad "in any way related to" construction set forth in Rule 2017(b) and concluded that the bankruptcy court did not abuse discretion by exercising § 329(a) control over the Ohio lawyer's fees for state-court work. Walters, 868 F.2d at 666 n.1 & 667.

Here, the subject fees are for representing the Sundquists in prosecuting a § 362(k)(1) cause of action that "arises under" the Bankruptcy Code on account of automatic stay violations in their chapter 13 bankruptcy case. Such fees, beyond cavil, are "in connection with" their bankruptcy case for purposes of § 329.

3

The § 329(b) powers to cancel fee agreements and order return of payments to the extent that they exceed the "reasonable

1  value" of services are committed to the discretion of the

2  bankruptcy court.  <u>Am. Law Ctr., PC v. Stanley (In re Jastrem)</u>,

3  253 F.3d 434, 442 (9th Cir. 2001).

4

5                                    a

6      In determining "reasonable value," the touchstone is the

7  § 330(a)(3) list of considerations for determining reasonable

8  compensation for officers and professional persons.  11 U.S.C.

9  § 330(a)(3); <u>Jastrem</u>, 253 F.3d at 443 (invoking § 330(a)(3) in

10  review of § 329(b) order).

11      The considerations focus on the nature, extent, and value of

12  services, taking into account all relevant factors, including

13  time spent, rates charged, and customary compensation in

14  comparable cases.  <u>Jastrem</u>, 253 F.3d at 443; 3 COLLIER

15  ¶ 329.04[1][c].

16      In this circuit, a reasonable hourly rate multiplied by the

17  number of hours actually and reasonably expended, the so-called

18  lodestar rate, is presumptively a reasonable fee in a bankruptcy

19  case.  <u>Manoa Finance</u>, 853 F.2d at 691-92.

20      Here, Henderson documented 207.56 hours devoted to the

21  Sundquist litigation at her usual hourly rate of $300.00,

22  together with $6,606.55 in costs, for a total of $68,874.55.

23      Quality of services may be taken into account.  <u>Hale v. U.S.</u>

24  <u>Trustee</u>, 509 F.3d 1139, 1147 (9th Cir. 2007); <u>In re Sponhouse</u>,

25  477 B.R. 147-55 (Bankr. D. Nev. 2012); <u>In re Dean</u>, 401 B.R. 917,

26  922 (Bankr. D. Id. 2008).

27      Here, the court took into account the factors identified in

28  <u>Manoa Finance</u> and also considered the risk of nonpayment.  The

1  quality of performance was, in this court's judgment, not worthy

2  of $300.00 per hour.  Nevertheless, it accepted that claimed

3  rate, reasoning that it included an implicit enhancement (perhaps

4  50 percent) above normal lodestar for an attorney of her caliber

5  of performance that could be justified as accommodating the risk

6  of nonpayment.  Accordingly, the court determined that

7  compensation in excess of $70,000.00 would be excessive within

8  the meaning of § 329(b).

9      Although this court viewed the "reasonable value" question

10  through the prism of § 329(b), there is an alternative and

11  independent analysis that leads to the same result.  The Ninth

12  Circuit recognizes as part of making an actual damages award

13  under § 362(k)(1) the authority of a bankruptcy court to limit

14  fees to "fees reasonably incurred" and holds that courts awarding

15  fees under § 362(k)(1) "retain the discretion to eliminate

16  unnecessary or plainly excessive fees."  America's Servicing Co.

17  v. Schwartz-Tallard (In re Schwartz-Tallard), 803 F.3d 1095, 1101

18  (9th Cir. 2015) (en banc).

19      Applying Schwartz-Tallard, this court in the exercise of its

20  discretion is persuaded that a fee greater than $70,000.00 would

21  be plainly excessive.

22      Either way, Manoa Finance teaches that this court's award of

23  $70,000.00 is presumptively reasonable compensation.

24

25                              b

26      Congress also provided in § 329(b) that the court may cancel

27  a fee agreement.  While the terms of that section do not

28  expressly specify a standard for determining whether to cancel

1　such an agreement, the ultimate question is whether the agreement

2　would call for excessive compensation.

3　　　Contingency fee agreements are as vulnerable to cancellation

4　under § 329(b) as hourly fee agreements.  Pope v. Knostman (In re

5　Lee), 884 F.2d 897, 899 (5th Cir. 1989) ("Regardless of whether

6　[attorney's] fee was a flat fee or a contingency fee, [attorney]

7　was entitled to receive compensation only for the reasonable

8　value of the services rendered to the Debtors.").

9　　　The context of § 362(k)(1) affects the analysis of the

10　reasonableness of a contingency fee.  The statutory phrase "shall

11　recover actual damages, including costs and attorneys' fees,"

12　makes attorneys' fees a component of damages.  Schwartz-Tallard,

13　803 F.3d at 1099-1101.

14　　　Where attorneys' fees are an element of actual damages in a

15　automatic stay proceeding, such as this case, in which there are

16　undeniable and non-trivial stay violations by a deep-pocketed

17　creditor, some degree of § 362(k)(1) liability is virtually

18　inevitable.  Any liability will bring with it the certainty that

19　reasonable attorneys' fees will be awarded and be collectable.

20　　　The structure of the unusual approach to fees in § 362(k)(1)

21　indicates a policy by Congress to assure that attorneys will be

22　assured of being paid fairly for their time and effort in

23　vindicating the rights of individual victims of stay violations.

24　This attorney-fee-friendly policy is furthered by assuring

25　lodestar compensation for counsel who must enforce the automatic

26　stay for injured individuals who, in the vast majority of cases,

27　are impecunious debtors.

28　　　The corollary to the attorney-fee-friendly damages provision

1   in § 362(k)(1) that materially reduces the risk of non-payment is

2   to undermine the standard justification of the need for

3   contingent fees — i.e. risk of nonpayment.

4        It was not irrational for Congress to create a structure

5   that links attorneys' fees to the time and effort reasonably

6   devoted to the task of enforcing the automatic stay, rather than

7   to the amount of the ultimate award.  The prospect of full

8   reasonable compensation as an element of actual damages reduces

9   the incentives for counsel to complicate stay enforcement

10  litigation by seeking extravagant punitive damages for personal

11  profit or to pursue doubtful cases on speculation.  Likewise,

12  this structure gives the stay violator an economic incentive to

13  make amends promptly, so as to minimize fee damages, rather than

14  to wage litigation warfare.

15       When this court ordered Ms. Henderson to explain how her

16  contingency fee agreement represents the reasonable value of

17  services per § 329(b) and comports with the attorneys' fee

18  structure set forth in § 362(k)(1), she did not try to square her

19  contingency fee with the statute and, instead, quoted from

20  Schwartz-Tallard and saying she "will only seek the lesser of the

21  contingency fee agreement or the reasonable hourly rate times the

22  number of hours expended consistent with the Lodestar method."

23  Supplemental Briefing Regarding Attorneys' Fees, p. 2, Case 10-

24  35624, Dkt. 73 (9/23/16).

25       It is now claimed that the "quantum meruit value of Ms.

26  Henderson's services far exceeds the $70,000 the court awarded

27  her."  Supplemental Opposition to Motion to Expunge Lien, p. 11,

28

1   Adv. Pro. 14-02278, Dkt. 511 (10/24/17).[9] There is still no

2   attempt by Ms. Henderson to square a contingent fee, or a quantum

3   meruit equivalent, with the structure of § 362(k)(1). The

4   problem remains that the lodestar fee for Ms. Henderson's

5   services is conceded to be $68,874.55. If the real fees "far

6   exceed $70,000," then, in view of their status as actual damages,

7   does the actual damages award need to be increased? How would

8   that be justified in light of the command of <u>Schwartz-Tallard</u> to

9   limit fees to fees reasonably incurred? No answers favorable to

10   Ms. Henderson suggest themselves.

11      This court had the discretion under § 329(b) to cancel the

12   contingency fee agreement. That discretion was exercised in

13   favor of cancellation, mindful that counsel was being fully

14   compensated according to her own version of lodestar principles.

15

16                          B

17      Rules 2016 and 2017 implement § 329. Fed. R. Bankr. P.2016

18   & 2017.

19

20                          1

21      Nondisclosure and defective disclosure warrant denial of all

22   fees in the discretion of the court.

23

24                          2

25      Rule 2016(b) required Ms. Henderson to file a disclosure of

26 _____

27      [9]The noise in Ms. Henderson's brief about the existence of a
contingency fee with the Sundquists' successor counsel is a red

28   herring. This court has not endorsed that fee arrangement and
has not yet had the occasion to address it.

1  compensation paid or promised to be paid within 14 days of the
2  order for relief when the Sundquist case was filed in June 2016.
3  She complied with that requirement.

4  　　　Rule 2016(b) also required Ms. Henderson to file a
5  supplemental statement within 14 days after entering into the
6  agreement to represent the Sundquists in their § 362(k)(1)
7  action.  Taking her at her word that there was an agreement
8  executed when or soon after she entered her appearance as counsel
9  on September 19, 2014, she was in default of that obligation from
10 2014 until September 12, 2016, when she filed a supplemental
11 statement that cryptically revealed "contingency" in response to
12 this court's order. ·Case 10-35624, Dkt. 69 (9/12/16).

13 　　　Rule 2017(b) permits the court on its own initiative, after
14 notice and a hearing, to determine whether any fee agreement with
15 an attorney entered after the order for relief in the case is
16 excessive if the agreement "is for services in any way related to
17 the case."  Fed. R. Bankr. P. 2017(b).

18 　　　The phrase "notice and a hearing" means notice as is
19 appropriate in the particular circumstances and opportunity for a
20 hearing as is appropriate in the particular circumstances.  11
21 U.S.C. § 102(1)(A).

22 　　　An act is authorized without an actual hearing if notice is
23 given properly and if an actual hearing is not requested timely
24 by a party in interest.  11 U.S.C. § 101(1)(B)(i).

25 　　　This court complied with the notice and opportunity for
26 hearing requirement by way of two orders that drew written
27 responses from Ms. Henderson.  First, the order filed August 24,
28 2016, – Order that Dennise Henderson File Statement Required by

1   11 U.S.C. § 329(a) and Federal Rule of Bankruptcy Procedure

2   2016(b) — noted the procedural history, recited the requirements

3   of § 329, included a block quotation of all of § 329, explained

4   that the court is authorized to scrutinize such fees for

5   reasonableness, and included a block quotation of all of Rule

6   2016(b).  Case 10-35624, Dkt. 60 (8/24/16).  She was ordered to

7   file the supplemental statement by September 12, 2016.

8       Upon review of Ms. Henderson's supplemental Rule 2016(b)

9   statement that revealed nothing but "contingency," this court

10  entered a second order — Order that Dennise Henderson File Copy

11  of Contingency Fee Agreement and Justify Agreement Under 11

12  U.S.C. §§ 329(b) and 362(k)(1) — in which it was explained that

13  contingency fee agreements are subject to § 329(b) review for

14  reasonable value of services.  It also noted that it is unclear

15  whether a contingency fee agreement is consistent with the

16  attorneys' fee structure set forth in § 362(k)(1).  She was

17  ordered to file by September 23, 2016, a copy of her contingency

18  fee agreement and to "provide an explanation justifying the

19  agreed contingency fees as, first, representing the reasonable

20  value of services within the meaning of § 329(b) and, second, how

21  her contingency fee agreement is consistent with the attorneys'

22  fee structure set forth in 11 U.S.C. § 362(k)(1)."  Case 10-

23  35624, Dkt. 70 (9/14/16).

24      Ms. Henderson responded by filing her Supplemental Briefing

25  Regarding Attorneys' Fees.  She acknowledged that the court has

26  "authority under 11 U.S.C. § 329(b) and Federal Rule of

27  Bankruptcy Procedure 2017(b) to order a debtor's attorney to

28  return any attorneys' fees that exceeded the reasonable value of

services provided." She noted that § 330 sets out the standard
for determining reasonableness under §329. And she asserted:

> it was never the intent of counsel to exceed the reasonable
> compensation under the [B]ankruptcy [C]ode. By separate
> declaration, I will file a time billing with the actual time
> expended and will only seek the lesser of the contingency
> fee agreement or the reasonable hourly rate times the number
> of hours expended consistent with the Lodestar method.

Case 10-35624, Dkt. 73 (9/23/16).

Next, she filed a Declaration of Dennise Henderson on
Attorneys Fees and Costs in which she claimed 207.56 hours spent
on the § 362(k)(1) adversary proceeding at a rate of $300.00 per
hour (= $62,268), together with costs for depositions,
transcripts, and trial binders of $6,606.55 for a total of
$68,874.55. Case 10-35624, Dkt. 75 (9/26/16).

Based on this written exchange, this court concluded that
the notice and opportunity for hearing requirement had been
satisfied and that, in view of her concession that she was not
seeking a contingency greater than $68,874.55, further concluded
that no actual hearing was needed.

Ms. Henderson now claims that it was always her intent to
collect from the Sundquists the full amount of her contingency to
the extent that it exceeded lodestar compensation.

3

The counsel statements required by § 329(a) and Rule 2016(b)
must include "full, candid, and complete" disclosure. Neben &
Starrett v. Chartwell Fin. Corp. (In re Park-Helena), 63 F.3d
877, 882 (9th Cir. 1995), citing with approval, In re Plaza Hotel
Corp., 111 B.R. 882-83 (Bankr. E.D. Cal. 1990).

Ms. Henderson's filed statement asserted that she did not

1  intend to collect more than reasonable compensation and that she

2  "will only seek the lesser of the contingency fee agreement or

3  the reasonable hourly rate times the number of hours expended

4  consistent with the Lodestar method," which she then fixed at

5  $68,874.55.

6    She did not disclose that, as she now says, she always

7  intended to enforce the full contingency against the Sundquists.

8  If accurate, then the disclosure to the court was materially

9  defective because it did not disclose full relevant information.

10    The law of the Ninth Circuit established in <u>Park-Helena</u> that

11  "even a negligent or inadvertent failure to disclose full

12  relevant information may result in denial of all requested fees"

13  in the discretion of the court.  <u>Park-Helena</u>, 63 F.3d at 882.

14    The record admits of two possibilities, each of which would,

15  in the court's discretion, justify complete denial of attorneys'

16  fees.  If the undisclosed intention to enforce the full

17  contingency is not a recent fabrication, then there was a failure

18  to disclose full relevant information for which all fees may be

19  denied.  If the undisclosed intention is a recent fabrication,

20  then counsel has lied to the court in a declaration and papers

21  filed in opposition to this motion for which sanctions are

22  appropriate on a variety of theories.  Either way, this court has

23  the discretion to deny all fees.

24

25           III

26    Ms. Henderson waived and renounced her right to claim for

27  additional compensation on quantum meruit or any other theory in

28  her responses to this court's request that she justify her

contingency fee agreement under § 329(b) and § 362(k)(1).

First, she filed a statement saying: "it was never the intent of counsel to exceed the reasonable compensation under the [B]ankruptcy [C]ode. By separate declaration, I will file a time billing with the actual time expended and will only seek the lesser of the contingency fee agreement or the reasonable hourly rate times the number of hours expended consistent with the Lodestar method." Case 10-35624, Dkt. 73 (9/23/16).

Second, she filed a Declaration in which she claimed 207.56 hours spent on the § 362(k)(1) adversary proceeding at a rate of $300.00 per hour (= $62,268), together with costs for depositions, transcripts, and trial binders of $6,606.55 for a total of $68,874.55. Case 10-35624, Dkt. 75 (9/26/16).

She cannot now claim more.


IV

Quantum meruit principles are not available to rescue counsel from cancellation of her contingency fee contract and the consequences of not disclosing her secret intent to enforce the contingency fee for a sum greater than a lodestar award.

Under state law, the voiding of a contingency fee contract disentitles the attorney to any fee greater than a "reasonable" fee. Cal. Bus. & Prof. Code § 6147(b) ("failure to comply with any provision of this section renders the agreement voidable at the option of the plaintiff, and the attorney shall thereupon be entitled to collect a reasonable fee").

Viewed as a matter of federal law, the equitable remedy of quantum meruit is not available following the denial of fees as a

1  remedy for not complying with § 329(a) and Rule 2016(b). One who

2  has not complied with the Code and Rules lacks the requisite

3  clean hands. <u>Law Offices of Ivan W. Halperin v. Occidental Fin.</u>

4  <u>Group, Inc. (In re Occidental Fin. Group, Inc.)</u>, 40 F.3d 1059,

5  1063 (9th Cir. 1994), <u>citing with approval</u>, <u>DeRonde v. Shirley</u>

6  <u>(In re Shirley)</u>, 134 B.R. 940, 944-45 (9th Cir. BAP 1992).

7       Nor is quantum meruit available to counsel in state court

8  following denial of fees by a bankruptcy court. The Bankruptcy

9  Code and the Federal Rules of Bankruptcy Procedure operate to

10  preempt and preclude compensation on state-law theories not

11  recognized by the Code and Rules.

12       As explained in <u>Shirley</u>, an attorney who has been denied

13  fees in bankruptcy court may not pursue an alternative remedy in

14  state court: "to allow such a reading would be to circumvent the

15  operation of provisions of the Code and Rules concerning the

16  employment of professionals and the payment of fees in connection

17  with bankruptcy cases." <u>Shirley</u>, 234 B.R. at 944, <u>cited with</u>

18  <u>approval</u>, <u>Occidental Fin. Grp.</u>, 40 F.3d at 1063.

19       The California courts would agree that they should defer to

20  the federal courts in such circumstances. The California Third

21  District Court of Appeal ruled in the Sundquists' state-court

22  appeal that a wrongful foreclosure action premised solely on

23  violation of the bankruptcy automatic stay is a matter of

24  exclusive federal jurisdiction. It follows that the state court

25  would regard a fee dispute deriving from that particular dispute

26  as also within federal jurisdiction.

27       Even if state-law quantum meruit is not preempted and

28  precluded, this court determines, as a finding of fact, that the

1  quantum merited, i.e. the "reasonable" fee under either federal
2  or state law, by Ms. Henderson is $70,000.00.

3

4                                    V

5      Ms. Henderson is threatening various actions in state court
6  against the Sundquists, their successor counsel, and Bank of
7  America for fees that "far exceed" $70,000.00 and for remedies,
8  including punitive damages, under California's Uniform Voidable
9  Transactions Act.

10     All such actions would constitute collateral attacks on this
11 court's § 329(b) judgment that $70,000.00 is "reasonable"
12 compensation for Ms. Henderson.  All of the predicate facts are
13 so inextricably intertwined with the § 362(k)(1) action that the
14 bankruptcy court's judgment cannot be escaped other than by way
15 of appeal.  <u>Miles v. Okun (In re Miles)</u>, 430 F.3d 1083, 1088-91
16 (9th Cir. 2005) (§ 303(i) damages remedy preempts state tort
17 claims); <u>Maitland v. Mitchell (In re Harris Pine Mills)</u>, 44 F.3d
18 1431, 1437-38 (9th Cir. 1995) (postpetition state law claims
19 inextricably intertwined with bankruptcy sale); <u>Gonzales v.
20 Parks</u>, 830 F.2d 1033, 1035-37 (9th Cir. 1987) (bankruptcy
21 preempts state law abuse of process claims).

22     Collateral attacks attempting to tunnel back on this court's
23 § 329(b) judgment are within § 1334(b) jurisdiction because this
24 court has jurisdiction to interpret and enforce its orders.
25 <u>Travelers Indemnity Co. v. Bailey</u>, 557 U.S. 137, 151 (2009).

26     Original federal subject-matter jurisdiction persists over
27 § 329(b) matters as "arising under" the bankruptcy case.  28
28 U.S.C. §1334(b).

1    Armed with original federal jurisdiction, the defendants in

2 any such action would be entitled to remove them under the

3 Bankruptcy Removal Statute. 28 U.S.C. § 1452(a). In short, they

4 would come right back here to be adjudicated.

5    The proper course for Ms. Henderson to challenge this

6 court's § 329(b) judgment determining "reasonable" compensation

7 to be $70,000.00 is to continue to appeal that order pursuant to

8 regular federal appellate procedure. 28 U.S.C. § 158. She

9 already has filed a notice of appeal, which will become effective

10 when final judgment is entered. Fed. R. Bankr. P. 8002(b)(2).

11 She is welcome to avail herself of that opportunity.

12

13                        VI

14    The question becomes what to do. Acting pursuant to

15 § 329(b) and relying on her representations to the court in

16 connection with her § 329(a) and Rule 2016(b) disclosures and

17 Rule 2017 response that her full lodestar fees were $68,874.55

18 and that she wanted the "lesser" of that sum or her agreed

19 contingency fee, the court awarded Ms. Henderson $70,000.00. It

20 was persuaded that $70,000.00 was generous in light of the

21 quality of work and that any greater amount would exceed the

22 reasonable value of services. To avoid ambiguity, and acting

23 consistent with her representation that she wanted the "lesser"

24 of contingency or lodestar, it cancelled the contingency fee

25 agreement as permitted by § 329(b).

26    Now she reveals that she always secretly intended to collect

27 the full contingency from the Sundquists. That revelation puts

28 her in the cross-hairs of the Ninth Circuit Park-Helena doctrine

1  that gives this court discretion to deny all fees.  <u>Park-Helena</u>,

2  63 F.3d at 882.  Her statements under § 329(a) and Rules 2016(b)

3  and 2017 were anything but "full, candid, and complete."

4      She has been litigating in a manner that equates with an

5  effort to sabotage the settlement her former clients have

6  achieved.  It is one thing to assert an attorneys' lien, which

7  was unnecessary in view of this court's mandatory injunction

8  requiring the Sundquists to pay her $70,000.00.  It is quite

9  another thing overtly to try to create hold-up value to extort a

10 settlement by creating delay and by threatening voidable transfer

11 litigation and punitive damages against successor counsel, former

12 clients, and the settling defendant.  That conduct tempts the

13 court to invoke <u>Park-Helena</u> to set off against the $70,000.00 all

14 fees and expenses incurred by the Sundquists in fending off her

15 demands for "far more" than the "reasonable" $70,000.00.

16      Nevertheless, the fact remains that counsel undertook a

17 representation that other lawyers declined.  She stood up for the

18 Sundquists.  In the tradition of lawyers who find themselves

19 needing to act as amateur psychologists to clients in emotion-

20 charged situations, she held their hands and comforted them

21 through the process.  She may have flailed in water over her head

22 in competition with a strong-swimming defense, but at least the

23 facts were on her side.  While there is much to be criticized

24 about the quality of, and omissions in, her litigation

25 presentation, it was adequate – barely adequate – to enable this

26 court to discern the just result.

27      Accordingly, this court will exercise its discretion to

28 refrain from using <u>Park-Helena</u> to reduce the $70,000.00 to zero

or to some intermediate sum.

The Sundquists remain under a mandatory injunction to pay Ms. Henderson $70,000.00 from their recovery, enforceable by contempt.  As the asserted lien is unnecessary in view of the mandatory injunction, the lien will be expunged in its entirety.

* * *

In short, this court has authority and jurisdiction to limit counsel's fees under § 329(b) to the "reasonable" amount of $70,000.00.  Although abstention over the fee dispute would be permissible, this court exercises its discretion to retain jurisdiction.  Under § 329(b), the "reasonable" value of services rendered by debtor's counsel is $70,000.00.  Although counsel did not disclose her fee arrangements in the "full, candid, and complete" manner required by law, this court exercises its discretion to leave untouched its $70,000.00 award.  Proceedings in the nature of attempts to garner from other courts fees in excess of $70,000.00 are nevertheless matters of original federal jurisdiction per Judicial Code § 1334(b) as "arising under" the Bankruptcy Code and will be subject to removal to this court per Judicial Code § 1452.

This opinion contains findings of fact that supplement findings made and reported at <u>Sundquist</u>, 566 B.R. at 570-621.

An order will issue expunging the subject lien.

Dated: November 15, 2017

_____
UNITED STATES BANKRUPTCY JUDGE

1

**INSTRUCTIONS TO CLERK OF COURT**

2
**SERVICE LIST**

3
          The Clerk of Court is instructed to send the

attached document, via the BNC, to the following parties:

4

Dennise Henderson

5
1903 21st Street

Sacramento, California 95811

6

Orly Degani

7
12400 Wilshire Blvd #400

Los Angeles, CA 90025

8

Jonathan Doolittle

9
Reed Smith LLP

101 Second Street, Suite 1800

10
San Francisco, California 94105

11
James Stang and Kenneth Brown

Pachulski Stang Ziehl & Jones LLP

12
10100 Santa Monica Blvd, #1300

Los Angeles, California 90067

13

Estela Pino

14
Pino & Associates

800 Howe Avenue, Suite 420

15
Sacramento, California 95825

16
Roger N Heller

275 Battery St 29th Fl

17
San Francisco CA 94111

18
Rhonda S Goldstein

1111 Franklin St 8th Fl

19
Oakland CA 94607

20
Elise K Traynum

Office of the General Counsel

21
200 McAllister St

San Francisco CA 94102

22

Sandor T Boxer

23
1888 Century Park E #1150

Los Angeles CA 90067

24

Mark E Ellis

25
1425 River Park Drive, Suite 400

Sacramento, CA 95815

26

27

28