

FOR PUBLICATION

FILED

JAN 18 2018

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

In re: ERIK SUNDQUIST and RENÉE )
SUNDQUIST,                      )
                     Debtors.   )   Case No. 10-35624
                                )
_____)
                                )
ERIK SUNDQUIST and RENÉE        )
SUNDQUIST,                      )
                   Plaintiffs,  )   Adv. Pro. No. 14-02278
v.                              )
                                )
BANK OF AMERICA, N.A.;          )   Docket Control No. PSZ-3
RECONTRUST COMPANY, N.A.; BAC   )
HOME LOANS SERVICING, LP,       )
                   Defendants.  )
_____)

**OPINION ON MOTION TO DISMISS**

**Before: Christopher M. Klein, Bankruptcy Judge**

James I. Stang, Kenneth H. Brown, Pachulski Stang Ziehl & Jones
LLP, Los Angeles, California; Estela Pino, Sacramento,
California, for Plaintiffs.

Jonathan R. Doolittle, Brian A. Sutherland, Reed Smith LLP, San
Francisco, California; Jonathan D. Hacker, O'Melveny & Myers LLP,
Washington, D.C., for Defendants.

CHRISTOPHER M. KLEIN, Bankruptcy Judge:

     This motion to dismiss began as a hostage standoff.  Bank of
America, with a gun to the Sundquists' heads, said it would pay
them several million dollars more than the $6,074,581.50 awarded
to them, but only if this court first dismisses the adversary
proceeding so as to vitiate the opinion in <u>Sundquist v. Bank of
America (In re Sundquist)</u>, 566 B.R. 563 (Bankr. E.D. Cal. 2017).
There being no legal obstacle to Bank of America paying the
Sundquists without any judicial action, this was a naked effort
to coerce this court to erase the record.  No chance.  No dice.

1   The judicial mediation following this court's initial
2   negative reaction has led to a consensual solution that
3   accommodates the interests of the parties and of the public.  The
4   adversary proceeding will not be dismissed.  No opinion will be
5   withdrawn.  The damages judgment against Bank of America will be
6   vacated.  The adversary proceeding will be closed without formal
7   resolution of the causes of action against Bank of America,
8   thereby preventing finality for purposes of the claim and issue
9   preclusion rules of res judicata.  And, the court reserves
10  jurisdiction to enforce the settlement agreement.

11      This fourth opinion in this case sets forth the court's
12  reasoning for declining to grant the motion to dismiss as
13  presented and for acquiescing in the mediated solution.[1]

14

15                          Procedure

16      Three related motions are pending.  Bank of America moves
17  under Federal Rule of Civil Procedure 52, as incorporated by
18  Federal Rule of Bankruptcy Procedure 7052, to strike the Renée
19  Sundquist diary from evidence.  The Sundquists move to reopen the
20  evidence and prove more damages.  Finally, they jointly move to
21  vacate the judgment and opinion and to dismiss the adversary
22  proceeding as demanded by Bank of America as a precondition to
23  paying an undisclosed sum more than the $6,074,581.50 judgment in
24  their favor.

25

26  _____

27      [1]The first three opinions were all styled _Sundquist v. Bank
    of America (In re Sundquist)_, (Bankr. E.D. Cal. 2017), and are
28  reported at: 566 B.R. 563 "_Sundquist I_"); 570 B.R. 92 ("_Sundquist
    II_"); 576 B.R. 858 ("_Sundquist III_").

<u>Facts</u>

A judgment for $1,074,581.50 in actual damages and $45 million of punitive damages was entered after trial of this adversary proceeding for automatic stay violation damages under 11 U.S.C. § 362(k)(1). The net judgment in favor of the Sundquists personally is $6,074,581.50, including $5 million in punitive damages. They were enjoined to deliver the post-tax residue of the remaining $40 million to designated public-interest entities, subject to remittitur to $6,074,581.50 if Bank of America made certain charitable contributions.

The judgment also cancelled the contingent fee contract of the Sundquists' counsel pursuant to 11 U.S.C. § 329(b) and awarded compensation of $70,000.00 under lodestar principles.

The designated beneficiaries of the $40 million (less taxes) awarded to honor the public-interest facet of punitive damages and to achieve the appropriate level of deterrence were granted leave to intervene under the collective nom-de-guerre Interested Parties. <u>Sundquist II</u>, 570 B.R. at 96-98.

Timely dueling post-trial motions to strike evidence and to retry damages suspended the time in which to appeal by virtue of Federal Rule of Bankruptcy Procedure 8002(b)(1) until those motions are resolved.

The Sundquists assert that in a reopened trial they could prove actual and punitive damages exceeding $9 million.

After mediation, Bank of America agreed to pay the Sundquists, on the condition of expunging the record, a sum exceeding the $6,074,581.50 award by enough to validate their assertion that at a retrial on damages they can prove more than

$9 million in actual and punitive damages.  This would amount to immediate and complete victory for the Sundquists personally.

Although the settlement ignores the Intervenors and the public-interest facet of punitive damages, the Sundquists have committed themselves personally to make voluntary charitable contributions to the same entities that reflect the post-tax residue of about $600,000.00 in recognition of the public interest implicit in punitive damages.

The Intervenors note that they have no desire to impede substantial and just compensation for the Sundquists and that they are not motivated by a desire to receive funds that otherwise would or should go to the Sundquists.  But they argue that this court's published decision should not be vacated or withdrawn, that the public deserves to know the terms of the settlement and, at a minimum, that this court should review the settlement agreement in camera.

## Analysis

The motion to vacate the judgment, erase the published opinion, and dismiss the adversary proceeding takes precedence because it could moot the other two motions.

### I

A key point to bear in mind is that Bank of America is free to pay the Sundquists in exchange for a release without any court action.  The Sundquists could thereafter leave the Intervenors unaided with a challenging row to hoe in defending an appeal by a well-funded bank determined to fight the public interest

component of punitive damages.

## II

The motion to vacate and dismiss is a condition of the initial settlement. Although the Sundquists made the motion, which was joined by Bank of America, they were complying with a demand by the bank. They need the money now without waiting for years of appeals to end.

Vacating the judgment and dismissing is not necessary. There is no legal impediment to voluntary settlement without vacating a judgment. Indeed, the sooner Bank of America pays the Sundquists, the better. By saying it would not pay until after this court vacates the judgment and dismisses the adversary proceeding, the bank was holding the Sundquists hostage.

The problem with expunging the judgment, opinion, and adversary proceeding is that the situation is now bigger than the Sundquists.

## A

Issues remain open involving persons who have not settled and are still entitled to appeal.

## 1

One component of the judgment not addressed by the settlement invokes 11 U.S.C. § 329(b) to cancel the contingent fee contract of the Sundquists' former counsel and, instead, awards fees on a lodestar basis.

Judgment as to that issue has already been entered in this

adversary proceeding with a Rule 54(b) determination that there
is no just reason for delay in entry of a final judgment as to
fewer than all the parties and fewer than all the claims.  Fed.
R. Civ. P. 54(b), incorporated by Fed. R. Bankr. P. 7054(a).  A
notice of appeal has been filed.  That separate judgment prevents
dismissal of the adversary proceeding.

The § 329(b) appeal presents a significant question of
bankruptcy law as to which precedent is sparse.  This tool for
courts grappling with the problem of counsel who poorly serve
their clients deserves explication in appellate precedent.

2

As to punitive damages, the opinion and judgment give
context and content to the oft-stated public-interest aspect of
punitive damages.  The law in this arena is evolving.  By making
an award of statutory punitive damages that required that the
public interest component of the award be channeled to public
purposes, additional parties have been introduced into the
litigation, given standing to participate, and have intervened.

The judgment provides that the Intervenors are entitled to
receive the post-tax residue of $40 million of punitive damages
with prospective remittitur to zero if Bank of America makes
certain voluntary contributions.

As a result, the Intervenors have standing because vacating
the judgment would injure them in a manner that could be
redressed by a favorable outcome on appeal.  E.g., Diamond v.
Charles, 476 U.S. 54, 68-70 (1986); American Games, Inc. v. Trade
Prods., Inc., 142 F.3d 1164, 1167 (9th Cir. 1998).

Regardless of what critics may think of the merits of the public-interest award, the law of the case is that the Intervenors are party representatives of the public-interest component of punitive damages with standing to appeal.  <u>Sundquist II</u>, 570 B.R. at 97-98.

Their interests on behalf of the public-interest component cannot be ignored.

B

This court is mindful that Bank of America is loathe even to acknowledge the Intervenors out of fear that any nod to them might implicitly validate the public-interest punitive damage component recognized in this case.

Nor is the bank of a mind to avail itself of the opportunity provided in the judgment for remittitur of the $40 million public-interest component of punitive damages to zero by making $30 million in charitable contributions.

The Sundquists are voluntarily stepping into the breach. Although they assert that the settlement amount fairly reflects the damages they can prove such that they are not appropriating to themselves the public-interest component, they promise to make purely voluntary charitable contributions of $300,000.00 to the Intervenors from their settlement proceeds.  This is the rough economic equivalent of recognizing the public-interest component of punitive damages at $600,000.00 on a pre-tax basis.

The Sundquists' voluntary contributions operate as de facto recognition of the public-interest component of punitive damages while affording the bank plausible deniability.

## C

The opinion also appears to have struck a chord in the development of the law.

The findings of fact and conclusions of law expressed in the opinion duly rendered by a court of competent jurisdiction have entered the public realm as an official act suitable for reference and citation to the extent the analysis has persuasive value and is not disapproved on appeal.  That is the most one can expect for a mere trial court opinion.  It binds nobody except the parties, does not bind the same trial court in another case, and has influence beyond the case only to the extent of its persuasive value.

Appeal is the appropriate method for overturning a trial court's judgment when, as here, that court is not persuaded to change its mind.  Bank of America has available to it two levels of appeal as of right from a decision rendered by a bankruptcy judge — either the District Court or the Bankruptcy Appellate Panel, followed by the U.S. Court of Appeals.  Thereafter, there is the possibility of discretionary review by the U.S. Supreme Court.  This is ample opportunity to correct any error.

Voluntary settlement by the parties does not require that an opinion and accompanying judgment be vacated.  United States v. Munsingwear, Inc., 340 U.S. 36, 40 (1950); American Games, 142 F.3d at 1167.

Rather, a trial court has equitable discretion to determine what to do with a judgment and opinion when the parties, who were free to settle before the trial court decided the case, settle after the decision is entered.  American Games, 142 F.3d at 1170.

8

Trials have consequences.

### III

Vacatur under the trial court's equitable discretion implicates larger public policy problems. This is no longer a mere two-party dispute among private entities.

### A

It is, of course, common for judges to acquiesce in "confidential" settlements in the name of minimizing private litigation and avoiding appeals. Implicit in such determinations is the conclusion that the public interest does not outweigh the desire for secrecy.

The strategy of secret settlement is vulnerable to the criticism that some things are not appropriate to sweep under the carpet. When a dispute is purely a private affair that does not implicate larger questions of policy, practice, or public interest, it makes sense to accommodate the parties and avoid burdening trial and appellate courts with unnecessary work. But, experience teaches that the presence of larger questions is inherently difficult to predict.

The stage of the litigation affects the calculus regarding confidential settlements. Before trial, a dispute is generally more private than public. Unproven allegations and defenses are discounted as no better than unreliable posturing puffery. Only the parties know the facts. Settlements that operate to conserve scarce public resources, such as trial time, are encouraged and ordinarily subjected to little judicial scrutiny.

Confidential settlements in the midst of trial occupy the middle of the spectrum. Some public trial-related resources have been consumed, but the case presentation is usually incomplete. Settlement with an undisclosed result satisfactory to the parties can be an efficient measure.

The calculus changes once a public trial is completed. Taxpayer resources have been consumed. The evidence is in public view. Facts have been determined, subject to post-trial remedies and appeals. Settlement on secret terms may still be expedient.

The further measure of asking a court to erase or modify a duly-rendered judgment as a condition of settlement adds even more complexity.

Requests by losers of lawsuits to "buy and bury" adverse judgments once rendered and to erase the public record are viewed with caution. The trial court must exercise equitable discretion. <u>American Games</u>, 142 F.3d at 1170; <u>cf.</u> <u>Mancinelli v. Int'l Bus. Machines</u>, 95 F.3d 799, 800 (9th Cir. 1996).

The nature of the litigation can make a difference. Causes of action may implicate third-party interests or have independent public importance. Other persons, in different arenas, may have acted in reliance on the continuing validity of the judgment.

In bankruptcy, for example, compromise by a bankruptcy trustee that affects the estate requires a hearing on notice to all parties in interest to review whether the compromise is "fair and equitable." Fed. R. Bankr. P. 9019; <u>Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson</u>, 390 U.S. 414, 424 (1968) (Bankruptcy Act); <u>Woodson v. Fireman's Fund Ins. Co. (In re Woodson)</u>, 839 F.2d 610 (9th Cir. 1988); <u>Martin v.</u>

1  Kane (In re A&C Props.), 784 F.2d 1377, 1380-81 (9th Cir. 1986);

2  10 COLLIER ON BANKRUPTCY ¶ 9019.02 (Alan N. Resnick & Henry J.

3  Sommer, eds. 16 ed. 2014).

4

5                                   B

6       As this settlement does not affect the bankruptcy estate,

7  the appropriate judicial scrutiny is the American Games judicial

8  caution applicable to efforts by losers of lawsuits to "buy and

9  bury" adverse judgments.

10      This case implicates sufficient public interest that this

11  court is reluctant to exercise its discretion to sweep the matter

12  under the carpet because the parties in a secret compromise are

13  agreeing not to appeal.  The parties availed themselves of

14  taxpayer resources in a public trial that produced a public

15  result.  The public, correlatively, acquired an interest in

16  knowing the final outcome.  Little about the record suggests that

17  the facts constitute an anomalous or isolated incident that might

18  unfairly besmirch an otherwise upstanding defendant.

19      In addition, as noted, the opinion and judgment invoke

20  Bankruptcy Code § 329(b) to cancel the fee contract of the

21  Sundquists' prior counsel in favor of "reasonable" lodestar

22  compensation.  11 U.S.C. § 329(b).  This court, based on that

23  aspect of the judgment, has recently expunged the attorneys' fee

24  lien asserted by former counsel.  Sundquist III, 576 B.R. at 883.

25      A public-interest component of punitive damages has been

26  recognized and is represented by the Intervenors, who have

27  standing under the law of the case to be heard and to represent

28  that interest unless and until finally reversed on appeal.

Those Intervenors, urging caution about vacatur, make a potent point when they note that Bank of America has shown no remorse, made no apology, and promised no reform of the corporate cultural practices illustrated by this case. Nothing suggests that the bank accepts responsibility for its actions.

This court remains persuaded that the conduct warranting significant damages resulted from a corporate culture that facilitates, and is unwilling to correct, the problems that Bank of America visited upon the Sundquists. Other courts have cited the decision. It has potentially useful implications regarding the efficacy of §§ 329(b) and 362(k)(1) as bankruptcy remedies.

To name and to shame Bank of America on the public record in an opinion that stays on the books serves a valuable purpose casting sunlight on practices that affect ordinary consumers. Other persons dealing with Bank of America will be able to gauge their experiences against what has been revealed in this case.

If this court's decision is not correct in law or fact in any respect, then that needs to be established by formal appellate determination in full public view.


IV

The exercise of equitable discretion necessitates focus on the interests of the respective parties in light of the terms of the settlement agreement.


A

The terms of the settlement can make a difference. The Intervenors, who have been excluded from the settlement

discussions, urge that the public notoriety of this case warrants making the settlement public and, if not made public, that it be reviewed by the court in camera.  That argument has merit.

As this court cannot exercise equitable discretion without knowing the actual terms, it will review the agreement in camera, the results of which are described in part VI of this opinion.


B

The respective interests of the various parties boil down to the following.


1

The settlement does not purport to resolve the § 329(b) cancellation of former counsel's fee contract that is embedded in the opinion and the judgment.

The Sundquists' former counsel has filed notices of appeal from the judgment cancelling her fee contract and from the order expunging her claimed attorneys' fee lien seeking more than the $70,000.00 awarded.  That appeal still needs to be resolved.


2

The Sundquists would receive immediate full payment of the $6,074,581.50 judgment in their favor, plus a premium that amply confirms the validity of their assertion that in a renewed trial on damages they could prove actual and punitive damages exceeding $9 million.  This would be immediate and total victory for them.

While the terms of the settlement require them to seek to have the adversary proceeding dismissed, the judgment vacated,

1  and the opinion stricken from the books as a condition of payment

2  to them, they have no real desire for any of those measures.

3      Their alternative is to retry damages, perhaps achieving

4  more than the settlement amount, and thereafter to endure multi-

5  year process entailed in two levels of appeals as of right to

6  which Bank of America is entitled before collecting.

7      It would be little solace to them that Bank of America must,

8  to the extent the judgment is affirmed on appeal, pay the

9  Sundquists' appellate attorneys' fees as additional actual

10 damages.  America's Servicing Co. v. Schwartz-Tallard (In re

11 Schwartz-Tallard), 803 F.3d 1095, 1101 (9th Cir. 2015).

12

13                         3

14     Bank of America wishes to put this affair behind it and to

15 obliterate as much of the public record as possible.  It does not

16 want to risk retrial on damages.  And, it prefers to stop

17 hemorrhaging attorneys' fees for itself and, if they prevail on

18 appeal, the Sundquists' appellate attorneys' fees.

19     The bank expresses particular concern about secondary

20 effects based on the claim preclusion and issue preclusion rules

21 of res judicata.  If the judgment might be deemed preclusive,

22 then the bank would have an incentive to appeal that outweighs

23 its own further fees and the risk of liability for Sundquist

24 appellate attorneys' fees.  Schwartz-Tallard, 803 F.3d at 1101.

25     As it is no longer possible to hide the underlying facts,

26 the bank has no cognizable interest in confidentiality of facts

27 that have already been revealed as a result of a public trial.

28     The bank's alternative is to endure retrial on damages and

then to avail itself of the two levels of appeals as of right to which it is entitled.

Nor does the bank have a cognizable interest in the aspect of the judgment cancelling the fee contract of the Sundquists' former counsel under § 329(b).

4

The Intervenors representing the public-interest component of punitive damages have no desire to impede substantial and just compensation for the Sundquists for their ordeal and are not motivated by a desire to receive funds that otherwise would or should go to the Sundquists.

They articulate a public interest in exposing the terms of the settlement to sunlight and urge that this court's opinion is a valuable precedent that should not be expunged. They are mindful that, as a mere trial court opinion, its precedential effect is limited to its persuasive value.

They do stand to receive voluntary charitable contributions from the Sundquists that (assuming a cumulative 50 percent state and federal tax rate) is the equivalent of a $600,000.00 public-interest component of punitive damages.

V

The question becomes whether and how this court can assuage Bank of America's discomfort that the judgment might pose problems of claim and issue preclusion.

A brief survey of how preclusion rules might apply in this case is in order.

1    The claim preclusion and issue preclusion rules of res

2  judicata regarding federal judgments follow the Restatement

3  (Second) of Judgments.  E.g., B&B Hardware, Inc. v. Hargis

4  Indus., Inc., 135 S.Ct. 1293, 1303 (2015) (The Court "regularly

5  turns to the Restatement (Second) of Judgments for a statement of

6  the ordinary elements of issue preclusion"); New Hampshire v.

7  Maine, 532 U.S. 742, 748-49 (2001); Migra v. Warren City Sch.

8  Dist. Bd. of Educ., 465 U.S. 75, 77 n.1 (1984).

9    In the context of this case, claim preclusion would tend to

10  protect Bank of America from further claims by the Sundquists,

11  while issue preclusion could threaten the bank in defending

12  itself from claims by other persons.

13

14                                A

15    The sine qua non threshold requirement for applying rules of

16  res judicata regarding merger and bar and claim and issue

17  preclusion is that there be a final judgment or, for purposes of

18  issue preclusion only, a determination "sufficiently firm to be

19  accorded conclusive effect."  RESTATEMENT (SECOND) OF JUDGMENTS § 13.[2]

20

21                                B

22    Claim preclusion, if the judgment were to remain in effect,

---

[2]§ 13.  Requirement of Finality.

The rules of res judicata are applicable only when a final
judgment is rendered.  However, for purposes of issue
preclusion (as distinguished from merger and bar), "final
judgment" includes any prior adjudication of an issue that
is determined to be sufficiently firm to be accorded
conclusive effect.

RESTATEMENT (SECOND) OF JUDGMENTS § 13.

would afford substantial protection for Bank of America from further claims by the Sundquists. But claim preclusion is a discretionary doctrine of uncertain application that does not provide a perfect defense. The comprehensive release under the settlement, however, solves that problem as between the parties.


1

The term "claim preclusion" is a shorthand for the operation of the doctrines of merger and bar in extinguishing a claim. Its essence is refusing to entertain causes of action that have never been litigated.

It begins with the General Rule of Merger that a valid and final judgment in favor of a plaintiff prevents the plaintiff from thereafter maintaining an action on the original claim or any part thereof. RESTATEMENT (SECOND) OF JUDGMENTS § 18(1).[3]

Its corollary is the General Rule of Bar. A valid and final judgment in favor of a defendant bars another action by the plaintiff on the same claim. RESTATEMENT (SECOND) OF JUDGMENTS § 19.[4]

---

[3]§ 18. Judgment for Plaintiff – The General Rule of Merger

When a valid and final personal judgment is rendered in favor of the plaintiff:

(1) The plaintiff cannot thereafter maintain an action on the original claim or any part thereof, although he may be able to maintain an action upon the judgment; and
(2) In an action upon the judgment, the defendant cannot avail himself of defenses he might have interposed, or did interpose, in the first action.

RESTATEMENT (SECOND) OF JUDGMENTS § 18.

[4]§ 19. Judgment for Defendant – The General Rule of Bar

A valid and final personal judgment rendered in favor of the

17

The "claim" extinguished under the General Rules of Merger
and Bar, also known as the Rule Concerning Splitting a Claim,
includes all rights of the plaintiff to remedies against the
defendant with respect to all or any part of the transaction, or
series of connected transactions, out of which the action arose.
RESTATEMENT (SECOND) OF JUDGMENTS § 24(1).

Imprecision infects the parameters of "claim." What
constitutes a "transaction" or "series" of transactions is
determined pragmatically, in light of whether the facts are
related in time, space, origin, or motivation, whether they form
a convenient trial unit, and whether their treatment as a unit
conforms to the parties' expectations, or business understanding
or usage. RESTATEMENT (SECOND) OF JUDGMENTS § 24(2).[5]

---

    defendant bars another action by the plaintiff on the same
    claim.

RESTATEMENT (SECOND) OF JUDGMENTS § 19.

    [5]§ 24.  Dimensions of "Claim" for Purposes of Merger or Bar
– General Rule Concerning "Splitting"

    (1) When a valid and final judgment rendered in an action
    extinguishes the plaintiff's claim pursuant to the rules of
    merger or bar (see §§ 18, 19), the claim extinguished
    includes all rights of the plaintiff to remedies against the
    defendant with respect to all or any part of the
    transaction, or series of connected transactions, out of
    which the action arose.

    (2) What factual grouping constitutes a "transaction", and
    what groupings constitute a "series", are to be determined
    pragmatically, giving weight to such considerations as
    whether the facts are related in time, space, origin, or
    motivation, whether they form a convenient trial unit, and
    whether their treatment as a unit conforms to the parties'
    expectations or business understanding or usage.

RESTATEMENT (SECOND) OF JUDGMENTS § 24.

The Rule Concerning Splitting operates to extinguish a claim by the plaintiff against the defendant in a second action even though the plaintiff is prepared to present evidence, grounds, or theories not presented in the first case or to seek remedies or relief not requested in the first case. In other words, claims that have never been litigated will not be entertained. RESTATEMENT (SECOND) OF JUDGMENTS § 25.[6]

And, there are exceptions, including (among others): agreement or acquiescence by the parties in splitting; express authorization of splitting by the court in the first action; and jurisdictional limitation that prevent a court from entertaining theories, remedies, or forms of relief. RESTATEMENT (SECOND) OF JUDGMENTS § 26(1)(a)-(c).[7]

---

[6]§ 25.  Exemplification of General Rule Concerning Splitting

The rule of § 24 applies to extinguish a claim by the plaintiff against the defendant even though the plaintiff is prepared in the second action

(1) To present evidence or grounds or theories of the case not presented in the first action; or

(2) To seek remedies or forms of relief not demanded in the first action.

RESTATEMENT (SECOND) OF JUDGMENTS § 25.

[7]§ 26.  Exceptions to the General Rule Concerning Splitting

(1) When any of the following circumstances exists, the general rule of § 24 does not apply to extinguish the claim, and part or all of the claim subsists as a possible basis for a second action by the plaintiff against the defendant:
    (a) The parties have agreed in terms or in effect that the plaintiff may split his claim, or the defendant has acquiesced therein; or
    (b) The court in the first action has expressly reserved the plaintiff's right to maintain the second action; or

Finally, even if claim preclusion is available to be applied to a particular situation, the application of the doctrine is not mandatory. Rather, the decision whether actually to preclude litigation lies in the discretion of the trial court. Robi v. Five Platters, Inc., 838 F.2d 318, 321 (9th Cir. 1988); Khaligh v. Hadaegh (In re Khaligh), 338 B.R. 817, 823 (9th Cir. BAP 2006), aff'd & adopted, 506 F.3d 956 (9th Cir. 2007); Christopher Klein, et al., Principles of Preclusion and Estoppel in Bankruptcy Cases, 79 AM. BANKR. L.J. 839, 883 (2005).

Thus, the standard of review on appeal is that whether

----

(c) The plaintiff was unable to rely on a certain theory of the case or to seek a certain remedy or form of relief in the first action because of the limitations on the subject matter jurisdiction of the courts or restrictions on their authority to entertain multiple theories or demands for multiple remedies or forms of relief in a single action, and the plaintiff desires in the second action to rely on that theory or to seek that remedy or form of relief; or
(d) The judgment in the first action was plainly inconsistent with the fair and equitable implementation of a statutory or constitutional scheme, or it is the sense of the scheme that the plaintiff should be permitted to split his claim; or
(e) For reasons of substantive policy in a case involving a continuing or recurrent wrong, the plaintiff is given an option to sue once for the total harm, both past and prospective, or to sue from time to time for the damages incurred to the date of suit, and chooses the latter course; or
(f) It is clearly and convincingly shown that the policies favoring preclusion of a second action are overcome for an extraordinary reason, such as the apparent invalidity of a continuing restraint or condition having a vital relation to personal liberty or the failure of the prior litigation to yield a coherent disposition of the controversy.

(2) In any case described in (f) of Subsection (1), the plaintiff is required to follow the procedure set forth in §§ 78-82.

RESTATEMENT (SECOND) OF JUDGMENTS § 26.

1 | preclusion is available to be applied is a question of law

2 | reviewed de novo, but the decision to impose preclusion is

3 | reviewed for abuse of discretion. <u>E.g.</u>, <u>Robi</u>, 838 F.2d at 321.

4 | The most one can say is that if the original judgment were

5 | to become final, then claim preclusion <u>could</u> operate to

6 | extinguish all the related causes of action. The modal auxiliary

7 | verb is "could" because it is difficult to describe a precise

8 | perimeter to the concept of "claim," the applicability of

9 | exceptions, and how a court will exercise its discretion.

10 |

11 | 2

12 | The particular uncertainty for Bank of America in this case

13 | lies in the state-law causes of action that the California Third

14 | District Court of Appeals approved in the Sundquist's state-court

15 | complaint, including deceit, promissory estoppel, aiding and

16 | abetting breach of fiduciary duty, assumed liability of mortgage

17 | brokers, unfair competition, and negligence.

18 | This adversary proceeding litigated only their § 362(k)(1)

19 | stay violation cause of action. In theory, the Sundquists could

20 | pursue some or all of their state-law claims in federal court as

21 | matters of supplemental jurisdiction under 28 U.S.C. § 1367 or in

22 | state court. <u>Sundquist I</u>, 566 B.R. at 585 n.54.

23 | It is not inevitable that a court in subsequent litigation

24 | against Bank of America would conclude all of those causes of

25 | action, especially the assumed liability theory focused on the

26 | original mortgage transaction in which Bank of America did not

27 | participate, would offend the Rule Concerning Splitting. Nor is

28 | it inevitable that a court would exercise its discretion to

1  preclude subsequent litigation of a cause of action that lies in

2  the penumbra of the shadow of claim preclusion.

3       The comprehensive release of Bank of America by the

4  Sundquists under the settlement dispels potential uncertainties

5  of claim preclusion if the judgment were to remain in effect.

6       Thus, risks associated with claim preclusion do not provide

7  compelling argument for vacating the judgment.

8

9                         C

10       Issue preclusion poses theoretical third-party risk for Bank

11  of America if a valid and final judgment remains in effect.

12       As with claim preclusion, the comprehensive release given as

13  part of the settlement eliminates the problem of issue preclusion

14  as between the Sundquists and Bank of America.

15       Rather, risk comes from third parties who might assert issue

16  preclusion to avert relitigation of issues of law or fact

17  established in the Sundquist litigation in their own lawsuits

18  against Bank of America.  Remote risk, but not impossible.

19

20                         1

21       Issue preclusion, if the judgment were to remain in effect,

22  is the effect of that judgment in precluding relitigation of an

23  issue in an action on a claim that is not precluded by the Merger

24  or Bar doctrines of claim preclusion.  The operative principles

25  are flexible and tend to be narrowly applied when the primary

26  interest is encouraging settlements and discouraging appeals.

27  RESTATEMENT (SECOND) OF JUDGMENTS, Title E, Introductory Note.

28       The general rule of issue preclusion is that an issue of law

or fact that has been actually litigated and determined and that
is essential to the judgment will be conclusive in subsequent
litigation between the parties, even if not on the same claim.
RESTATEMENT (SECOND) OF JUDGMENTS, § 27.[8]

The exceptions are inherently elastic and imprecise.  The
degree of relationship between the two claims, foreseeability,
changes in legal context, avoiding inequitable administration of
law, differences in quality of procedures or allocation of
jurisdiction between them, and adverse impact on third parties or
the public are all taken into account.  RESTATEMENT (SECOND) OF
JUDGMENTS § 28.[9]

---

[8]§ 27.　Issue Preclusion - General Rule

When an issue of fact or law is actually litigated and
determined by a valid and final judgment, and the
determination is essential to the judgment, the
determination is conclusive in a subsequent action between
the parties, whether on the same or a different claim.

RESTATEMENT (SECOND) OF JUDGMENTS § 27.

[9]§ 28.　Exceptions to the General Rule of Issue Preclusion

Although an issue is actually litigated and determined by a
valid and final judgment, and the determination is essential
to the judgment, relitigation of the issue in a subsequent
action between the parties is not precluded in the following
circumstances:

(1) The party against whom preclusion is sought could not,
as a matter of law, have obtained review of the judgment in
the initial action; or

(2) This issue is one of law and (a) the two actions involve
claims that are substantially unrelated, or (b) a new
determination is warranted in order to take account of an
intervening change in the applicable legal context or
otherwise to avoid inequitable administration of the laws;
or

(3) A new determination of the issue is warranted by

Unlike claim preclusion, which applies between the same parties, issue preclusion can be applied in litigation with third parties. RESTATEMENT (SECOND) OF JUDGMENTS § 29.[10]

differences in the quality or extensiveness of the procedures followed in the two courts or by factors relating to the allocation of jurisdiction between them; or

(4) The party against whom preclusion is sought had a significantly heavier burden of persuasion with respect to the issue in the initial action than in the subsequent action; the burden has shifted to his adversary; or the adversary has a significantly heavier burden than he had in the first action; or

(5) There is a clear and convincing need for a new determination of the issue (a) because of the potential adverse impact of the determination on the public interest or the interests of persons not themselves parties in the initial action, (b) because it was not sufficiently foreseeable at the time of the initial action that the issue would arise in the context of a subsequent action, or (c) because the party sought to be precluded, as a result of the conduct of his adversary or other special circumstances, did not have an adequate opportunity or incentive to obtain a full and fair adjudication in the initial action.

RESTATEMENT (SECOND) OF JUDGMENTS § 28.

[10]§ 29. Issue Preclusion in Subsequent Litigation with Others

A party precluded from relitigating an issue with an opposing party, in accordance with §§ 27 and 28, is also precluded from doing so with another person unless the fact that he lacked full and fair opportunity to litigate the issue in the first action or other circumstances justify affording him an opportunity to relitigate the issue. The circumstances to which considerations should be given include those enumerated in § 28 and also whether:

(1) Treating the issue as conclusively determined would be incompatible with an applicable scheme of administering the remedies in the actions involved;

(2) The forum in the second action affords the party against whom preclusion is asserted procedural opportunities in the presentation and determination of the issue that were not

2

The potential for issue preclusion does give Bank of America some basis for concern on the third-party front.

a

As between Bank of America and the Sundquists, any risk associated with issue preclusion if they were to attempt to proceed with causes of action recognized by the California appellate court that are not deemed to have merged into this court's judgment on claim preclusion theories is dispelled by the comprehensive release given in the settlement.

---

available in the first action and could likely result in the issue being differently determined;

(3) The person seeking to invoke favorable preclusion, or to avoid unfavorable preclusion, could have effected joinder in the first action between himself and his present adversary;

(4) The determination relied on as preclusive was itself inconsistent with another determination of the same issue;

(5) The prior determination may have been affected by relationships among the parties to the first action that are not present in the subsequent action, or apparently was based on a compromise verdict or finding;

(6) Treating the issue as conclusively determined may complicate determination of issues in the subsequent action or prejudice the interests of another party thereto;

(7) The issue is one of law and treating it as conclusively determined would inappropriately foreclose opportunities for obtaining reconsideration of the legal rule upon which it was based;

(8) Other compelling circumstances make it appropriate that the party be permitted to relitigate the issue.

RESTATEMENT (SECOND) OF JUDGMENTS § 29.

b

Third-party preclusion, while only a remote possibility, is not so easily discounted. The release executed by the Sundquists does not bind third parties.

The arguments against using issue preclusion to prevent Bank of America from relitigating an issue of fact or law in future disputes with other parties, viewed through the matrix of Restatement § 29, appear to be strong. Few of the issues of fact or law actually litigated in the Sundquist trial appear to apply in third-party situations. Nevertheless, the reality that genius of counsel knows few bounds could give the bank discomfort in future cases.

This court can provide some insulation for the bank by ruling that the issues of law and fact determined in this adversary proceeding are not "sufficiently firm to be accorded conclusive effect," within the meaning of Restatement (Second) of Judgments § 13, in subsequent litigation with others.

It is plain that for purposes of claim preclusion, the court in an initial action may expressly reserve the right of the plaintiff to split a claim and prosecute a subsequent action. RESTATEMENT (SECOND) OF JUDGMENTS § 26(1)(b).

It follows by analogy to § 26(1)(b) that a court in an initial action, noting the role of the policy of encouraging settlement and discouraging appeals described by the Introductory Note to issue preclusion in the Restatement (Second), may expressly determine that its rulings on issues of law and fact are not "sufficiently firm to be accorded conclusive effect" in subsequent litigation with others. RESTATEMENT (SECOND) OF JUDGMENTS,

Title E, Introductory Note.

The Restatement (Second)'s introductory notes have sufficient force to be worthy of respect and citation.[11]

### D

There is an answer to Bank of America's concerns about issue preclusion doctrines that does not require that the adversary proceeding be dismissed or that the opinion be vacated.

### 1

Those concerns, which this court thinks are more theoretical than real, would dissipate if the portion of the judgment awarding damages to the Sundquists were to be vacated and the adversary proceeding closed without dismissing the adversary proceeding and without erasing the opinion.

If the damages judgment were to be vacated and thereafter left unresolved, with the clarification that no adjudication in the case regarding damages is intended to be sufficiently firm to be accorded conclusive effect, then there would be no finality.

---

[11]The role of Introductory Notes is described in chapter 1 of the Restatement (Second):

> Finally, it may be noted that the Introductions to the several Chapters are integral parts of the treatment of the subject involved.  These Introductions give a general view of the problems to be considered and the concepts and terminology used to deal with them.  Just as a specific rule of law should be understood as an element of a legal matrix, so should a specific section of this Restatement be understood as a part of the text as a whole.  The Introductions endeavor to further that understanding.

RESTATEMENT (SECOND) OF JUDGMENTS, Ch. 1, at 14-15.

Without finality, Bank of America has little to fear from issue preclusion doctrine. RESTATEMENT (SECOND) OF JUDGMENTS § 13.

2

The adversary proceeding could be closed without a judgment having been rendered with respect to stay violation damages.

Closing this adversary proceeding would be merely an administrative matter relating to internal management of the court and its records. Cf. Staffer v. Predovich (In re Staffer), 306 F.3d 967, 972-73 (9th Cir. 2002) (reopening bankruptcy case "for purpose of maintaining nondischargeability action 'is purely administrative matter for ease of management by the clerk's office.'"), quoting Menk v. LaPaglia (In re Menk), 241 B.R. 896, 912 (9th Cir. BAP 1999).

Closing the adversary proceeding permits files to be deemed inactive and archived by the Clerk of Court. The substantive rights of parties are not affected. The adversary proceeding could be reopened if judicial business needs to be conducted.

The stay violation damages issue would, as a formal matter be unresolved, but the defendant would have the comfort of the release executed by the plaintiffs as part of the settlement.

The court has discretion to "retain jurisdiction" over the settlement agreement, which it will do in this instance. Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375, 381-82 (1994).

The fact of retention of jurisdiction over the settlement agreement warrants the exercise of discretion to close the adversary proceeding with unresolved counts.

## VI

The question of confidentiality remains.  Bank of America and the Sundquists have agreed to keep the settlement agreement confidential.  The Intervenors urge that the settlement should not be confidential and that, if not made public, the court should at a minimum examine the settlement agreement in camera. They also argue that the opinion should not be expunged.

The court agrees that the opinion should remain on the public record.  That result is being accomplished by not dismissing the adversary proceeding and then by administratively closing it in circumstances in which jurisdiction is retained over the settlement agreement.

Further agreeing with the Intervenors, the court has examined the settlement agreement in camera with particular attention to the amount of the settlement, the effect on the public-interest component of punitive damages, the confidentiality provisions, and potential for post-settlement enforcement disputes.

Aspects of the agreement were described by the parties in open court during the hearing on the motion to dismiss.

It was explained that the parties had agreed to use their "best efforts" to maintain confidentiality.  And the settlement agreement recognizes that statements at the hearing were consistent with the "best efforts" obligation.


## A

The settlement amount presents two concerns.  How much? What about the public-interest component of punitive damages?

1

The settlement amount was described at the hearing as "a lot more" than the $6,074,581.50 allocated to the Sundquists. As noted above in the facts, the Sundquist motion to reopen the evidence asserts that they can prove substantially more than $9 million in actual and punitive damages using a conventional punitive damage multiplier. The actual confidential settlement amount is amply consistent with the Sundquists' assertion.

The court will acquiesce in the request of the parties not to state the precise amount. It is enough for the public to know that the settlement to the Sundquists is for a substantial premium over their $6,074,581.50 share of the initial judgment.

2

The public-interest component of punitive damages, which was an important aspect of the court's damages award under 11 U.S.C. § 362(k)(1), is indirectly honored in the settlement.

A challenge inherent in honoring the public-interest component is the economic conflict of interests that plaintiffs and defendants each have with the public. Plaintiffs want all the value for themselves; defendants want to minimize the damages they must pay and are happy to squeeze out the public.[12]

For that reason, the public-interest beneficiaries were granted leave to intervene. Sundquist II, 570 B.R. at 96-98. They have taken the position that they will not stand in the way

---

[12] See Catherine M. Sharkey, Punitive Damages as Societal Damages, 113 YALE L.J. 347 (2003); Note, An Economic Analysis of the Plaintiff's Windfall From Punitive Damage Litigation, 105 HARVARD L. REV. 1900 (1992).

of full appropriate compensation for the Sundquists and defer to
the discretion of the court.

The disapprovals and reductions of punitive damage awards as
too large in the hands of plaintiffs that are common in appellate
jurisprudence tend systematically to reward defendants by
enabling them to profit by avoiding having to pay the social cost
of outrageous conduct.  For that reason, this court is persuaded
that the Ohio Supreme Court was on the right track when it
diverted a portion of a large punitive damage award to a public
purpose.  <u>Dardinger v. Anthem Blue Cross & Blue Shield</u>, 98 Ohio
St. 77, 102-04, 781 N.E.2d 121, 144-45 (2002).  The Sundquist
decision builds on that concept.

The settlement finesses the problem by way of calculated
ambiguity.  Although nothing is directly allocated to the
Intervenors, the voluntary contributions by the Sundquists to the
public-interest beneficiaries indirectly serve the purpose.

With knowledge of the precise amount of the settlement, this
court is satisfied that the Sundquists are de facto recognizing
the public-interest component by their voluntary contributions
and not appropriating too much of it to themselves.

In the end, this case lays down a marker for a concept.
While the facts may present a paradigm case for appeal, the
choice of the parties to avert a long-term and expensive appeal
deserves deference.  Whether the idea of allocating a public-
interest component of punitive damages to public-interest
entities devoted to the relevant subject continues to take root
will have to be left to future development in future cases.

B

Confidentiality has two relevant facets.  First, the agreement requires that the parties use their "best efforts" to maintain confidentiality of the settlement agreement and term sheet, including the amount of the settlement.  Second, there is the extent to which the parties agree to be muzzled about the overall situation.

The parties are mindful that this court is not bound by the confidentiality clause and that revelation of terms by the court following the review of the actual settlement agreement that it has insisted upon does not violate the "best effort" obligation.

1

The amount of the settlement is conceded to be "a lot more" than the $6,074,581.50 net award to the Sundquists.  This is a concession that Bank of America is paying the full net award, plus a premium, the amount of which is not disclosed.

The factual evidence was disclosed during a public trial with testimony, written evidence, and written findings of fact that cannot be reeled in from public view.  Well-founded facts are not likely to be disapproved on appeal as clearly erroneous.

The further facts that the Sundquists assert they can prove to establish actual damages sufficient to support a cumulative award of actual and punitive damages exceeding $9 million are at this point unknown and could include personal and embarrassing information the Sundquists would prefer to remain private.  Every exposure of intimate personal information risks exacerbating a psychological toll in need of healing.

The final settlement agreement appears to be an arm's length document carefully drafted by competent counsel on each side. It contains conventional terms that the court views as benign. Potentially difficult questions are bridged by calculated ambiguity. There are the usual mutual releases and recitals to the effect that there is no admission of liability and that the compromise is of disputed claims and defenses, to avoid litigation, and to buy peace. Disclosure of the agreement is permitted, if required, to regulatory, taxing, and governmental authorities, and it is exposed to legal process (which may be resisted), preferably under seal.

2

A mutual promise not to make negative or disparaging remarks about each other in any form or media related to the factual allegations made in the litigation could be troublesome to the extent that it might muzzle talking about facts and evidence from the trial. If the parties genuinely choose not to talk, that is their privilege. But enforcing total silence about an entire litigation that went to judgment in public might go too far.

This court is satisfied, however, that the enforcement mechanism involving a court of competent jurisdiction prevents overreaching that might offend public policy. As jurisdiction is being reserved by this court over the settlement agreement, any dysfunction can be policed.

VII

Having reviewed the settlement agreement in camera and after

33

reflecting on the overall situation, this court is persuaded that its equitable discretion should be exercised with a limited adjustment to the status quo relating to the money judgment.

The court will vacate the money judgment against Bank of America, without dismissing the adversary proceeding and will close the adversary proceeding, leaving undisturbed the § 329(b) judgment and all opinions and orders heretofore issued, and reserving jurisdiction over the settlement agreement.

The interest of justice is being served because the settlement gives the Sundquists total and immediate financial victory without having to await the outcome of the multi-level, multi-year appeal that ordinarily occurs in a case such as this. It is consistent with the general policy of encouraging settlement and discouraging appeals.

The Sundquists will receive, in addition to the $6,074,581.50 awarded by this court's judgment, a multi-million dollar premium that fairly reflects the amount of the cumulative award of actual and punitive damages this court regards as likely to be proved in the retrial on damages that they are requesting. In finance terms, it reflects the expected value of retrial.

As to the Intervenor Interested Parties, the act of vacating will, de jure, eliminate the public-interest component of the punitive damages award.

But, de facto, the public-interest component is honored by the Sundquists' voluntary commitment to contribute to those same entities the post-tax equivalent of a pre-tax public-interest component of $600,000.00. This court, which knows the precise amount of the settlement, is satisfied that the voluntary

contribution eliminates the court's reservation that they might be appropriating to themselves the legitimate public-interest component of punitive damages.

An appropriate level of deterrence will be maintained by the combination of the public knowledge of an immediate payment by Bank of America of a multi-million dollar premium over the $6,074,581.50 award and by leaving on the books the adversary proceeding and the opinions heretofore issued.

While, in theory, the Intervenors could appeal the order vacating the damages portion of the judgment as an abuse of discretion, no such appeal is likely. They have stated they have no desire to impede substantial and just compensation for the Sundquists or to receive any financial benefit at their expense.


## Conclusion

The adversary proceeding will not be dismissed. Nor will the opinion be withdrawn. The judgment cancelling the fee contract of the Sundquists' former counsel pursuant to § 329(b) will remain in effect.

The motion by the Sundquists and Bank of America to dismiss the adversary proceeding, vacate the opinion, and vacate the judgment will be DENIED, with the proviso that the damages component of the judgment will be vacated and the adversary proceeding closed (subject to the pending § 329(b) appeal), reserving jurisdiction over the settlement agreement.

The order on that motion will include a ruling that "the issues of law and fact determined in this adversary proceeding are not 'sufficiently firm to be accorded conclusive effect,'

1  within the meaning of Restatement (Second) of Judgments § 13, in

2  subsequent litigation with others."

3      The cross-motions by the Sundquists to reopen the evidence

4  in order to prove more damages and by Bank of America to strike

5  the Renèe Sundquist diary from evidence will remain unresolved in

6  the closed case.

7      An appropriate order will issue.

8

9  Dated:  January 18, 2018

10

11                    UNITED STATES BANKRUPTCY JUDGE

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

INSTRUCTIONS TO CLERK OF COURT
SERVICE LIST

The Clerk of Court is instructed to send the attached document, via the BNC, to the following parties:

Dennise Henderson
1903 21st Street
Sacramento, California 95811

Orly Degani
12400 Wilshire Blvd #400
Los Angeles, CA 90025

Jonathan Doolittle
Reed Smith LLP
101 Second Street, Suite 1800
San Francisco, California 94105

Jonathan D Hacker
1625 Eye St, NW
Washington DC 20006

James Stang and Kenneth Brown
Pachulski Stang Ziehl & Jones LLP
10100 Santa Monica Blvd, #1300
Los Angeles, California 90067

Estela Pino
Pino & Associates
800 Howe Avenue, Suite 420
Sacramento, California 95825

Roger N Heller
275 Battery St 29th Fl
San Francisco CA 94111

Rhonda S Goldstein
1111 Franklin St 8th Fl
Oakland CA 94607

Elise K Traynum
Office of the General Counsel
200 McAllister St
San Francisco CA 94102

Sandor T Boxer
1888 Century Park E #1150
Los Angeles CA 90067

Mark E Ellis
1425 River Park Drive, Suite 400
Sacramento, CA 95815

1  Office of the U.S. Trustee
   Robert T Matsui United States Courthouse
2  501 I Street, Room 7-500
   Sacramento, CA 95814
3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28