# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF CALIFORNIA

In re

Erik J. Sundquist
Renee Sundquist

Debtor(s).

Case No. 10-35624

ADV. No. 14-02278

BAP No. EC- 17-1347

## RECEIPT OF PLEADINGS AND DOCUMENTS
## FROM THE UNITED STATES BANKRUPTCY APPELLATE PANEL

The following documents were received by the United States Bankruptcy Court from the United States Bankruptcy Appellate Panel on   4/16/19   .

Copy of Affirmed Mandate

Dated:  4/16/19

FOR THE COURT

WAYNE BLACKWELDER, CLERK
U.S. BANKRUPTCY COURT

By:  Richard Lopez
       Deputy Clerk

EDC 2-770 (Rev. 09/01/10)

FILED

UNITED STATES BANKRUPTCY APPELLATE PANEL

OF THE NINTH CIRCUIT

APR 16 2019

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

---

In re: ERIK J. SUNDQUIST; RENEE SUNDQUIST

Debtors

BAP No. EC-17-1347-LBS

------------------------------

DENNISE HENDERSON; LAW OFFICE OF
DENNISE HENDERSON

Bankr. No. 10-35624
Adv. No. 2:14-ap-2278
Chapter 13

Appellants

v.

ERIK J. SUNDQUIST; RENEE SUNDQUIST

Appellees

---

## PROOF OF SERVICE OF MANDATE

A certified copy of the attached judgment was sent to:

CLERK

U.S. BANKRUPTCY COURT
BkCt, Sacramento
U.S. Bankruptcy Court
501 I Street
Suite 3-200
Sacramento, CA 95814

Honorable Christopher M Klein
Robert T. Matsui United States Courthouse
501 I Street
3-200
Sacramento, CA 958147300

on April 16, 2019
By: Vicky Jackson-Walker, Deputy Clerk

FILED

FEB 27 2019

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

## UNITED STATES BANKRUPTCY APPELLATE PANEL

## OF THE NINTH CIRCUIT

In re: ERIK J. SUNDQUIST; RENEE SUNDQUIST

Debtors

BAP No. EC-17-1347-LBS

-------------------------------

DENNISE HENDERSON; LAW OFFICE OF
DENNISE HENDERSON

Bankr. No. 10-35624
Adv. No. 2:14-ap-2278
Chapter 13

Appellants

v.

ERIK J. SUNDQUIST; RENEE SUNDQUIST

Appellees

## JUDGMENT

ON APPEAL from the United States Bankruptcy Court for California Eastern - Sacramento.

THIS CAUSE came on to be heard on the record from the above court.

ON CONSIDERATION WHEREOF, it is ordered and adjudged by this Panel that the judgment of the Bankruptcy Court is **AFFIRMED.**

### FOR THE PANEL,

Susan M Spraul
Clerk of Court

**By:** Vicky Jackson-Walker, Deputy Clerk

BANKRUPTCY APPELLATE PANEL
OF THE NINTH CIRCUIT
A True Copy
Attest:

Susan M. Spraul, Clerk

by Deputy Clerk



FILED

FEB 27 2019

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

## NOT FOR PUBLICATION

## UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | BAP No. EC-17-1347-LBS |
| ERIK J. SUNDQUIST and RENEE SUNDQUIST, | Bk. No. 2:10-bk-35624 |
| | Adv. No. 2:14-ap-2278 |
| Debtors. | |
| DENNISE HENDERSON; LAW OFFICE OF DENNISE HENDERSON, | |
| Appellants, | |
| v. | MEMORANDUM* |
| ERIK J. SUNDQUIST; RENEE SUNDQUIST, | |
| Appellees. | |

Argued and Submitted on January 24, 2019
at Sacramento, California

Filed – February 27, 2019

Appeal from the United States Bankruptcy Court

---

      *This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

for the Eastern District of California

Honorable Christopher M. Klein, Bankruptcy Judge, Presiding

————

Appearances:     Richard Lawrence Antognini argued for Appellants;
Mark E. Ellis of Ellis Law Group, LLP, argued for
Appellees.

————

Before: LAFFERTY, BRAND, and SPRAKER, Bankruptcy Judges.

## INTRODUCTION

Dennise Henderson and the Law Office of Dennise Henderson[1] challenge the bankruptcy court's order expunging an attorney's lien asserted against the proceeds of a post-judgment settlement of litigation between their former clients, debtors Erik and Renée Sundquist, and Bank of America, N.A. ("BANA"). Substantively, however, the challenge is to the bankruptcy court's underlying ruling canceling the contingency fee agreement between Ms. Henderson and the Sundquists and limiting Ms. Henderson's compensation to $70,000 as the reasonable value of her services. Neither the bankruptcy court nor the parties focused on the attorney's lien issue itself.

Ms. Henderson has not demonstrated that the bankruptcy court

---

[1] Appellants hereafter are referred to collectively as "Ms. Henderson."

2

abused its discretion either in canceling the contingency fee agreement or in limiting her compensation to $70,000 and thus ordering the attorney's lien expunged. Accordingly, we AFFIRM.

## FACTUAL BACKGROUND

Ms. Henderson represented the Sundquists in their chapter 13[2] case filed June 14, 2010. During the bankruptcy case, BANA, the secured lender on the Sundquists' home, took numerous actions in violation of the automatic stay, including foreclosure and prosecution of an unlawful detainer action.[3] As a result, the Sundquists gave up their effort to use a chapter 13 plan to cure a bank-induced default while they attempted to negotiate a mortgage modification. They voluntarily dismissed the chapter 13 case on September 20, 2010, and Ms. Henderson ceased to represent them.

Ms. Henderson apparently took no steps to force BANA to stop its stay violations during the bankruptcy case, and, after the case was dismissed, BANA exacerbated the consequences of its prior stay violations.

---

[2]Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, all "Rule" references are to the Federal Rules of Bankruptcy Procedure, and all "Civil Rule" references are to the Federal Rules of Civil Procedure.

[3]A detailed recitation of Bank of America's egregious conduct is found in the bankruptcy court's opinion on the merits of the stay violation litigation. *Sundquist v. Bank of America (In re Sundquist)*, 566 B.R. 563 (Bankr. E.D. Cal. 2017) (*"Sundquist I"*), *vacated in part by Sundquist v. Bank of America (In re Sundquist)*, 580 B.R. 536 (Bankr. E.D. Cal. 2018).

*See Sundquist I*, 566 B.R. at 579-582.

In 2011, the Sundquists, represented by a different attorney, sued BANA in state court on several grounds, including wrongful foreclosure. The complaint was dismissed by the state trial court. On appeal, the California Third District Court of Appeal reversed the dismissal. The California appellate court also ruled that § 362(k)(1) preempts state law wrongful foreclosure claims that are based solely on alleged violations of the automatic stay, so that if the Sundquists desired relief on account of the bankruptcy automatic stay violations, they would have to return to federal court.

Thereafter, the Sundquists re-employed Ms. Henderson to prosecute their § 362(k)(1) cause of action in federal court. Ms. Henderson filed a complaint in the district court, which referred the action to the bankruptcy court as a core proceeding. The bankruptcy court held a bench trial in May 2016 and took the matter under advisement.

While the matter was under advisement, the bankruptcy court issued an order reminding Ms. Henderson that she had not timely filed under Rule 2016(b) the statement required by § 329 disclosing the compensation agreed to be paid to her by the Sundquists for representing them in the adversary proceeding. Ms. Henderson filed a response and a supplemental statement stating that fees were to be based on an unspecified contingency rate. The bankruptcy court then ordered Ms. Henderson to file a copy of

the contingency fee agreement. The order required that she justify the agreed contingency fee arrangement as representing the reasonable value of services within the meaning of § 329(b) and that she explain how the contingency fee comported with the attorneys' fee structure set forth in § 362(k)(1).

Ms. Henderson filed a copy of a contingency fee agreement dated October 22, 2014. That fee agreement was actually two different documents pasted together with non-consecutive paragraphs. The first two pages ended in the middle of paragraph no. 3; the third page, in a distinctly different typeface, began with paragraph no. 11. Ms. Henderson conceded that the agreement was a 2016 document backdated to 2014 and apologized for filing an inaccurate copy of the fee agreement, but she never filed a corrected copy.[4]

Ms. Henderson concurrently filed "Supplemental Briefing Regarding Attorneys' Fees," in which she urged that § 329(b) reasonable compensation be determined consistent with § 330(a)(3). She stated, "I will file a time billing with the actual time expended and will only seek the lesser of the contingency agreement or the reasonable hourly rate times the

---

[4]Ms. Henderson's counsel later represented to the bankruptcy court that the original contingency fee agreement had been lost.

number of hours expended consistent with the Lodestar[5] method." Other than a naked assertion that customary compensation can include a contingency fee, she offered no justification for the contingency fee agreement.

A few days later, Ms. Henderson filed a declaration documenting 207.56 hours spent on the § 362(k)(1) adversary proceeding at a rate of $300.00 per hour ($62,268), together with costs for depositions, transcripts, and trial binders of $6,606.55 for a total of $68,874.55. Ms. Henderson did not seek an enhancement above her lodestar compensation, nor did she proffer specific evidence to rebut the presumption against a bonus. Accordingly, the bankruptcy court fixed the attorneys' fee component of § 362(k)(1) actual damages at $70,000, slightly more than the lodestar amount that Ms. Henderson stated she was requesting.

Despite the fact that Ms. Henderson never provided a corrected copy of the contingency fee agreement, the bankruptcy court treated the agreement at "face value." *Sundquist II*, 576 B.R. at 867-68. The court concluded that the contingency fee that would result in this matter exceeded the reasonable value of services within the meaning of § 329(b)

---

[5]The lodestar rate is a reasonable hourly rate multiplied by the number of hours actually and reasonably expended, and is presumptively a reasonable fee in a bankruptcy case. *Sundquist v. Bank of America, N.A. (In re Sundquist)*, 576 B.R. 858, 876 (Bankr. E.D. Cal. 2017) (*Sundquist II*) (citing *Burgess v. Klenske (In re Manoa Finance Co., Inc.)*, 853 F.2d 687, 691–92 (9th Cir. 1988)).

and canceled it. *Sundquist I*, 566 B.R. at 597.

In March 2017, the court issued a written opinion and entered a judgment awarding the Sundquists $1,074,581.50 in actual damages and $5,000,000.00 in punitive damages, a total of $6,074,581.50. *Id.* at 563. Additional punitive damages of $45,000,000.00 were allocated by mandatory injunction to the National Consumer Law Center, National Consumer Bankruptcy Center, and five public law schools. *Id.* at 618-19. The Sundquists were also enjoined, by mandatory injunction, to deliver $70,000.00 to Ms. Henderson as § 329(b) "reasonable" compensation. *Id.* at 618.

Shortly thereafter, the Sundquists hired new counsel to replace Ms. Henderson. She then filed a Notice of Lien "by virtue of a written fee agreement with [the Sundquists] dated October 22, 2014," on any judgment or settlement paid to secure the payment for legal services rendered and costs and expenses "in accordance with the terms of the aforementioned fee agreement." According to the bankruptcy court, the lien was filed "to create 'hold-up' value by impeding settlement efforts by plaintiffs and defendant in order to extract a fee 'far higher' than what this court authorized as 'reasonable' compensation under § 329(b)." *Sundquist II*, 576 B.R. at 865.

The Sundquists and BANA eventually reached a settlement. Accordingly, in August 2017, the Sundquists, through their new counsel,

filed three motions: a motion to expunge Ms. Henderson's attorney's lien ("Motion to Expunge"), a motion to vacate the March 2017 judgment, and a motion to dismiss the adversary proceeding.

In their Motion to Expunge, the Sundquists asserted that: (1) under § 329 the bankruptcy court had the authority to determine the reasonableness of attorney's fees and had ancillary jurisdiction to do so; (2) the attorney's lien should be expunged because Ms. Henderson had failed to comply with Rule 3-300 of the California Rules of Professional Conduct, which prohibits an attorney from obtaining a pecuniary interest adverse to a client unless certain requirements are satisfied; (3) the fee agreement had been voided by the Sundquists due to Ms. Henderson's failure to comply with California Business & Professions Code § 6147, which requires a recitation that the fee is negotiable, and § 6148, which requires for an hourly fee arrangement that there be a written contract setting forth the terms of compensation, including hourly rates; (4) the fee agreement was unconscionable as exorbitant and disproportionate to the services performed; (5) the court properly ruled on the reasonableness of the fees pursuant to Civil Rule 54, applicable via Rule 7054; and (6) Ms. Henderson was estopped by her representation that she would accept the amount awarded by the court. The Sundquists complained that the lien "effectively blocks the Sundquists from receiving the entire amount of the approximately $6,000,000 awarded to them, not just the $70,000 awarded

for fees and costs."

Ms. Henderson filed an opposition, arguing that: (1) the bankruptcy court lacked jurisdiction to rule on the validity of the lien because the bankruptcy case had been administered and closed, thus there was no bankruptcy estate to protect; (2) even if the court had ancillary jurisdiction, it should permit the matter to be litigated in state court; (3) Rule 3-300 of the California Rules of Professional Conduct does not apply to contingency fee arrangements; (4) although Ms. Henderson admittedly had failed to comply with California Business & Professions Code § 6147 and thus the Sundquists could void the fee agreement, under California law an attorney still maintains a lien on the client's recovery; (5) the reasonable value of Ms. Henderson's services far exceeded $70,000, and the bankruptcy court (I) did not permit an adequate opportunity for Ms. Henderson to present evidence on the appropriate fee, nor (ii) did it consider the appropriate factors, i.e., the risks involved, preclusion of other employment, novelty of the case, and results achieved; (6) the contingency fee was not unconscionable; and (7) there was no fraud on the court and no basis for estoppel.

Ms. Henderson concurrently filed a declaration in which she stated that when she stated in her September 2016 supplemental brief that she would seek the lesser of the amount due under the contingency fee agreement or the amount calculated by the lodestar method, she did not

understand that the court was considering invalidating the contingency fee agreement and limiting her compensation to her hourly rate and actual costs. She stated that she assumed the court would use the information to calculate the amount of fees to award the Sundquists as compensatory damages but not use it to limit the amount of fees she could collect from the Sundquists.

After a hearing, the bankruptcy court took the matter under advisement. In November 2017, it issued a written opinion, an order granting the Motion to Expunge, and a final judgment regarding Ms. Henderson's fees, which provided that the contingency fee agreement was canceled and that the reasonable compensation for Ms. Henderson's services under § 329 was $70,000.

Ms. Henderson timely appealed.[6]

## JURISDICTION

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(A) and (O). Subject to the discussion below, we have jurisdiction under 28 U.S.C. § 158.

---

[6] By published decision issued in January 2018, the bankruptcy court denied the Sundquists' motion to dismiss the adversary proceeding but granted the motion to vacate in part, vacating only the damages component of the judgment. *Sundquist v. Bank of America (In re Sundquist)*, 580 B.R. 536 (Bankr. E.D. Cal. 2018). The court's opinion provided that the judgment canceling Ms. Henderson's fee contract pursuant to § 329(b) would remain in effect. *Id.* at 556.

## ISSUES

Does this Panel have jurisdiction over the issues on appeal?

Did the bankruptcy court abuse its discretion in canceling the contingency fee agreement?

Did the bankrupt court abuse its discretion in limiting the amount of Ms. Henderson's attorney's fees to $70,000 and expunging her attorney's lien?

## STANDARD OF REVIEW

We review a bankruptcy court's award of attorney's fees as a component of § 362(k) damages for abuse of discretion. *See Eskanos & Adler, P.C. v. Roman (In re Roman)*, 283 B.R. 1, 7 (9th Cir. BAP 2002). *See also America's Servicing Co. v. Schwartz-Tallard (In re Schwartz-Tallard)*, 803 F.3d 1095, 1101 (9th Cir. 2015) (courts awarding fees under § 362(k) retain the discretion to eliminate unnecessary or plainly excessive fees).

To determine whether the bankruptcy court abused its discretion, we conduct a two-step inquiry: (1) we review de novo whether the bankruptcy court "identified the correct legal rule to apply to the relief requested" and (2) if it did, whether the bankruptcy court's application of the legal standard was illogical, implausible, or "without support in inferences that may be drawn from the facts in the record." *United States v. Hinkson*, 585 F.3d 1247, 1261-62 (9th Cir. 2009) (en banc).

## DISCUSSION

**A.     This Panel has jurisdiction over the issues raised by Ms. Henderson.**

The Sundquists contend that we lack jurisdiction over the issues of the cancellation of the contingency fee agreement and the fixing of Ms. Henderson's fees at $70,000, which were initially determined in the bankruptcy court's March 2017 judgment. Ms. Henderson timely filed a notice of appeal of that judgment, but that appeal (BAP No. 17-1103) was dismissed for lack of prosecution.

The appeal period for the March 2017 judgment was tolled by BANA's timely filing of a motion under Civil Rule 59 (applicable via Rule 9023) for amended findings. See Rule 8002(b); *Scott v. Younger*, 739 F.2d 1464, 1467 (9th Cir. 1984) (timely Rule 59(e) motion tolls the running of the time limitations for filing the notice of appeal until the trial court rules on the motion). The bankruptcy court never ruled on that motion, and it was mooted by the parties' subsequent settlement and request to vacate the judgment and dismiss the adversary proceeding, which the bankruptcy court disposed of in January 2018. The bankruptcy court issued the order on appeal on November 15, 2017.  Ms. Henderson timely filed a notice of appeal on November 28, 2017. The bankruptcy court issued a judgment regarding her attorney's fees on November 30, 2017, thus making its determinations final.

12

In short, because of the pending tolling motion, the appeal period did not begin to run until the bankruptcy court entered its order to expunge the lien. Thus Ms. Henderson's notice of appeal was timely, and we have jurisdiction over Ms. Henderson's appeal of the order granting the Motion to Expunge and all of the issues decided in the court's underlying opinion.

## B.      The Bankruptcy Court's Rulings

In its March 2017 opinion, the bankruptcy court stated that it would cancel the contingent fee contract under § 329(b)[7] because it called for excessive compensation. The court determined that under the lodestar analysis, the reasonable value of the legal services provided by Ms. Henderson was $70,000. *Sundquist I*, 566 B.R. at 597. The court cited two independent bases for these conclusions. First, a "contingency fee agreement in a situation in which attorney's fees are an element of damages leads to contingency fees on contingency fees, which would set up a repetitive loop in which fees would increase to infinity." *Id.* Second, in various comments throughout the opinion, the bankruptcy court cited Ms. Henderson's lack of competence in her trial presentation.

In its November 2017 opinion on the Motion to Expunge, the court rejected Ms. Henderson's arguments that it lacked jurisdiction over the

---

[7]That subsection provides, in relevant part, "[i]f such compensation exceeds the reasonable value of any such services, the court may cancel any such agreement, or order the return of any such payment, to the extent excessive . . . ."

attorney's lien issue or, alternatively, that it should abstain from hearing the matter. The court ruled that the Motion to Expunge involved issues that were both "arising in" and "related to" the bankruptcy case and, because the underlying fees were fixed pursuant to § 329(b), the court had jurisdiction under 28 U.S.C. §§ 1334 and 1367 to rule on it despite the fact that the bankruptcy estate had ceased to exist when the bankruptcy case was dismissed and closed. *Sundquist II*, 576 B.R. at 871-74. The bankruptcy court ruled that neither mandatory nor permissive abstention were appropriate given that there was no parallel action pending in state court (a requirement for mandatory abstention) and because there were no factors weighing in favor of permissive abstention. *Id.* at 874.

The court also ruled that quantum meruit principles could not rescue Ms. Henderson from cancellation of the contingency fee contract or entitle her to compensation above the amount documented in her declaration because she lacked clean hands, and even under quantum meruit principles, the reasonable fee would be $70,000. *Id.* at 881.

In this appeal, Ms. Henderson has not challenged the jurisdiction, abstention, or quantum meruit rulings. Her challenge is to the bankruptcy court's reaffirmance of its ruling on the cancellation of the contingency fee agreement and limitation of compensation (and the resulting expungement of her attorney's lien). The bankruptcy court elaborated on the fee ruling in its opinion on the Motion to Expunge.

Specifically, the bankruptcy court ruled that under § 329, it had the authority to cancel fee agreements and to order the return of payments to the extent they exceed the reasonable value of services provided. Alternatively, it pointed out that under *Schwartz-Tallard*, the bankruptcy court has the "discretion to eliminate unnecessary or plainly excessive fees" in awarding damages under § 362(k). 803 F.3d at 1101. The court noted that it had performed the lodestar analysis in reaching its conclusion that $70,000 was the reasonable value of Ms. Henderson's services, noting that Ms. Henderson had never explained how the contingency fee agreement represented the reasonable value of her services under § 329(b) and comported with the attorney's fee structure of § 362(k)(1).[8] And, based on Ms. Henderson's prior representation that she would seek only the lesser of the contingency fee agreement or the lodestar amount, the court found that she had "waived and renounced her right to claim additional compensation on quantum meruit or any other theory." *Sundquist II*, 576 B.R. at 880.

The court also pointed out that, given Ms. Henderson's failure to comply with the disclosure requirements of Rules 2016 and 2017, it had the discretion to disallow all fees, citing *Neben & Starrett, Inc. v. Chartwell Fin. Corp. (In re Park-Helena Corp.)*, 63 F.3d 877, 882 (9th Cir. 1995). But it

---

[8]At oral argument, Ms. Henderson's counsel asserted that she had requested a bonus in her opposition to the Motion to Expunge. We have found no such request.

declined to do so because, although Ms. Henderson's litigation presentation was barely adequate, it had enabled the court to discern a just result. Accordingly, the court ruled that it would confirm its original ruling limiting Ms. Henderson's compensation to $70,000.

On appeal, Ms. Henderson contends that the bankruptcy court abused its discretion in: (1) canceling the contingency fee agreement on the grounds that (I) such an agreement contradicts the structure of § 362(k)(1); and (ii) Ms. Henderson failed to comply with Rule 2016; and (2) ruling that the $70,000 fee award was reasonable and that Ms. Henderson was not entitled to an enhanced fee. She does not dispute the bankruptcy court's recitation of the law or its factual findings, but takes issue with how the bankruptcy court exercised its discretion.

## C.    The bankruptcy court did not abuse its discretion in canceling the contingency fee agreement.

### 1.    The bankruptcy court did not err in finding that the contingency fee agreement at issue in this case was incompatible with § 362(k)(1).

Ms. Henderson points out that, as recognized by the bankruptcy court, contingency fees are (in principle) permissible in bankruptcy cases. *Sundquist I*, 566 B.R. at 597 (citing § 328(a)). She cites *McProud v. Siller (In re CWS Enters., Inc.)*, 870 F.3d 1106 (9th Cir. 2017), as support for the proposition that the bankruptcy court erred in canceling the contingency fee agreement. In *CWS*, the Ninth Circuit reversed the bankruptcy court's

16

determination, in the context of an objection to claim, that contingent fees awarded in pre-petition arbitration and confirmed in a California judgment were not reasonable under § 502(b)(4). The Ninth Circuit concluded that the arbitration award was entitled to issue preclusive effect in the bankruptcy case, and that, under the facts presented, the bankruptcy court erred in performing an independent analysis of the reasonableness of the fees despite the language of § 502(b)(4) that permits the court to limit a claim for attorney's fees to the reasonable value of the services. *See id.* at 1116. The court concluded that "a contingent fee may be reasonable where it reflects the risk of nonrecovery assumed in accepting a case. In this case, a lodestar fee would be unreasonable and could not, for that reason, serve as a cap under section 502(b)(4)." *Id.* at 1120.

But *CWS* has little, if any, relevance to this case, where the applicable statute provides that the attorney's fees themselves are a component of damages. Ms. Henderson does not address how the contingency fee arrangement would work in the context of awarding § 362(k) damages, and she points to no authority (nor have we found any) addressing the issue. As the bankruptcy court stated,

> [c]ontingency fees for debtor's counsel in § 362(k)(1) stay violation disputes . . . present logical difficulties. Attorneys' fees are an element of § 362(k)(1) damages. A simple contingency fee agreement in a situation in which attorneys' fees are an element of damages leads to contingency fees on contingency fees, which would set up a repetitive loop in which fees would

increase to infinity.

> While it may be possible to draft a debtors' counsel contingency fee agreement that might solve the problem described here, the specific contingency fee agreement in this case does not do so.

*Sundquist I*, 566 B.R. at 597.

In other words, the bankruptcy court found that the specific contingency fee agreement in this case was incompatible with § 362(k). The court did not rule that contingency fee agreements could never be permissible in the context of § 362(k), nor did the parties seek a ruling on that issue.[9] As noted by the bankruptcy court, there might be a scenario where the "logical difficulties" could be remedied. But, as discussed below, the court's primary concern was that applying a contingency rate to the recovery in this case would result in a compensation award that would be grossly disproportionate to the quality of services provided. The bankruptcy court thus did not abuse its discretion in canceling the contingency fee agreement.

2. **The bankruptcy court did not err in ruling that it could cancel the contingency fee agreement because Ms. Henderson failed to comply with Rule 2016.**

Ms. Henderson acknowledges that under *Park-Helena*, the bankruptcy

---

[9]At oral argument, counsel for both parties confirmed that they were not seeking a ruling on whether a contingency fee agreement could ever be applied in the § 362(k) context.

court has discretion to cancel a fee agreement for violations of Rule 2016, which requires timely and full disclosure of compensation paid or promised to be paid. But she argues that the circumstances of this case are much less egregious than those in which other courts have canceled fee agreements for failure to comply with Rule 2016. For example, she points out that the cases cited by the Ninth Circuit in *Park-Helena* involved complete failures to provide the fee agreement or misrepresentations as to the source of compensation. She points out that even though she made her Rule 2016 disclosures late, the bankruptcy court was not "prejudiced" by the late disclosures because it still had ample time to consider it before making its fee award.

Additionally, Ms. Henderson argues that she did not misrepresent her compensation because she always intended to enforce the full contingency fee against the Sundquists, and the bankruptcy court acknowledged that by considering the agreement in awarding fees. But the bankruptcy court's consideration of the agreement was limited to explaining why it did not work and canceling it. *See Sundquist I*, 566 B.R. at 597.

Ms. Henderson has not demonstrated that the bankruptcy court abused its discretion in canceling the contingency fee agreement for failure to provide Rule 2016 disclosures. Ms. Henderson did not state in her disclosure that she intended to enforce the full contingency amount against

the Sundquists. Thus the disclosure to the court was materially defective because it did not disclose full relevant information. And even if the failure to disclose was negligent or inadvertent, the court still had the discretion to cancel the agreement and deny **all** requested fees. *See In re Park–Helena*, 63 F.3d at 882. As stated by the court:

> The record admits of two possibilities, each of which would, in the court's discretion, justify complete denial of attorneys' fees. If the undisclosed intention to enforce the full contingency is not a recent fabrication, then there was a failure to disclose full relevant information for which all fees may be denied. If the undisclosed intention is a recent fabrication, then counsel has lied to the court in a declaration and papers filed in opposition to this motion for which sanctions are appropriate on a variety of theories. Either way, this court has the discretion to deny all fees.

*Sundquist II*, 576 B.R. at 880. Ms. Henderson simply disagrees with how the court exercised its discretion; she has not shown that the bankruptcy court applied the wrong legal standard or made illogical, implausible, or unsupported factual findings. We find no abuse of discretion in the bankruptcy court's cancellation of the contingency fee agreement based on Ms. Henderson's failure to comply with Rule 2016.

**D.    The bankruptcy court did not abuse its discretion in determining that the $70,000 fee award was reasonable.**

In limiting Ms. Henderson's fees, the court described in detail the deficiencies in Ms. Henderson's legal services:

Ms. Henderson's performance in this adversary proceeding was . . . among the ten weakest performances by counsel for debtors that [the court] has had the misfortune to observe. It was as if she was in deep water, flailing with beginner strokes.
Ms. Henderson did not prepare a trial brief. Her trial presentation was disorganized. Her notebook of plaintiffs' exhibits was slovenly assembled. She demonstrated no proficient knowledge of the Federal Rules of Evidence or of the Federal Rules of Bankruptcy Procedure and the Federal Rules of Civil Procedure incorporated therein. The pretrial declarations of the Sundquists mandated by Local Bankruptcy Rule 9017–1 were crude and conclusory in content. She made no attempt to introduce the Renée Sundquist diary into evidence, which, ironically, was introduced by way of Bank of America's marked exhibits and wound up putting important flesh on the bones. Her questions were amateurish. She showed no ability to lay a foundation for introducing evidence; fortunately, most of her proffered exhibits were admitted without objection to foundation. Her demonstration of the facts was disjointed and difficult to decipher. She had no coherent theory of damages. Her closing argument did not connect any helpful dots. What saved the case for the plaintiffs was that, while poorly prepared to testify, they were so credible that the court could not in good conscience let the poor performance by counsel stand in the way of justice.

One reason this court's decision took some months to prepare was that Ms. Henderson had been of no help regarding the complex facts and legal theories. The process of wading through all the exhibits in the context of the testimony consumed time, required reflection, and entailed considerable research into intricacies of the law of actual and punitive damages.

. . . .

   Far from being the result of Ms. Henderson's
performance, the judgment was entered despite her work.
Heretofore, the court has expressed its frustration obliquely
and intended to keep it that way, but her subsequent activity
has forced the court to be explicit so that no appellate tribunal
will be confused.

*Sundquist II*, 576 B.R. at 868-69.

   Ms. Henderson argues that despite these flaws in her trial
preparation, the court still awarded $45 million in punitive damages. She
points out that the bankruptcy court acknowledged that these deficiencies
"merely hindered its preparation of an opinion" but did not cause the court
to reduce the amount awarded. Accordingly, she contends that there was
no reasonable basis for the bankruptcy court to conclude that her
performance at trial was inadequate. She also complains that the court did
not say how much it would have increased the award had it been given
more precise evidence. But this argument is nonsensical because, without
additional evidence, the bankruptcy court could have no basis to know by
how much the damages award may have increased.

   Finally, Ms. Henderson argues that even if she is not entitled to the
contingency fee, she is entitled to a bonus because of the risk she assumed
in handling the case and because she obtained an extraordinary result. She
asserts that the bankruptcy court erred as a matter of law by failing to
consider a bonus.

But the bankruptcy court **did** consider whether Ms. Henderson was entitled to a fee enhancement and, in fact, gave her one. Despite the fact that Ms. Henderson had neither sought an enhancement above her lodestar compensation nor proffered specific evidence to rebut the presumption against a bonus, the court accepted Ms. Henderson's $300 hourly rate. It did so despite the fact that it did not believe the quality of her services was worth $300 per hour; it accepted the rate as an implicit enhancement above normal lodestar to accommodate the risk of nonpayment. *Sundquist II*, 576 B.R. at 876.

Ms. Henderson also presents two arguments that she did not make to the bankruptcy court. First, she argues that she was precluded from explaining her decisions regarding trial strategy because doing so would have forced her to disclose privileged attorney-client communications. Second, she complains that the court did not invalidate the contingency fee agreement between the Sundquists and their successor counsel. We need not consider these arguments. *See O'Rourke v. Seaboard Surety Co. (In re E.R. Fegert, Inc.)*, 887 F.2d 955, 957 (9th Cir. 1989) (appellate court need not consider arguments on appeal that were not raised sufficiently for the trial court to rule on them).[10]

---

[10]In Appellees' responsive brief and Appellants' reply brief, the parties argued other issues raised in the original motion and responsive papers–the validity and/or voidability of the fee agreement in light of failures to comply with California law, and

(continued...)

## CONCLUSION

The Ninth Circuit Court of Appeals has recognized the potential for abuse where attorney's fees are a mandatory element of damages but concluded that the bankruptcy court's sound exercise of discretion to "eliminate unnecessary or plainly excessive fees" would "provide a sufficient check on any abuses that might otherwise arise." *In re Schwartz-Tallard*, 803 F.3d at 1101. The bankruptcy court has broad discretion in determining what fees are reasonable under the circumstances. *See Gates v. Deukmejian*, 987 F.2d 1392, 1398 (9th Cir. 1992) ("The district court has a great deal of discretion in determining the reasonableness of the fee and, as a general rule, we defer to its determination . . . ."). This Panel affords "considerable deference to the bankruptcy court's reasonableness assessment because of its first-hand experience with the attorney's services and performance during the course of the bankruptcy proceedings." *Orian v. Asaf (In re Orian)*, No. CC-18-1092-SFL, 2018 WL 6187784, at *8 (9th Cir. BAP Nov. 27, 2018) (citations omitted). Under this standard, Ms. Henderson carried a heavy burden to persuade us that the bankruptcy court abused its discretion in canceling the contingency fee agreement, limiting fees, and expunging her attorney's

---

[10](...continued)
unconscionability. The bankruptcy court did not rule on those issues, nor did Ms. Henderson identify them as issues on appeal. Therefore, we decline to address them.

lien. She has not done so. Therefore, we AFFIRM.